# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARIBE BILLIE and QUINCY REEVES, | : | CIVIL CASE NO. |
| | : | 3:19-CV-0092 (JCH) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| COVERALL NORTH AMERICA, INC., | : | MARCH 11, 2020 |
| | : | |
| Defendants. | | |

## RULING ON DEFENDANT'S MOTION TO DISMISS OR TO COMPEL ARBITRATION (DOC. NO. 25)

## I.    INTRODUCTION

Plaintiffs Caribe Billie[1] and Quincy Reeves ("plaintiffs") bring this action against

the defendant, Coverall North America, Inc. ("CNA"), alleging that CNA has

misclassified them as independent contractors and withheld portions of plaintiffs' wages,

in violation of section 31-71e of the Connecticut General Statutes.  See Compl. ¶ 37.

Pending before the court is CNA's Motion to Dismiss or to Compel Arbitration (Doc. No.

25).  In its Motion, CNA seeks to dismiss this case pursuant to Rule 12(b)(2) for lack of

personal jurisdiction or Rule 12(b)(6) for failure to state a claim.  Alternatively, CNA

seeks an order staying this action and compelling arbitration.  For the reasons stated

below, CNA's Motion is granted in part and denied in part.

---

[1] In various filings throughout the course of litigation, the lead plaintiff's surname has also been spelled "Bille."  See, e.g., Plaintiffs' Opposition ("Pl. Opp.") (Doc. No. 38).  For the sake of consistency, the court will spell the plaintiff's surname in the same manner as reflected in his Declaration.  See Declaration of Caribe Billie ("Billie Decl.") (Doc. No. 38-2).

## II.     FACTS

Coverall North America ("CNA") employs cleaning workers across the country to perform cleaning work for commercial customers.  Compl. ¶ 15.  CNA requires its workers to sign janitorial "franchise" agreements ("JFAs") in order to obtain work.  Id. ¶ 16.  Plaintiffs Caribe Billie and Quincy Reeves entered into JFAs with R & B Services, Inc. d/b/a Coverall of Connecticut & Westchester ("R & B"), a CNA franchisee operating in the Connecticut area.  See Billie Janitorial Franchise Agreement ("Billie JFA") (Doc. No. 27-1); Reeves Janitorial Franchise Agreement ("Reeves JFA") (Doc. No. 27-5); see also Service Franchise Agreement (Doc. No. 28-1).

Pursuant to these contracts, CNA and R & B exercise considerable control over plaintiffs' work.  Compl. ¶ 19.  For example, CNA and R & B determine what amount to be charged to the customer and the amount paid to the cleaning workers.  Id. Furthermore, plaintiffs are classified as "independent contractors" and pay sums of money as "franchise fees" in order to obtain cleaning work.  Compl. ¶¶ 17, 18.  Plaintiffs must pay both initial and ongoing fees to R & B, a portion of which is then passed directly to CNA.  See Plaintiffs' Opposition ("Pl. Opp.") (Doc. No. 38), at 5.

## III.    STANDARD OF REVIEW

A court must grant a motion to dismiss if it lacks personal jurisdiction over a defendant.  Fed. R. Civ. P. 12(b)(2).  In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff bears the burden of "mak[ing] a prima facie showing that jurisdiction exists."  SPV Osus Ltd. v. UBS AG, 882 F.3d 333, 342 (2d Cir. 2018).  "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally

sufficient allegations of jurisdiction." <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996). On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), all allegations "are to be construed in the light most favorable to the plaintiff." <u>Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.</u>, 722 F.3d 81, 84 (2d Cir. 2013) (internal quotation marks omitted). Similarly, in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court takes the allegations of a complaint as true and construes them in a manner favorable to the plaintiff. <u>See, e.g.</u>, <u>Hoover v. Ronwin</u>, 466 U.S. 558, 587 (1984); <u>Phelps v. Kapnolas</u>, 308 F.3d 180, 184 (2d Cir.2002). Again, the court must draw all reasonable inferences in the plaintiff's favor. <u>See, e.g.</u>, <u>Yung v. Lee</u>, 432 F.3d 142, 146 (2d Cir. 2005).

In considering a motion to compel arbitration brought under the Federal Arbitration Act ("FAA"), section 4 of title 9 of the United States Code, the court "applies a standard similar to that applicable for a motion for summary judgment." <u>Bensadoun v. Jobe–Riat</u>, 316 F.3d 171, 175 (2d Cir. 2003) (citations omitted). Specifically, "[t]he party seeking an order compelling arbitration must substantiate" its entitlement to arbitration "by a showing of evidentiary facts that support its claim that the other party agreed to arbitration." <u>D'Antuono v. Serv. Rd. Corp.</u>, 789 F. Supp. 2d 308, 319 (D. Conn. 2011) (citing <u>Oppenheimer & Co., Inc. v. Neidhardt</u>, 56 F.3d 352, 358 (2d Cir. 1995)). "If the party seeking to compel arbitration makes such a showing, the party opposing arbitration may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried as to the making of the arbitration agreement." <u>D'Antuono</u>, 789 F. Supp. 2d at 319-20 (citation and internal quotation marks omitted).

**IV. DISCUSSION**

    A.    <u>Personal Jurisdiction</u>

"[I]n resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry."  <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 567 (2d Cir. 1996).  First, the district court must determine whether the state law permits the court's exercise of jurisdiction over the defendants.  <u>Brown v. Lockheed Martin Corp.</u>, 814 F.3d 619, 631 (2d Cir. 2016).  Second, the district court "must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process."  <u>Metro. Life Ins. Co.</u>, 84 F.3d at 567; <u>see also</u> <u>Lombard Bros., Inc. v. Gen. Asset Mgmt. Co.</u>, 190 Conn. 245, 250 (1983) ("[The] first inquiry must be whether our long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case.  Only if we find the statute to be applicable do we reach the question whether it would offend due process to assert jurisdiction.").

    1.    Jurisdiction Under Connecticut's Long Arm Statute

Connecticut's Long Arm statute, section 33-929(f) of the Connecticut General Statutes, subjects a foreign corporation to suits in Connecticut as follows:

> (1) Out of any contract made in this state or to be performed in this state
> . . . or (4) out of tortious conduct in this state, whether arising out of
> repeated activity or single acts, and whether arising out of misfeasance or
> nonfeasance.

Plaintiffs argue that CNA is subject to this court's jurisdiction pursuant to both of these sections.

With regard to section 33-929(f)(1), CNA responds that it is not a party to the contracts at issue – the JFAs.  According to CNA, "[t]his defeats jurisdiction under § 33-

4

929(f)(1), as that section does not convey jurisdiction where the defendant is not a party to the contract that gives rise to the cause of action." Defendant's Memorandum in Support ("Def. Mem.") (Doc. No. 26). CNA cites Halo Tech Holdings, Inc. v. Cooper, No. 3:07-CV-489 (AHN), 2008 WL 877156, at *7 (D. Conn. Mar. 26, 2008), in which this court stated that because plaintiff's allegations do "not arise from any contract to which [defendant] was a party . . . § 33–929(f)(1) does not support jurisdiction." In Halo, the plaintiffs entered into a contract which was made on the third-party investment bank's letterhead. Id. at *7. The bank did not derive any rights from the contract and was explicitly not bound by its terms. Id.

Here, CNA derives significant benefit from the agreement between plaintiffs and R & B – agreements that CNA itself drafted. See Plaintiffs' Opposition ("Pl. Opp.") (Doc. No. 38), at 8. Under the terms of the contract, CNA has the right to control much of Plaintiffs' conduct. Plaintiffs are bound to abide by the polices and procedures issued by CNA. See Billie JFA § 9(C); Reeves JFA § 9(C). CNA mandates which equipment plaintiffs may use, see Billie JFA § 9(E); Reeves JFA § 9(E), and can modify insurance coverage requirements and policy limits that plaintiffs must carry at any time, see Billie JFA § 14; Reeves JFA § 14. The present Motion—wherein CNA moves this court to enforce the contract's arbitration agreement—further illustrates that, unlike the third party in Halo, CNA derives significant benefit from the JFAs. Furthermore, a portion of the fees that plaintiffs are required to pay R & B flow directly to CNA. See Service Franchise Agreement (Doc. No. 28-1), § 5. Based on CNA's significant benefit arising from the contract that it drafted, and based on the plain reading of section 33-929(f)(1),

plaintiffs have made a prima facie showing that CNA is subject to the jurisdiction of this

court under Connecticut's long arm statute.[2]

      2.     Due Process

The Supreme Court has set out three conditions for the exercise of specific

jurisdiction over a nonresident defendant.

> First, the defendant must have purposefully availed itself of the privilege of
> conducting activities within the forum State or have purposefully directed
> its conduct into the forum State.  Second, the plaintiff's claim must arise
> out of or relate to the defendant's forum conduct.  Finally, the exercise of
> jurisdiction must be reasonable under the circumstances.

Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137

S.Ct. 1773, 1785-86 (2017) (internal citations and quotations omitted).

Plaintiffs have plausibly alleged that CNA has sufficient contacts to satisfy the

requirements of due process.  Plaintiffs allege that CNA periodically sends its

employees to the offices of its master franchisees (such as R & B) and assists with the

operation of those franchises.  See Service Franchise Agreement (Doc. No. 28-1)

("[CNA] will also periodically visit [R & B]'s office to review the operation and assist [R &

B] in developing new marketing and operational techniques.").  Furthermore, CNA

directly markets its services in Connecticut through its interactive website, which shows

locations in Connecticut and advertises Connecticut customers to get a free quote

online or by calling a Connecticut area-code number.  Pl. Opp. at 13 (citing Declaration

of Shannon Liss-Riordan ("Liss-Riordan Decl.") (Doc. No. 38-1)); see also MacCallum v.

---

[2] Because the court finds jurisdiction is proper under section 33-929(f)(1), the court need not
address plaintiffs' arguments as to section 33-929(f)(4).

New York Yankees P'ship, 392 F. Supp. 2d 259, 266 (D. Conn. 2005) ("[A]dvertising campaigns directed at Connecticut residents have been found sufficient to confer specific jurisdiction over non-resident defendants."). Under the terms of the Service Franchise Agreement, CNA also provides its franchisees with support and materials from within the state. See Service Franchise Agreement at § II(2)(B)(1) ("[CNA] will [d]evelop and furnish such operations manuals for the Franchisee's business as [CNA] deems necessary and in such quantities as [CNA] deems appropriate."). Plaintiffs further allege that CNA provides support to its franchisees through a network of regional support centers, one of which is located in Connecticut. See Ex. 4 to Liss-Riordan Decl. These allegations, when construed in the light most favorable to the plaintiffs, plausibly allege that CNA has established sufficient contacts with Connecticut to justify jurisdiction. Likewise, plaintiffs' claims arise out of CNA's activities in Connecticut. Plaintiffs allege that CNA has misclassified plaintiffs as independent contractors instead of employees. Compl. ¶ 1. Because of this misclassification, plaintiffs allege that they are required to pay large fees in order to obtain cleaning work from CNA, which they conduct in Connecticut. Id.

Once it is established that the defendant has minimum contacts with the forum and the cause of action relates to or arises from those contacts, "a court considers those contacts 'in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" Charles Schwab v. Bank of America, 883 F.3d 68, 82 (2d Cir. 2018) (quoting Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 173 (2d Cir. 2013)). Courts in the Second Circuit evaluate

the following factors: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the "interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interests of the several States in furthering fundamental substantive social policies." Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty., 480 U.S. 102, 113-114 (1987).

In the present case, this court's assertion of personal jurisdiction is reasonable and comports with fair play and substantial justice. The burden on the defendants, which is the "primary concern" of the analysis, Bristol-Myers Squibb, 137 S.Ct. at 1780, is minimal. CNA is a large corporation that maintains a business presence in Connecticut. Furthermore, the JFAs and the Service Franchise Agreement all contain a forum selection clause dictating that Connecticut law governs. See Service Franchise Agreement ¶ 21; Billie JFA § 23; Reeves JFA § 23. The remaining factors favor the court's assertion of jurisdiction. The named plaintiffs and putative class consist entirely of workers who have provided cleaning services in Connecticut, and the state "has a manifest interest in providing effective redress for its residents." Milne v. Catuogno Court Reporting Servs., Inc., 239 F. Supp. 2d 195, 206 (D. Conn. 2002) (internal citations and quotations omitted). Furthermore, the witnesses and evidence would likely concern work performed by plaintiffs and other cleaning workers in Connecticut. See Metro. Life Ins. Co., 84 F.3d at 574 ("In evaluating [the efficient administration of justice], courts generally consider where witnesses and evidence are likely to be located.").

8

Because Connecticut's long arm statute reaches CNA, and because this court's exercise of jurisdiction over CNA would not offend due process, CNA's Motion to Dismiss pursuant to Rule (12)(b)(2) for lack of personal jurisdiction is denied.

B.  Failure to State a Claim

CNA next moves the court to dismiss this case for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6).  Specifically, CNA argues that plaintiffs' claims should be dismissed because CNA has "no connection" to any of the unlawful fees and deductions alleged in the Complaint.  Def. Mem. at 19.

CNA's argument is unavailing.  Plaintiffs have plausibly alleged that they are employees of CNA, and that, therefore, the deductions and fees allegedly implemented and collected by CNA violate Connecticut wage laws.  CNA attempts to avoid liability by noting that CNA is not a party to the JFAs and that plaintiffs' fee obligation is to R & B, not CNA.  Def. Mem. at 19; see also Def. Reply at 7.  However, CNA is not the disinterested party it claims to be.  These payments are made pursuant to contract terms drafted by CNA.  Def. Reply at 3.  Furthermore, CNA's contract with R & B makes clear that a portion of the fees paid by the plaintiffs to R & B is passed on directly to CNA.  See Service Franchise Agreement (Doc. No. 28-1), § 5; see also Da Costa v. Vanguard Cleaning Sys., Inc., No. CV 15-04743, 2017 WL 4817349, at *5 (Mass. Super. Sept. 29, 2017) (finding national cleaning franchise company liable for misclassification under Massachusetts and Connecticut law where national company received "four percent of the gross billings from work performed by unit franchisees" funneled through its intermediary "master franchisee").

Because plaintiffs have plausibly alleged that they are employees of CNA and that the deductions and fees allegedly implemented and collected by CNA violate Connecticut wage laws, CNA's Motion to Dismiss for failure to state a claim is denied.[3]

C.    Motion to Compel Arbitration

Finally, CNA argues that the court should compel arbitration because "CNA is expressly covered by the mandatory arbitration agreements that Plaintiffs entered into, both of which cover the claims at issue here."  Def. Mem. at 12.

1.    Arbitration

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).  "[T]he FAA was enacted to replace judicial indisposition to arbitration, and is an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution."  Ross v. American Express Co., 547 F.3d 137, 142 (2d Cir. 2008) (internal quotation marks and citations omitted).

---

[3] Plaintiffs also argue that, "[t]o prevail on their defense that Plaintiffs are independent contractors under Connecticut law, Defendant has the burden to prove all three factors of the 'ABC' test."  Pl. Mem. at 17 (citing Tianti ex rel. Gluck v. William Raveis Real Estate, 231 Conn. 690, 697-698 (Conn. 1995)).  Because CNA does not raise this defense, see Def. Memo at 19-20, the court need not address this defense, nor the "ABC test."

Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). That said "arbitration is [still] a matter of contract[, thus] a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960).

When determining whether to compel arbitration pursuant to the FAA, a court looks to four factors: (1) whether the parties agreed to arbitrate their dispute; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) whether Congress intended the federal statutory claims asserted by the plaintiff, if any, to be non-arbitrable, and (4) if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the remaining claims pending arbitration. See JLM Indus., Inc. v. Stolt–Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004).

Only the first two factors, and the defense of unconscionability, are at issue here. As to the first factor, in answering the question of whether the parties agreed to arbitrate a certain matter, the court looks to the "ordinary principles of contract law" under the law of the state governing the contract, Ross v. Am. Express Co., 478 F.3d 96, 99 (2d Cir. 2007), and courts may invalidate arbitration agreements based on "generally applicable contract defenses, such as fraud, duress, or unconscionability." Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157, 163 (2d Cir. 1998) (citation omitted); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Kurz v. Chase Manhattan Bank USA, N.A., 319 F. Supp. 2d 457, 461 (S.D.N.Y. 2004) ("Whether the parties agreed to

arbitrate is determined by state contract law."). In the present case, Connecticut law

applies. See Billie JFA at 17, § 23; Reeves JFA at 17, § 23. Under Connecticut law, a

third-party can enforce a contractual right where contractual terms demonstrate that "the

intent of the parties to the contract was that the promisor should assume a direct

obligation to the third party." Dow & Condon, Inc. v. Brookfield Dev. Corp., 266 Conn.

572, 580 (2003). This principle extends to arbitration agreements. See Gaudet v.

Safeco Ins. Co., 219 Conn. 391, 397 n.7 (1991) ("There is . . . little reason to

distinguish between a third party beneficiary's right to enforce an arbitration clause of a

contract and a third party beneficiary's right to enforce any other clause of a contract.");

see also Gerszberg v. Li & Fung (Trading) Ltd., 215 F. Supp. 3d 282, 288 (S.D.N.Y.

2016) ("It is settled that an arbitration agreement may be enforced in favor of third-party

beneficiaries.") (citing Spear, Leeds & Kellogg v. Cent. Life Assurance Co., 85 F.3d 21,

26-27 (2d Cir. 1996)).

2.    Agreement to Arbitrate

Here, the record demonstrates that plaintiffs' claims are subject to arbitration. In

2017, Billie transferred his interest in the Billie JFA to CNC Cleaning, LLC ("CNC"). See

Billie Transfer Agreement (Doc. No. 27-2), at 1. Billie subsequently signed both an

Amendment to the JFA between CNC and R & B, see CNC Amendment (Doc. No. 27-

3); and a guarantee for the agreement. See Billie Guarantee (Doc. No. 27-4), at 1. The

CNC Amendment, which Billie signed on CNC's behalf as CNC's member, contains an

arbitration clause that states, in relevant part, that "all controversies, disputes, and

claims" between CNA and "any guarantors of . . . the Franchise Agreement . . . arising

out of or related to this Agreement or the Franchise Agreement or the validity of the Agreement or the Franchise Agreement or any provision thereof (including this arbitration agreement, the validity and scope of which Coverall and Franchisee acknowledge and agree is to be determined by an arbitrator, not a court) . . . [or] the relationship of the parties hereunder or any related agreement between the parties . . . shall be submitted to binding arbitration before the American Arbitration Association ('AAA')." CNC Amendment (Doc. No. 27-3) at 2, ¶ 7. Billie is both a member and a guarantor of CNC's JFA. See Billie Guarantee (Doc. No. 27-4).

Plaintiff Reeves is bound by a similar arbitration agreement. In August 2018, Reeves transferred his JFA to his limited liability company, Elite Work Enterprise LLC. See Reeves Transfer Agreement (Doc. No. 27-4). In conjunction with this transfer, Reeves executed a Guarantee and General Release of Claims. See Reeves Guarantee (Doc. No. 27-7); see also Reeves Release (Doc. No. 27-8). The Reeves Release contains a similar arbitration clause as the one found in the CNC Amendment. The Reeves arbitration agreement covers "*WITHOUT EXCEPTION*, all controversies, disputes, or claims between" the parties "arising under or related to the terms of the Franchise Agreement, this Agreement, any other Agreement between the Parties, the relationship of the Parties (either before or after the signing of this Agreement), or concerning the validity, enforceability, or waiver of this Agreement (including this Arbitration Agreement, the validity and scope of which the parties agree is to be decided by an arbitrator)." Reeves Release (Doc. No. 27-8) at 2, ¶4 (emphasis in original).

The language of these arbitration agreements demonstrate that the parties agreed to arbitrate this dispute and that plaintiffs' claims fall within the scope of their arbitration obligations.  First, the contractual terms evidence the parties' intent to include CNA within the scope of plaintiffs' arbitration obligations. See, e.g., CNC Amendment at 2, ¶ 7; Reeves Release at 2, ¶ 4.  Second, both agreements cover "all controversies, disputes, and claims" between plaintiffs and CNA arising under or related to, among other things, the Franchise Agreements or any relationship between plaintiffs and CNA. CNC Amendment at 2, ¶ 7; Reeves Release at 2, ¶ 4.  Thus, the record demonstrates that the parties agreed to arbitrate their dispute and that the plaintiffs' claims fall within the scope of this agreement.  JLM Indus., Inc, 387 F.3d at 169.

3.      Timeliness of CNA's Motion to Compel Arbitration

Plaintiffs do not contest that their claims fall within the scope of the arbitration agreements.  Instead, plaintiffs raise two arguments.  First, plaintiffs argue that CNA's Motion to Compel is premature.  See Plaintiffs' Opposition ("Pl. Opp.") (Doc. No. 38), at 22–24.  Second, plaintiffs argue that the arbitration agreement (and the delegation clause, specifically) is unenforceable.  Id. at 24–40.  Both of these arguments fail.

Plaintiffs' argument regarding the timeliness of CNA's Motion to Compel lacks merit, and the cases plaintiffs cite in support are inapposite. In those cases, courts considered the appropriateness of class certification when some but not all prospective class members signed arbitration agreements, not when all named plaintiffs have done so, as is the case here.  When an arbitration agreement arguably does not bind all prospective class members, some courts have found it appropriate to first decide the

14

issue of class certification.  One case that plaintiffs cite, <u>In re Evanston Nw. Corp.</u>

<u>Antitrust Litig</u>, is illustrative:

> [Defendant] effectively seeks a binding decision by this Court that the [prospective class members] are required to arbitrate but before they can appear to make an adversarial presentation on their own behalf.  That is why Judge Lefkow—acting on a request by the [prospective class members] themselves—decided that the class-certification motion ought to be addressed first before resolving [Defendant's] motion to compel arbitration. . . . That prior decision still makes sense, even though there is no clear rule that always requires motions to compel arbitration to be decided after motions for class certification.

2013 WL 6490152, *5 (N.D. Ill. Dec. 10, 2013); <u>see also</u> <u>Davis v. Four Seasons Hotel</u>

<u>Ltd.</u>, 2011 WL 4590393, *4 (D. Haw. Sept. 30, 2011); <u>Midland Funding, LLC v. Brent</u>,

2010 WL 4628593, at *4 (N.D. Ohio Nov. 4, 2010).

None of these cases comment on a set of facts, like this one, where all named

plaintiffs have signed an arbitration agreement.  In both cases that plaintiffs cite in which

a named plaintiff signed an arbitration agreement, the court dismissed that plaintiff

before addressing class certification.  See <u>D'Antuono v. C & G of Groton, Inc.</u>, No. 3:11-

CV-33 (MRK), 2011 WL 5878045, at *2 (D. Conn. Nov. 23, 2011) (noting prior case

closure with respect to named plaintiffs that signed arbitration agreements); <u>see also</u>

<u>Coleman v. Gen. Motors Acceptance Corp.</u>, 220 F.R.D. 64, 68 (M.D. Tenn. 2004) ("The

court has also granted [Defendant]'s Motion to Compel Arbitration and to dismiss with

respect to named class plaintiff Carolyn Dixon, [and] terminated Carolyn Dixon as a

party.").  Because both/all plaintiffs prosecuting the litigation here have signed a

contract with an arbitration agreement, CNA's Motion to Compel is not premature.

4. Enforceability of the Arbitration Agreement

The thrust of plaintiffs' argument challenges the enforceability of the arbitration agreement and the delegation clause, specifically. See Pl. Opp. at 24–40. The plaintiffs argue that the agreements, and the delegation clauses, specifically, are both procedurally and substantively unconscionable.

As a preliminary matter, plaintiffs cannot challenge the validity of the arbitration agreements, as a whole. The Supreme Court has recognized that, through a "delegation provision," "parties can agree to arbitrate 'gateway' questions of arbitrability," including whether the arbitration agreement is unconscionable. Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63, 69 (2010) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). The agreement must, however, demonstrate "clearly and unmistakably" that "the parties agreed to arbitrate arbitrability." Id. When there is a delegation provision that demonstrates this agreement, "Rent-A-Center instructs that the arbitrator must decide all validity challenges to that agreement's arbitration provisions, except for those directed specifically and expressly towards the delegation provision itself." Doctor's Assocs., Inc. v. Kirksey, No. 3:18-CV-963 (JCH), 2018 WL 6061573, at *5 (D. Conn. Nov. 20, 2018) (emphasis added); see also Pingel v. Gen. Elec. Co., No. 3:14-CV-00632 (CSH), 2014 WL 7334588, at *6 (D. Conn. Dec. 19, 2014) ("Under Rent-A-Center, Plaintiff is required to direct her challenge specifically at the delegation provision even where, as here, a specific challenge to the delegation provision is implicit in her claim that the entire agreement to arbitrate is procedurally unconscionable.") (citing Rent-A-Center, 561 U.S. at 72).

16

The unconscionability arguments set forth on pages 35 through 40 of Plaintiffs'

Opposition challenge the validity of the agreements as a whole. <u>See</u> Pl. Opp. at 35

("For some of the same reasons that the delegation clause is unconscionable, the

agreement as a whole is likewise unconscionable and unenforceable."). First, plaintiffs

argue that the agreements contain several unconscionable terms including

impermissible cost-splitting provisions and a shortening of the statute of limitations.[4] Pl.

Opp. at 35–36. Second, plaintiffs argue that the agreements contain provisions that

conflict with plaintiffs' rights under the National Labor Relations Act. <u>Id.</u> at 37. Because

these arguments do not challenge the enforceability of the delegation clause,

specifically, the court will not address them. <u>See</u> <u>Ferrie v. DirecTV, LLC</u>, No. 3:15-CV-

409 (JCH), 2016 WL 183474, at *12 (D. Conn. Jan. 12, 2016) ("Ferrie's failure to key his

argument to the arbitration provision, rather than to the Customer Agreement as a

whole, is fatal to his argument of unconscionability that is before this court."). The court

nonetheless notes that many of plaintiffs' arguments regarding the agreements'

unconscionability are essentially arguments previously made regarding the

unconscionability of the delegation clause. <u>See, e.g.</u>, Pl. Opp. at 35 ("'[L]ike the

delegation clause, the arbitration agreement is presented as an adhesion, take-it-or-

leave it contract with no opportunity for Plaintiffs to negotiate its terms."). Accordingly,

the court addresses those arguments insofar as they relate to the delegation clause.

---

[4] CNA responds that plaintiffs' challenge on the shortening of the statute of limitations "has no basis in fact, as the Arbitration Agreements do not contain these terms." Def. Reply at 15. Plaintiffs do not cite evidence in the record to support their claim; indeed, the arbitration agreements do not appear to have such a provision. <u>See generally</u> CNC Amendment; Reeves Release. Even if the arbitration agreements were to contain such terms, plaintiffs fail to tie this claim to their attack of the delegation provision, as required by <u>Rent-A-Center</u>.

Plaintiffs raise several arguments alleging the unconscionability of the delegation clauses. "The question of unconscionability is a matter of law to be decided by the court based on all facts and circumstances of the case." Cheshire Mortg. Serv., Inc. v. Montes, 223 Conn. 80, 87 (1992). (citations omitted). "The classic definition of an unconscionable contract is one which no man in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept, on the other." Smith v. Mitsubishi Motors Credit of Am., Inc., 247 Conn. 342, 349 (1998). "Substantive unconscionability focuses on the 'content of the contract,' as distinguished from procedural unconscionability, which focuses on the 'process by which the allegedly offensive terms found their way into the agreement.'" Cheshire Mortg. Serv., Inc., 223 Conn. at 87 n.14; see also Smith, 247 Conn. at 349 ("In practice, we have come to divide this definition into two aspects of unconscionability, one procedural and the other substantive, the first intended to prevent unfair surprise and the other intended to prevent oppression.").

a.      Procedural Unconscionability

Plaintiffs contend that the clauses are procedurally unconscionable because the delegation clause is adhesive, was not explained to plaintiffs, and was "obscure and buried." Pl. Opp. at 31–35. Plaintiffs support their arguments with Declarations which support these claims. Plaintiffs state that Coverall provided them with a lengthy contract document but failed to explain the terms of the agreement. Billie Decl. ¶ 4; Reeves Decl. ¶ 5. Both plaintiffs were unaware that the contracts contained an arbitration provision. Billie Decl. ¶ 6; Reeves Decl. ¶ 5. Furthermore, both plaintiffs rely on their

18

employment with Coverall for income, "allowing for Coverall to exert extreme pressure on plaintiffs to sign these contracts." Pl. Opp. at 31 (citing Billie Decl. ¶¶ 3, 6; Reeves Decl. ¶¶ 3, 7).

Plaintiffs nonetheless concede that, under Connecticut law, the court cannot deem the delegation clause to be unconscionable based solely on the "adhesive nature of the contract and the unequal standing of the parities." Pl. Opp. at 31 n.27 (citing Smith, 247 Conn. at 352). However, plaintiffs provide little evidence beyond these arguments. Plaintiffs testified that they were unaware that the agreements contained a delegation clause until recently. See Billie Decl. ¶ 5; Reeves Decl. ¶ 6. They complain that the delegation clause was not explained to them and that it lacked an opt-out provision. Pl. Opp. at 32–33. But as Judge Kravitz noted in D'Antuono, these arguments are insufficient:

> In the Court's view, Plaintiffs' procedural unconscionability argument comes down to nothing more than a claim that the parties had unequal bargaining power—as reflected by the fact that the Lease was a take-it-or-leave-it form contract—and that Defendants did not specifically direct Plaintiffs' attention to the arbitration clause in the Lease. As this Court has previously had occasion to recognize, see DaimlerChrysler Insurance, 762 F. Supp. 2d at 423–24, the Connecticut Supreme Court has soundly rejected the notion that provisions in form contracts are procedurally unconscionable whenever the party with greater bargaining power fails to direct the other party's attention to important provisions. See Smith, at 352, 721 A.2d 1187 ("[W]e hold today that procedural unconscionability cannot be predicated solely on the failure by a commercial party proffering a form contract to an individual party to direct the individual's attention to specific terms of a contractual agreement.").

789 F. Supp. 2d at 328; see also Petroleum & Franchise Capital LLC v. Tejany Petroleum Naperville LLC, No. 3:15-CV-00156 (JCH), 2016 WL 4099026, at *4 (D. Conn. Aug. 2, 2016).

Plaintiffs' argument that the delegation clauses are "obscure and buried" likewise fails. The delegation clause in Billie's contract with R & B is located on the second page of a three-page contract. <u>See</u> CNC Amendment ¶ 7. Reeves' delegation clause is located on the second page of a four-page contract. <u>See</u> Reeves' Release ¶ 2. In both contracts, the section heading is written in bold, capital letters. The text of the clause is written in the same font size as the surrounding clauses. The law requires nothing more. <u>See</u> <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996) (holding Montana statute which required that arbitration agreements be "typed in underlined capital letters on the first page of the contract" violated the FAA because the statute "condition[ed] the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally"); <u>see also</u> <u>Van Voorhies v. Land/home Financial Services</u>, No. CV-095031713S, 2010 WL 3961297, at *5 (Conn. Super. Sept. 3, 2010) (finding that an arbitration clause in a forty-five page employment contract was not hidden, and concluding that "any procedural unconscionability inherent in the arbitration agreement is minimal").

"Under Connecticut law, a court cannot find procedural unconscionability unless the party opposing enforcement of a contractual provision has introduced some <u>specific</u> evidence of overreaching by the other party in the formation of the agreement." <u>Daimlerchrysler Insurance Co., LLC v. Pambianchi</u>, 762 F. Supp. 2d 410, 423 (D. Conn. 2011) (emphasis in original), <u>aff'd</u>, 469 Fed. Appx. 65 (2d Cir. 2012). Plaintiffs have failed to meet this burden. Plaintiffs have not cited any authority that suggests the facts in this case would constitute "evidence of overreaching." In fact, plaintiffs have failed to

cite a single court in Connecticut that has struck down a delegation provision as procedurally unconscionable. Plaintiffs' claim that the delegation clauses were "obscure and buried" is not supported by the record, and the remaining claims (relating to the adhesive nature of the contract and parties' unequal bargaining powers) are legally insufficient. Plaintiffs' claim of procedural unconscionability therefore fails.

b.     Substantive Unconscionability

CNA argues that, under Connecticut law, plaintiffs have the burden of showing that the contract is <u>both</u> procedurally and substantively unconscionable. Def. Reply at 8 (citing <u>D'Antuono</u>, 789 F. Supp. 2d at 327). CNA therefore argues that the court need not reach plaintiffs' assertions about the substantive unconscionability of the delegation clauses because it has failed to show procedural unconscionability. However, CNA's argument does not comprehensively reflect the current state of the law. "Connecticut courts have not clearly decided whether a contract must be both procedurally and substantively unconscionable." <u>Tarpon Bay Partners, LLC v. Zerez Holding Corp.</u>, No. 3:17-CV-579 (SRU), 2019 WL 4646061, at *9 (D. Conn. Sept. 24, 2019). Recent Connecticut Supreme and Appellate Court cases have held that, generally, both procedural and substantive unconscionability must be present. <u>See, e.g.</u>, <u>Emeritus Senior Living v. Lepore</u>, 183 Conn. App. 23, 29 (2018); <u>Hirsch v. Woermer</u>, 184 Conn. App. 583, 589 (2018); <u>R.F. Daddario & Sons, Inc. v. Shelansky</u>, 123 Conn. App. 725, 741 (2010); <u>Bender v. Bender</u>, 292 Conn. 696, 732 (2009). Other Connecticut courts, however, have held that both are not necessary. <u>See</u> <u>Smith</u>, 247 Conn. at 353 ("Even in the absence of procedural unconscionability, Moore might avoid liability . . . if he

could establish that the clause was substantively unconscionable"); D'Antuono, 789 F. Supp. 2d at 327 ("In some rare cases, a contractual provision may be so outrageous as to warrant a court's refusal to enforce it based on substantive unconscionability alone."); Tarpon Bay Partners, 2019 WL 4646061, at *9 ("I am not convinced that Connecticut requires that both procedural and substantive unconscionability be present; and it seems to me that only substantive unconscionability is required."); Daimlerchrysler Ins. Co., 762 F. Supp. 2d at 422 ("In rare cases, a provision of a contract may be so outrageous as to warrant holding it unenforceable based on substantive unconscionability alone." (citing Hottle v. BDO Seidman LLP, 268 Conn. 694, 720–21 (2004)). Accordingly, the court will consider plaintiffs' assertions regarding the substantive unconscionability of the delegation clauses despite the absence of procedural unconscionability.

Plaintiffs argue that the delegation clauses are substantively unconscionable because (1) they contain a cost-splitting provision, see Pl. Mem. at 26; (2) they contain a provision requiring the losing party to pay the prevailing party's attorneys' fees, see id. at 29; and (3) they contain a confidentiality provision, see id. at 20. Plaintiffs have not cited any cases in which the Connecticut Supreme Court has suggested that the provisions they complain of might be substantively unconscionable. In fact, plaintiffs have not cited any case in which the Connecticut Supreme Court or the Connecticut Appellate Court has struck down an arbitration agreement as substantively unconscionable. In Hottle, the only case this court is aware of in which the Connecticut Supreme Court applied the doctrine of unconscionability to an arbitration agreement,

the Court was applying New York law. 268 Conn. at 696. In <u>Hottle</u>, the Court

concluded that the agreement at issue was not substantively unconscionable. <u>Id.</u> at

719–721. "In the absence of any controlling ruling from the Connecticut Supreme

Court, this Court must make an attempt to discern how the Connecticut Supreme Court

would rule, 'after giving proper regard to relevant rulings of other courts of the State.'"

<u>D'Antuono</u>, 789 F. Supp. 2d at 329 (quoting <u>Lander v. Hartford Life & Annuity Ins. Co.</u>,

251 F.3d 101, 119 (2d Cir. 2001)). Despite the lack of controlling authority, the court is

nonetheless guided by the well-established rule that a contract clause is substantively

unconscionable only if the clause was one that "no man in his senses, not under

delusion would make, on the one hand, and which no fair and honest man would

accept, on the other." <u>Smith</u>, 247 Conn. at 349; <u>see also</u> <u>DaimlerChrysler Insurance</u>,

762 F.Supp.2d at 421–22.

      i.    <u>Whether the cost-splitting provision is substantively unconscionable</u>. First,

Plaintiffs argue that the cost-splitting provisions render the delegation clauses

substantively unconscionable. Pl. Opp. at 26–27. "The American Arbitration

Association Rules for Commercial Arbitration, which are stated to govern all aspects of

both arbitration agreements, require each party to pay half of the arbitration." <u>Id.</u> at 27.

Under the AAA's Administrative Fee Schedules, the minimum filing fee is $925. <u>See</u>

Commercial Arbitration Rules and Mediation Procedures Administrative Fee Schedules

("AAA Fee Schedule"), available at: <u>http://info.adr.org/feeschedule/</u>. Although both

parties agree that the cost is to be split evenly between the parties, plaintiffs are

responsible for advancing the filing fee. <u>See</u> American Arbitration Association

Commercial Arbitration Rules and Mediation Procedures ("AAA Rules") § R-53 ("The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award.").  Under the terms of Reeves' arbitration agreement, his initial filing fee would be $4,400 for any claim he raises involving $50,000 or more (the amount requiring three arbitrators).  See Reeves Release § 4(d); see also AAA Fee Schedule ("Cases with Three or More Arbitrators are subject to a minimum Initial Filing Fee of $4,400 and a Final Fee of $3,850.").  Billie's arbitration agreement, on the other hand, states that the arbitration proceedings "will be conducted by one arbitrator and according to the AAA's then-current commercial arbitration rules."  CNC Amendment § 7.

Plaintiff's Opposition Memorandum asserts that these costs would prevent the plaintiffs—janitorial workers of modest means—from vindicating their rights.  In Green Tree Financial Corporation-Alabama v. Randolph, 531 U.S. 79, 90 (2000), the Supreme Court acknowledged that "[i]t may well be that the existence of large arbitration costs could preclude a litigant such as [the plaintiff] from effectively vindicating her federal statutory rights in the arbitral forum."  The Court refused to prohibit arbitration, however, because the plaintiff had failed to show that she would "bear such costs if she goes to arbitration."  Id.  "[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."  Id. at 92.  "Although the Supreme Court's pronouncement in Green Tree was technically dicta, it still evidenced that the Supreme Court envisioned that arbitration agreements could be voided where

arbitration would be so expensive as to preclude a litigant from vindicating her rights."

Fromer v. Comcast Corp., 886 F.Supp.2d 106, 109 (D. Conn. 2012).

Plaintiffs' reliance on the "effective vindication" doctrine is misplaced.  The

doctrine, at its core, requires application of the FAA unless the FAA's mandate has been

"overridden by a contrary congressional command."  Am. Express Co. v. Italian Colors

Rest., 570 U.S. 228, 233 (2013) (internal quotations omitted).  Because state law simply

cannot demonstrate a federal congressional command, plaintiffs' claims cannot rely on

Green Tree's "effective vindication" doctrine.  See Italian Colors, 570 U.S. at 252

("AT&T Mobility involved a state law, and therefore could not possibly implicate the

effective-vindication rule. . . . Our effective-vindication rule comes into play only when

the FAA is alleged to conflict with another federal law.") (Kagan, J. dissenting); see also

Ferguson v. Corinthian Colls., Inc., 733 F.3d 928, 936 (9th Cir. 2013) ("The 'effective

vindication' exception, which permits the invalidation of an arbitration agreement when

arbitration would prevent the 'effective vindication' of a federal statute, does not extend

to state statutes."); Keyes v. Ayco Co., L.P., 1:17-CV-00955, 2018 WL 6674292, at *6

(N.D.N.Y. Dec. 19, 2018) ("Plaintiff's claims against the Individual Defendants, however,

are brought under state law.  Plaintiff does not cite to any authority, nor is the Court

aware of any, declining to enforce an arbitration clause as a matter of federal law on the

ground that the arbitral rules burden the plaintiff's ability to vindicate his or her state-law

claims.") (internal quotation omitted) (citing Crewe v. Rich Dad Educ., LLC, 884 F.

Supp. 2d 60, 78 (S.D.N.Y. 2012)); Frankel v. Citicorp Ins. Servs., Inc., No. 11-CV-2293, 2014 WL 10518555, at *10 (E.D.N.Y. Aug. 12, 2014).[5]

Even in the absence of the "effective vindication" doctrine, excessive fees would, at some point, render a delegation clause substantively unconscionable. Although no appellate authority in this state has appeared to address this issue, the court is guided by the doctrine of unconscionability as applied by courts to other contracts and considers whether the record before the court presents the "rare case" where "a provision of a contract [is] so outrageous as to warrant holding it unenforceable based on substantive unconscionability alone." Daimlerchrysler Ins. Co., 762 F. Supp. 2d at 422.

Here, Plaintiffs have failed to meet their burden of establishing substantive unconscionability as to the cost-sharing provision. See D'Antuono, 789 F. Supp. 2d at 327 (noting that the burden of establishing unconscionability lies with the party asserting it as a contract defense). Both Billie and Reeves state that the fees associated with arbitration (including the filing fees) would impose a significant financial hardship and that they would therefore likely drop their claims. Billie Decl. ¶¶ 9, 10; Reeves Decl. ¶¶ 9, 10. However, the record before the court is incomplete both as to the fees likely to be

---

[5] The court nevertheless notes that other "courts have applied Green Tree's framework generally to evaluate claims that arbitration costs render arbitration agreements unconscionable under state law." Damato v. Time Warner Cable, Inc., No. 13-CV-994, 2013 WL 3968765, at *10 n.11 (E.D.N.Y. July 31, 2013); see also Adamson v. Foulke Mgmt. Corp., No. 08–4819 (JBS/KMW), 2009 WL 5174642, at *7 (D.N.J. Dec.18, 2009); Muhammad v. Cty. Bank of Rehoboth Beach, Del., 912 A.2d 88, 102 (N.J.2006); Thomas v. CM Securities, No. CV-095033527S, 2010 WL 3038503, at *9 (Conn. Super. Ct. 2010). The court remains unpersuaded that Green Tree's "effective vindication" doctrine applies to state law claims. The courts that have done so do not explain how the "effective vindication doctrine"—which requires a federal congressional command—applies to state law claims.

incurred and to the plaintiffs' financial situation.[6]  As to the fees, plaintiffs bear the

burden of showing the "likelihood of incurring such costs."  Valdes v. Swift Transp. Co.

Inc., 292 F. Supp. 2d 524, (S.D.N.Y. 2003).  They have met this burden as to the initial

filing fee of $925.  However, Plaintiffs' assertion that Reeves' arbitration would require

three arbitrators (and thus require a filing fee of $4,400) is, at this point, speculative.[7]

Under the terms of the Reeves Release, a panel of three arbitrators would only be

required where the initial claim involves $50,000 or more.  See Reeves Release § 4(d).

The Complaint seeks withheld wages, penalty damages, and refunding of all franchise

fees and additional business fees paid by class members.  See Compl. p. 11.  However,

Plaintiffs have not alleged that Reeves' claims against CNA would exceed $50,000.[8]

Therefore, under the AAA Fee Schedule, for claims involving less than $75,000,

Plaintiffs would be responsible for an initial filing fee of $925.  See AAA Fee Schedule,

available at: http://info.adr.org/feeschedule/.  Based on the record before the court, any

costs beyond the initial filing fee are, at this point, speculative.  Plaintiffs' claims are

especially speculative in light of Rule 53 of the AAA Rules, which state that "[t]he AAA

---

[6] It is not the court's view that plaintiffs must demonstrate precisely their expected costs, and financial assets and income.  However, plaintiffs have failed to come forward with even estimates of some items, and when they have, they are often rough and without supporting bases.

[7] During oral argument, defense counsel represented that, after consultation and authorization from his client, CNA will not enforce this provision in the Reeves contract. Thus, the arbitration of Reeves' claims (like arbitration of Billie's claims) will be conducted by one arbitrator.

Defense counsel also represented to the court during oral argument that, upon consultation and authorization from his client, CNA will not enforce the attorneys' fee provision in Reeves' Arbitration Agreement.  See infra at 30 (citing Reeves' Release § 4(h)).  Despite these representations, the court finds that, even as written, the delegation clause is not substantively unconscionable.

[8] During oral argument, when the court inquired as to the size of plaintiffs' claims, counsel asserted that it could exceed $50,000.  However, counsel was unable to substantiate this assertion.

may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees." See AAA Rules § R-53; see also Valdes, 292 F. Supp. 2d at 534 (enforcing arbitration agreement despite plaintiff's claim of financial burden in light of AAA's hardship provision).

The record before the court is also incomplete as to the plaintiffs' financial situation. In his Declaration, Billie estimates his monthly income to be $2,800 and that he and his wife have approximately $20,000 in savings. Billie Decl. ¶¶ 3, 8. However, he also notes that he owns several rental properties, the values of which are undisclosed. Id. ¶ 3. The Declaration also lacks information as to Billie's cash flow. Reeves estimates his monthly income from his cleaning work to be $4,000, and his wife's monthly income to be $2,500. Reeves Decl. ¶¶ 3, 4. He currently has $4,000 in savings. Id. ¶ 9. Reeves also notes that he "work[s] on cars on the side"; however, he does not disclose the income he derives from this business. Id. ¶ 3. And like Billie's Declaration, Reeves provides no information as to his cash flow. In sum, plaintiffs have not put forth sufficient evidence upon which this court can conclude that the cost-sharing provision (and the $925 filing fee it entails) renders the delegation clause substantively unconscionable.

In their Memorandum and in oral argument, plaintiffs and their counsel direct this court's attention to cases in which courts have struck down arbitration agreements based upon excessive fees. See Pl. Mem. at 27 n.23. However, the court in those cases had the benefit of more developed records. In Mohamed v. Uber Technologies, Inc., the plaintiff submitted fee schedules and invoices from the arbitration service

requiring a $5,000 retainer fee, $7,000 daily arbitration fee, and $700 hourly fee. 109 F. Supp. 3d 1185, 1208 (N.D. Cal. 2015). The plaintiff also submitted an affidavit stating that his sole source of monthly income was $775 in Social Security. Id. In Andresen v. IntePros Federal, Inc., the court relied upon "the undisputed $7,500 filing fee" and concluded that, this fee "standing alone, is more than sufficient to demonstrate cost-prohibitiveness when measured against Dr. Andresen's modest financial circumstances." 240 F. Supp. 3d 143, 159 (D.D.C. 2017). In Haro v. NCR Corporation, the plaintiff, who alleged wrongful termination,[9] submitted evidence stating he had received an annual salary of $73,713. 2005 WL 8153979, at *5 (S.D. Ohio July 26, 2005). Based upon the size of this claim, the court relied upon one study that found that the arbitration costs for an $80,000 arbitration claim ranged from $4,350 to $11,350. Id. Each of these cases involved more complete records and higher fees than the record and fees in this case.[10] See also Shankle v. B-G Maint. Mgmt. of Colorado, Inc., 163 F.3d 1230, 1234–35 (10th Cir. 1999) (estimating the cost of arbitration to be between $1,875 and $5,000).

---

[9] Under the current AAA Employment Arbitration Rules, the filing fee for individuals is capped at $300, and all expenses are borne by the employer. See Employment/Workplace Fee Schedule, available at: https://www.adr.org/employment.

[10] These cases are further distinguished from the case at bar by their reliance upon "the effective vindication" doctrine. See Mohmed, 109 F. Supp. 3d at 1208 (N.D. Cal. 2015) ("California law provides that any clause in an employment agreement that would impose 'substantial forum fees' on an employee in her attempt to vindicate her unwaivable statutory rights is contrary to public policy and therefore substantively unconscionable."); Andresen, 240 F. Supp. 3d at 159 (citing Green Tree, 531 U.S. at 92); Haro, 2005 WL 8153979, at *3 ("If the reviewing court finds that a specific cost-sharing provision would deter a substantial number of similarly situated potential litigants from seeking to vindicate their statutory rights, the provision is unenforceable."); Shankle, 163 F.3d at 1234. Because plaintiffs present only state law claims, the "effective vindication" doctrine does not apply. See supra at 25.

Based on the record before the court, including the information (or lack thereof) regarding the size of the plaintiffs' claim against CNA, the fees plausibly expected, and the plaintiffs' financial situation, the court concludes that the plaintiffs have failed to demonstrate that the cost-sharing provision is substantively unconscionable under Connecticut law.

      ii.      <u>Whether the attorneys' fees provision is substantively unconscionable</u>.

Plaintiffs also argue that the fee-shifting provision that requires the losing party to pay the prevailing party's attorneys' fees is substantively unconscionable. Pl. Opp. at 29. As CNA notes, Billie's Arbitration Agreement contains no fee-shifting clause. <u>See</u> CNC Amendment § 7. The Agreement nonetheless incorporates AAA's Commercial Rules, which allows for an arbitrator to award attorneys' fee under certain conditions. <u>See</u> AAA Rules § R-47(d)(ii) ("The award of the arbitrator(s) may include . . . an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement."). Reeves' arbitration agreement, on the other hand, does include an Attorneys' Fees provision.[11] This provision states:

> Should either Party incur attorneys' fees in order to enforce the terms of this Agreement, including this Arbitration Agreement, whether or not an arbitration is instituted, the prevailing Party shall be entitled to reimbursement by the other Party of all litigation and arbitration costs, including attorneys' fees.

Reeves' Release § 4(h).

---

[11] As noted above, <u>see</u> <u>supra</u> at 27 n.7, defense counsel represented to the court at oral argument that, upon consultation and authorization from his client, CNA will not enforce the attorneys' fees provision in the Reeves' Arbitration Agreement. The court again notes that, even as written, the court does not find the delegation clause to be substantively unconscionable.

Plaintiffs argue that this provision is substantively unconscionable "because it threatens to saddle plaintiff with thousands of dollars in attorneys' fees just to litigate threshold issue of arbitrability." Pl. Opp. at 29. However, the only relevant authority identified by plaintiffs to support this proposition is Ragone v. Atlantic Video at Manhattan Center, 595 F.3d 115, 125–26 (2d Cir. 2010) ("[A] fee shifting provision that requires fees be awarded to the prevailing party . . . would significantly diminish a litigant's rights under Title VII."). In Ragone, "the Second Circuit suggested, but did not hold, that provisions of an arbitration agreement, . . . [including] a fee-shifting provision requiring the award of attorney's fees to the prevailing party[,] might be substantially unconscionable as applied to certain discrimination claims." Arshad v. Transportation Sys., Inc., 183 F. Supp. 3d 442, 449 (S.D.N.Y. 2016) (emphasis added) (citing Ragone, 595 F.3d at 123). As plaintiffs note, Ragone involved claims brought under Title VII. In interpreting Title VII's attorney's fee provision, the Supreme Court has held that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable or groundless . . ." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978). Plaintiffs, however, bring their claims under the Connecticut Minimum Wage Act, not any federal antidiscrimination statute.

Furthermore, plaintiffs do not identify a single Second Circuit or Connecticut court that has invalidated an agreement to arbitrate based on the inclusion of a fee-shifting clause. To the contrary, courts in Connecticut have not found such clauses to be unconscionable. See, e.g., D'Antuono, 789 F. Supp. 2d at 330 ("[T]he Connecticut Supreme Court has never indicated that . . . cost- and fee-shifting provisions . . . can

render an arbitration agreement unenforceable.”); Horrocks v. Keepers, Inc., No. CV-156054684S, 2016 WL 353252, at *7 (Conn. Super. Ct. Jan. 4, 2016) (“Plaintiffs' substantively unconscionable argument is also unavailing because agreeing to the cost and fee shifting provisions is not so unfair that no sensible person would offer the agreement with these provisions and that no fair and honest person would accept the provisions.”).  Therefore, the court cannot conclude that the fee-shifting provision is one in which “no man in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept, on the other.”  Smith, 247 Conn. at 349.

       iii.      Whether the confidentiality provision is substantively unconscionable.

Finally, in a two-sentence paragraph, plaintiffs argue that the confidentiality provision in Reeves’ arbitration agreement is substantively unconscionable.[12]  Pl. Opp. at 30.  The confidentiality provision states:

> A decision by the arbitrator or panel (including any finding of fact and/or conclusion of law) against either Coverall, CNA, or Franchisee shall be confidential unless otherwise required to be disclosed by law and may not be collaterally used against any of them in existing or subsequent litigation, arbitration or other proceeding involving any third party.

Reeves Release § 4(g).  Plaintiffs argue that this clause “provide[s] Coverall with a repeat-player advantage whereas plaintiff would be left ignorant of any favorable decisions by other cleaning workers that successfully challenged the validity of the agreement or other threshold issues.”  Pl. Opp. at 30.  In support of this argument, plaintiffs cite a single Ninth Circuit case, Pokorny v. Quixtar, Inc., 601 F.3d 987, 1002

---

[12] It does not appear, and plaintiffs do not argue, that a confidentiality provision exists in Billie’s arbitration agreement.  Even if such a provision did exist, it would not render the delegation clause in Billie’s Arbitration Agreement substantively unconscionable, for the same reasons described here.

(9th Cir. 2010).  But as CNA correctly notes, in 2017, the Ninth Circuit overruled

Pokorny.  See Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1266 (9th Cir. 2017).  In

so ruling, the Court noted that the California Court of Appeals had "rejected the same

policy argument that [plaintiffs] make[ ] here, namely that such confidentiality provisions

'inhibit employees from discovering evidence from each other.'"  Id. (quoting Sanchez v.

CarMax Auto Superstores Cal. LLC, 224 Cal. App. 4th 398, 408 (2014)).

Plaintiffs did not provide any other authority supporting their position.  To the

contrary, it seems their argument may be foreclosed by AT & T v. Concepcion, 563 U.S.

333 (2011).  In that case, the Supreme Court stated that, "[t]he point of affording parties

discretion in designing arbitration processes is to allow for efficient, streamlined

procedures tailored to the type of dispute.  It can be specified, for example, that the

decisionmaker be a specialist in the relevant field, or that proceedings be kept

confidential to protect trade secrets." 563 U.S. at 345 (emphasis added).  "While the

[Concepcion] Court did not address directly a claim that an arbitration clause was

unconscionable because of a requirement of confidentiality, the writing is on the wall:

the confidentiality of proceedings does not, by itself, render an agreement to arbitrate

unconscionable."  Damato, 2013 WL 3968765, at *12.

Furthermore, the confidentiality requirement applies equally to Reeves and CNA,

and the terms of the Agreement are not one-sided.  See Reeves Release § 4(g) ("A

decision by the arbitrator . . . against either Coverall, CNA, or Franchisee shall be

confidential . . .").  This further suggests that the confidentiality clause does not render

the agreement substantively unconscionable.  See, e.g., Suqin Zhu v. Hakkasan NYC, LLC., 291 F. Supp. 3d 378, 392 (S.D.N.Y. 2017).

## V.    CONCLUSION

For the foregoing reasons, CNA's Motion is denied in part and granted in part. CNA's Motion to Dismiss pursuant to Rule 12(b)(2) is **DENIED**, and CNA's Motion to Dismiss pursuant to Rule 12(b)(6) is **DENIED**.  CNA's Motion to Compel Arbitration is **GRANTED**.  The court will therefore stay this action and administratively close this case (but not enter judgment) until arbitration has concluded.  See Katz v. Cellco P'Ship, 794 F.3d 341, 347 (2d. Cir. 2015) ("[W]e conclude that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").

This action may be reopened by motion of any party at any time, but no later than 60 days after any final arbitration award/decision.

**SO ORDERED.**

Dated this 11th day of March 2020 at New Haven, Connecticut.


    /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge