**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| _____ ) | | |
| CARIBE BILLIE and QUINCY REEVES, ) | | |
| ) | | |
| Plaintiffs, ) | | No. 3:19-cv-0092-JCH |
| ) | | |
| v. ) | | |
| ) | | |
| COVERALL NORTH AMERICA, INC., ) | | |
| ) | | |
| Defendants. ) | | Oral Argument Requested |
| _____ ) | | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION TO LIFT THE STAY**

# **TABLE OF CONTENTS**

I.    Introduction ................................................................................................................. 1

II.   Background ................................................................................................................. 4

III.  Legal Standard ........................................................................................................... 8

IV.   Argument ................................................................................................................. 10

   A.    This Court Should Now Allow Plaintiffs to Pursue Their Claims in Court .................. 10

   B.    The Cost-Splitting Provision in the Arbitration Agreement is Unconscionable and
   Unenforceable as it Prevents Plaintiffs from Pursuing Their Statutory Claims Against
   Coverall ................................................................................................................. 13

      i.    The Cost-Splitting Provision is Unconscionable and Unenforceable .......................... 13

      ii.   The High Costs of Arbitrating Plaintiffs' Claims Are No Longer Speculative ........... 16

      iii.  Plaintiffs Do Not Have the Financial Ability to Pay the High Costs of Arbitration ..... 17

   C.    Coverall is Responsible for These Franchisees' Inability to Pursue Arbitration .......... 21

V.    Conclusion ............................................................................................................... 26

i

## TABLE OF AUTHORITIES

**Cases**

Alfonso v. Maggies Paratransit Corp.
203 F. Supp. 3d 244 (E.D.N.Y. 2016) ....................................................... 9

Allstate Ins. Co. v. Toll Bros., Inc.
171 F. Supp. 3d 417 (E.D. Pa. 2016) ....................................................... 14

Am. Exp. Co. v. Italian Colors Rest.
570 U.S. 228, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) ....................................................... 12

Andresen v. IntePros Fed., Inc.
240 F. Supp. 3d 143 (D.D.C. 2017) ....................................................... 23

Booker v. Robert Half Int'l Inc.
413 F.3d 77 (D.C. Cir. 2005) ....................................................... 21

Brown v. Dillard's, Inc.
430 F.3d 1004 (9th Cir. 2005)....................................................... 24

Brown v. MHN Gov't Servs., Inc.
178 Wash. 2d 258 (Wash. 2013) ....................................................... 15

CellInfo, LLC v. Am. Tower Corp.
2020 WL 7024651 (D. Mass. Nov. 30, 2020)....................................................... 25

Chavarria v. Ralphs Grocery Co.
733 F.3d 916 (9th Cir. 2013)....................................................... 15

Cheshire Mortg. Serv., Inc. v. Montes
223 Conn. 80 (1992) ....................................................... 13

Dobbins v. Hawk's Enterprises
198 F.3d 715 (8th Cir. 1999)....................................................... 2

Doe v. George St. Photo & Video, LLC
2018 U.S. Dist. LEXIS 169529 (N.D. Cal. Oct. 1, 2018)........................................................... 9

Emeritus Senior Living v. Lepore
183 Conn. App. 23 (2018)........................................................... 14

Errato v. American Express Co.
2019 WL 3997010 (D. Conn. Aug. 23, 2019) ........................................................... 9

Gabriel v. Island Pac. Acad., Inc.
140 Haw. 325, 400 P.3d 526 (2017) ........................................................... 15

Garcia v. Mason Contract Prod., LLC
2010 WL 3259922 (S.D. Fla. Aug. 18, 2010)........................................................... 24, 25

Giordano v. Pep Boys--Manny, Moe & Jack, Inc.
No. CIV. A. 99-1281, 2001 WL 484360 (E.D. Pa. Mar. 29, 2001)........................................................... 23

Green Tree Financial Corporation-Alabama v. Randolph
    531 U.S. 79 (2000) ................................................................................. 12, 15

Hottle v. BDO Seidman, LLP
    268 Conn. 694 (2004) .................................................................................. 14

In re Citigroup, Inc.
    376 F.3d 23 (1st Cir. 2004) ......................................................................... 24

Ingalls v. Spotify USA, Inc.
    No. C 16-03533 WHA, 2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) .................................. 14

Krecidlo v. Worldbridge Partners
    2016 WL 6884743 (Conn. Super. Ct. Oct. 18, 2016) ............................................. 12

Marlyn Nutraceuticals, Inc. v. lmprovita Health Products, Inc.
    2008 WL 5068935 (D. Ariz. Nov. 25, 2008) ...................................................... 24

Meadows v. Dickey's Barbecue Rests., Inc.
    144 F. Supp. 3d 1069 (N.D. Cal. 2015) ......................................................... 14

Morrison v. Circuit City Stores, Inc.
    317 F.3d 646 (6th Cir.2003) ...................................................................... 13

Murphy v. Lowe's Home Centers, Inc.
    2015 WL 9911477 (Conn. Super. Ct. Dec. 29, 2015) ............................................. 12

Nadeau v. Equity Residential Props. Mgmt. Corp.
    2017 WL 1842686 (S.D.N.Y. May 5, 2017) ....................................................... 24

Nesbitt v. FCNH, Inc.
    811 F.3d 371 (10th Cir. 2016) .................................................................. 22

Newton v Am. Debt Servs., Inc.
    549 F. App'x 692 (9th Cir. 2013) ............................................................... 15

Petroleum & Franchise Capital LLC v. Teiany Petroleum Naperville LLC
    No. 3:15-CV-00156 (JCH), 2016 WL 4099026 (D. Conn. Aug. 2, 2016) .............................. 14

Polit v. Global Foods Intl. Corp.
    2016 WL 632251 (S.D.N.Y. Feb. 17, 2016) ....................................................... 9

Pre-Paid Legal Servs., Inc. v. Cahill
    786 F.3d 1287 (10th Cir.), cert. denied, 136 S. Ct. 373 (2015) ............................... 24

Ruppelt v. Laurel Healthcare Providers, LLC
    293 P.3d 902, cert. denied, 299 P.3d 422 (N.M. 2012) ......................................... 15

Shankle v. B-G Maint. Mgmt. of Colorado, Inc.
    163 F.3d 1230 (10th Cir. 1999) ................................................................. 22

Smith v. Mitsubishi Motors Credit of Am., Inc.
    247 Conn. 342 (1998) ............................................................................ 14

Spano v. V & J Nat'l Enterprises, LLC
    2017 WL 3738555 (W.D.N.Y. Aug. 30, 2017) ..................................................... 24

<u>Sprague v. Household Intern.</u>
  473 F. Supp. 2d 966 (W.D. Mo. 2005) ................................................................. 15

<u>Stone v. Wells Fargo Bank, N.A.</u>
  361 F. Supp. 3d 539 (D. Md 2019) ...................................................................... 14

<u>Takiedine v. 7-Eleven, Inc.</u>
  2019 WL 934994 (E.D. Pa. Feb. 25, 2019) .......................................................... 14

<u>Tillman v. Tillman</u>
  825 F.3d 1069 (9th Cir. 2016) ..................................................................... passim

<u>Van Voorhies v. Land/home Fin. Servs.</u>
  2010 WL 3961297 (Conn. Super. Ct. Sept. 3, 2010) ........................................... 14

<u>Weiler v. Marcus & Millichap Real Est. Inv. Servs., Inc.</u>
  22 Cal. App. 5th 970, 232 Cal. Rptr. 3d 155 (2018) ........................... 11, 12, 22, 24

**Statutes**

9 U.S.C. § 3 ................................................................................................................ 9

9 U.S.C. § 4 .............................................................................................................. 25

**Other Authorities**

Federal Poverty Level (FPL) ................................................................................... 19

## I.    Introduction

Plaintiffs Quincy Reeves and Caribe Billie originally filed this case in January 2019 as a class action against Defendant Coverall North America Inc. ("Coverall"), alleging that Coverall misclassified them and other similarly situated "franchisee" cleaning workers as independent contractors, when in fact they are Defendant's employees under Connecticut law.  Coverall moved to compel Plaintiffs' claims to individual arbitration pursuant to the arbitration provision in the Plaintiffs' franchise agreements, and over Plaintiffs' objection, the Court compelled arbitration.  See Dkt. 51.  Both Plaintiffs and a third franchisee and putative class member, Veronica Flores, duly filed their claims before the American Arbitration Association and attempted to arbitrate their misclassification and wage claims.  However, as set forth further below, because of the unconscionable and prohibitive costs of the arbitration, Plaintiff Reeves has now been foreclosed from proceeding to the merits of his claim.  Likewise, Flores was unable to even secure a threshold ruling from the arbitrator appointed to her case on the enforceability of the cost-splitting provision in Coverall's agreement without first making a cost-prohibitive deposit, leaving her in the absurd position of being required to pay thousands of dollars to secure a ruling that she cannot afford to pay thousands of dollars.[1]  Though Reeves and Flores attempted to be relieved of these costs, the arbitrators enforced the cost-splitting provision in Coverall's arbitration agreement and left them unable to pursue their statutory wage claims in any forum, be it court or arbitration.

---

[1]     The Arbitrator in Plaintiff Billie's case agreed that the cost-splitting provision was not enforceable and ordered that Coverall must pay the costs of the arbitration in his case.  However, this ruling does nothing to help Reeves and Flores, both of whom have found themselves shut out of the arbitral process because of the cost-splitting provision and the exorbitant fees it imposes.  These litigants should not have to wait until Billie concludes his individual arbitration case in order to have their own claims decided, particularly since whatever decision is rendered in Billie's arbitration will have no preclusive effect on their claims.  See Dkt. 27-1 (Billie Agreement) at ¶ 21(A)(11).

Other courts have allowed plaintiffs like Reeves and Flores, who face prohibitive costs in arbitration, to reopen their claims in court upon making a showing that they could not afford to proceed with the arbitration.  See, e.g., Tillman v. Tillman, 825 F.3d 1069, 1071 (9th Cir. 2016) (reinstating claims in court that were previously compelled to arbitration when plaintiff could not afford to pay high costs of arbitration, and the arbitrator and AAA refused to go forward with the claim); see also Dobbins v. Hawk's Enterprises, 198 F.3d 715, 716 (8th Cir. 1999) (where plaintiffs "made a motion to lift the stay on the basis that the fees imposed by the American Arbitration Association (AAA) and their inability to pay the fees prevented them from effectively asserting their claims…the district court held an evidentiary hearing … on their financial condition and inability to pay the arbitration fees. Following the evidentiary hearing, the district court lifted the stay, reopened the case, and found that the arbitration fees precluded the Dobbinses from availing themselves of the arbitral forum.").  As in these cases, here, the Court should allow Reeves and Flores to proceed on their statutory wage claims in court instead. See infra, § IV(A).

Indeed, there can no longer be any doubt that the cost-splitting provision in Coverall's arbitration agreement is unconscionable and unenforceable.  While the Court initially compelled these claims to arbitration, noting that Plaintiffs had not set forth an adequate record showing they would not be able to afford arbitration, that record has now been established.  As set forth infra, § IV(B), the costs of the arbitration are no longer speculative, as both cleaning workers have been billed thousands of dollars just to secure preliminary rulings in arbitration, and the projected costs of a decision on the merits in both cases are well beyond their ability to pay. Further, both Reeves and Flores have submitted clear evidence of their inability to afford these fees.  See Reeves Aff.; Flores Aff., filed herewith.  In light of this evidence, the

unconscionability of the cost-splitting provision is clear, and the Court should reopen their claims here on that basis.

Furthermore, it also now clear that Coverall has attempted to deploy the cost-splitting provision at every turn as a weapon to force Plaintiff Reeves and Class Member Flores to drop their claims against it. This behavior by Coverall should be held to waive any further right to insist on arbitration of these claims. Indeed, the AAA initially ordered that the AAA Employment Rules would apply to Mr. Reeves' arbitration case, but after Coverall vociferously objected to this determination, the AAA then reversed course and ordered that both parties would need to advance significant filing fees and submit costly arbitrator deposits in order to begin the arbitration proceeding and have an arbitrator appointed. See Ex. A.[2] Mr. Reeves submitted the required forms to the AAA to seek a waiver of his share of the filing fees, which the AAA granted, recognizing that he could not afford to pay these fees; however, at Coverall's urging, the arbitrator nonetheless ordered that he must pay half of the cost of the arbitrator fees, totaling thousands of dollars. Coverall refused to waive enforcement of the provision and instead *actively opposed* Claimant's efforts to apply the AAA Employment Fee schedule or to otherwise shift the costs of the arbitration. Indeed, in Ms. Flores's case, Coverall expressly declined the arbitrator's suggestion that it pay Ms. Flores's share of the required deposit so that the arbitrator could consider the enforceability of the cost-splitting provision. See Ex. J. In sum, Coverall fought determinedly to compel these claims to arbitration, refused to abide by the AAA's preliminary determination that the Employment Rules should apply so that the workers would not have to bear the arbitration fees, and then aggressively used the cost-splitting provision to force the workers from being able to pursue their claims in arbitration. These actions reveal a

---

[2]     All Exhibits are to the Liss-Riordan Affidavit, filed herewith, unless otherwise indicated.

deliberate effort by Coverall to saddle its franchisees with prohibitive costs in arbitration and prevent them from pursuing their statutory wage claims in <u>any</u> forum. The Court should thus not order these claims back to arbitration and allow Coverall another opportunity to arbitrate but instead should recognize this behavior constitutes a waiver of any right Coverall once possessed to arbitrate these claims. <u>See infra</u> § IV(C).

For these reasons, and as described further herein, Plaintiffs requests that this Court lift the stay in this case and allow Plaintiff Reeves and Ms. Flores to proceed with their claims in court.

## II.    Background

Plaintiffs Billie and Reeves originally filed this case in January 2019 against Defendant Coverall North America, Inc. ("Coverall"), alleging that Coverall had misclassified them and other similarly situated "franchisee" cleaning workers as independent contractors, when in fact they are Defendant's employees under Connecticut law. <u>See</u> Dkt. 1. Coverall moved to dismiss Plaintiffs' claims, or in the alternative, to compel them to arbitration pursuant to the arbitration provision in Plaintiffs' franchise agreements. <u>See</u> Dkt. 25. Plaintiffs opposed Coverall's motion, arguing that the delegation clause in Coverall's agreement is unconscionable and unenforceable and that the agreement itself was likewise riddled with unconscionable provisions. In particular, Plaintiffs objected to the cost-splitting provision in the agreement, which requires that the parties split the filing fees and arbitrator compensation even to get a threshold issue decided (like the enforceability of the very cost-splitting provision itself). <u>See</u> Dkt. 38 at 26–29.

Over Plaintiffs' objection, the Court compelled arbitration. <u>See</u> Dkt. 51. In its order, the Court raised a concern that the amount of fees that Plaintiffs may have to pay in arbitration was

speculative and also that Plaintiffs had not provided a detailed record showing their inability to pay such fees.[3]

Following the Court's ruling in March 2020, the Plaintiffs filed their claims in arbitration. A third cleaning worker and putative class member, Veronica Flores, also filed an individual arbitration against Coverall based on the Court's ruling in this case.  As arbitration proceedings began, the American Arbitration Association (AAA) notified both Mr. Reeves and Mr. Billie that it would be applying the AAA Employment Rules to the arbitration.  See Ex. A at p. 6.  Under the Employment Rules, the respondent company must pay all arbitration fees, other than an initial filing fee.  Coverall objected to the application of the AAA Employment Rules and insisted that the AAA apply the Commercial Rules and Commercial fee schedule instead, which requires cost-splitting.  Id.  In response to Coverall's repeated requests, the AAA then reversed its decision, determining that the Commercial Rules and Fee Schedule would apply to Plaintiffs' dispute.  Id. at pp. 2-6.[4]

Knowing that they could not afford to split the cost of the AAA's fees under the Commercial Fee Schedule, Plaintiffs submitted requests for hardship waivers of their share of the filing fees on the AAA's required form.  The AAA eventually granted the requested hardship fee waivers for all three Claimants.  Id.  However, the AAA warned each of them that the fee waiver

---

[3]      See Dkt. 51 at 26–30 ("the record before the court is incomplete both as to the fees likely to be incurred and to the plaintiffs' financial situation…Based on the record before the court, including the information (or lack thereof) regarding the size of the plaintiffs' claim against CNA, the fees plausibly expected, and the plaintiffs' financial situation, the court concludes that the plaintiffs have failed to demonstrate that the cost-sharing provision is substantively unconscionable under Connecticut law.").

[4]      In Ms. Flores's case, which was filed after the two named plaintiffs filed their cases, the AAA declined to apply the Employment Rules and Fee Schedule from the outset.  See Ex. B.

"only pertains to AAA Fees that are your responsibility, and does not affect any obligation to pay arbitrator compensation." Id. at 1.

The Parties proceeded to appoint arbitrators to preside over each case.  In Mr. Reeves' case, Claimant immediately sought to brief the allocation of arbitrator fees as a threshold issue, as he knew he would not be able to proceed if he were required to split the costs of the arbitrator's compensation.[5]  Indeed, the arbitrators chosen to preside over the three cases charge anywhere from $250 to $500 per hour.  See Ex. C, D, E.  Plaintiff Reeves filed a Motion seeking relief from the cost-splitting provision of the AAA Commercial Rules, arguing that the arbitrator had the power to reallocate the fees, or that he should find Coverall's cost-splitting provision unconscionable and unenforceable; however, the arbitrator denied the motion in an opinion dated December 8, 2020.  See Ex. F (Order of Dec. 9, 2020).  Mr. Reeves was then billed $3,937.50 in arbitrator fees *just for deciding the threshold motion regarding the allocation of fees*.  See Ex. G. This bill is consistent with what the AAA and other arbitrators have charged in similar cases to decide the threshold issue of cost-splitting.  See, e.g., Ex. L (requiring a deposit of $3,750 from the Claimant for an arbitrator to be appointed to decide the cost-splitting issue).  Indeed, arbitrators in misclassification cases like this one have billed many thousands of dollars to decide summary judgment, to say nothing of the cost of proceeding to a full hearing on the merits.  See, e.g., Ex. J (charging fees of $9,900 just to cover the Arbitrator's time spent resolving the Parties' cross-motions for summary judgment in misclassification case); Ex. K (charging $28,800 to

---

[5]     Reeves participated in the arbitration in good faith; both sides extensively briefed the cost-splitting issue.  See Liss-Riordan Aff. at ¶ 4.  Both sides also propounded discovery requests, and Reeves responded to written discovery and produced documents.  Id.  Reeves was unable to proceed further in the process because of the arbitrator's adverse ruling on the cost-splitting issue.

resolve summary judgment in misclassification case); Ex. M (charging $27,900 just to determine if the Parties would be permitted to file summary judgment motions).[6]

Mr. Reeves could not afford to pay nearly $4,000, much less the fees associated with the remainder of the arbitration (which would clearly run many thousands of dollars), including opposing Coverall's pending motion to compel discovery and forthcoming summary judgment motion and the three-day hearing scheduled in the case.  See Liss-Riordan Aff. at ¶ 4.   Mr. Reeves informed the AAA that he could not afford to proceed, and the case was terminated without a decision on the merits on January 6, 2021.  See Ex. H.

Meanwhile, a putative class member, Veronica Flores, could not even brief the fee-splitting question to the arbitrator presiding over her case because of prohibitive fees she was told she would have to pay in order to proceed with arbitration.  The arbitrator in her case sought an up-front deposit, requiring her to pay fees associated with his deciding the question of who would have to pay the arbitration fees; the arbitrator estimated Ms. Flores' share to be between $1,250 and $2,500, and she was invoiced by the AAA for $2,500.  See Ex. B, Ex. I.  Coverall declined the arbitrator's invitation to advance Flores's share of the deposit, even though it knew that the AAA had already waived filing fees, which totaled nearly $2,000 for Ms. Flores, based on its determination that she could not afford to pay them.  See Ex. I.  Because she could not afford to pay the required sum in arbitrator fee deposits, the arbitrator informed the AAA that he would be closing the file.  See Ex. J.  Thus, Ms. Flores' case was closed before she could even obtain a ruling on the enforceability of Coverall's cost-splitting provision.

Plaintiff Reeves and Class Member Flores simply do not have the financial ability to pay the exorbitant fees required under Coverall's agreement, even to begin to arbitrate their claims.

---

[6]     In these cases, the employer bore the cost of the arbitrator's compensation, even though the Claimants were classified as independent contractors.

They have attempted to avail themselves of the arbitral forum and have now been turned away, with Coverall working at every turn to exploit the fee-splitting provision in the agreement to force them to drop their claims.  The arbitrators assigned to their cases charge hundreds of dollars per hour in fees.  <u>See</u> Ex. C, Ex. D (arbitrators' resumes).  Moreover, both Plaintiffs are in no position to pay thousands of dollars in order to have their claims under the Connecticut wage laws heard.  Plaintiff Reeves has already been billed thousands of dollars in arbitration fees where the only issue that has been ruled upon is the cost-splitting provision; the first bill Reeves received from the AAA for $3,937.50 is more than twice Reeves' monthly income from Coverall.  <u>See</u> Reeves Aff. at ¶¶ 5, 19.  Likewise, Flores was asked to pay a deposit of between $1,250 and $2,500, which is between 1-2 times her monthly income from Coverall, just to allow her to argue why the cost-splitting provision in Coverall's contract was unenforceable.  <u>See</u> Flores Aff. at ¶¶ 4, 18.  Similar to Plaintiff Reeves, Flores is unable to pay this amount up front just to get a preliminary decision, particularly given the difficult times her family is currently experiencing.  <u>Id.</u> at ¶ 9 (describing her husband's unexpected health crisis).  At this time, both the arbitration and the instant case before the Court are closed, leaving Reeves and Flores without any open avenues through which to pursue their claims.  Plaintiffs do not anticipate a change in their financial situation that would permit them to return to arbitration, and they should not be required to exhaust what little savings they have themselves just for the chance to get a decision on the merits of their statutory wage claims.  Thus, Plaintiffs move for this Court to lift the stay so they have some forum in which to pursue their claims.

## III.     Legal Standard

The Federal Arbitration Act "'directs a district court to enter a stay of proceedings in cases where the claims are referable to arbitration.'"  <u>Polit v. Global Foods Intl. Corp.</u>, 2016 WL

632251, at *2 (S.D.N.Y. Feb. 17, 2016) (internal citations omitted).  This stay is to remain "until

such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.[7]

Courts are free to reopen cases that were stayed pending arbitration when the parties require

additional relief from the court.  See Tillman, 825 F.3d at 1072 (court granted defendant's

motion to lift the stay where plaintiff was unable to afford the costs of the arbitration); see also

Errato v. American Express Co., 2019 WL 3997010, at *16 (D. Conn. Aug. 23, 2019) ("If the

parties require additional relief from this Court following the arbitration, they may move to re-

open this case."); Alfonso v. Maggies Paratransit Corp., 203 F. Supp. 3d 244, 251 (E.D.N.Y.

2016) (granting  motion to compel arbitration "while permitting [p]laintiff to seek further relief .

. . should he later find himself precluded from arbitrating his claims").

     Here, this Court expressly noted in its Order compelling arbitration that "[t]his action

may be reopened by motion of any party at any time, but no later than 60 days after any final

arbitration award/decision." See Dkt. 51 at 34.  Pursuant to the Court's Order (Dkt. 51), Plaintiffs

now move to reopen the case on the ground that Reeves and another franchisee have attempted to

---

[7]    Here, the arbitration has been "had" in accordance with the agreement insofar as Reeves
and Flores have attempted to arbitrate their claims under the agreement, but the arbitrations have
been terminated prior to the issuance of a final award. See Tillman, 825 F.3d at 1073-74 (holding
that Tillman's case was "had in accordance with the terms of the agreement" where the parties
attempted to arbitrate the case, but it was terminated short of a final award on the merits because
"Tillman could no longer pay the arbitrator's fee"); Doe v. George St. Photo & Video, LLC,
2018 U.S. Dist. LEXIS 169529, at *14–15 (N.D. Cal. Oct. 1, 2018) (finding that arbitration was
had in accordance with the terms of the agreement where it was terminated "after Plaintiff
informed the arbitrator she was unable to pay her share of the arbitration fees").  Because the
arbitration has already been "had" for both Reeves and Flores, it would be improper to compel
arbitration anew, should Coverall make such a request. See Greco v. Uber Techs., Inc., 2021 WL
134578, at *1 (N.D. Cal. Jan. 14, 2021) (denying motion to compel arbitration where arbitration
was already "had" under 9 U.S.C. § 3 but was terminated without a decision; "Uber's motion
amounted to a request for a second arbitration (which the parties did not bargain for).").
Moreover, as set forth further infra, § IV(C), the Court should recognize that Coverall has
waived its right to compel arbitration based on its actions in arbitration to actively try to prevent
these franchisees from pursuing their wage claims there.

arbitrate and have been unable to pursue their claims in arbitration under the terms of Coverall's franchise agreement.

**IV.    Argument**

When the Court compelled arbitration, it noted that the case could be "reopened by motion of any party at any time…." Dkt. 51 at 34. In the months following this Court's order, Plaintiff Quincy Reeves has demonstrated that arbitration is not a viable forum for him to pursue his claims as he does not have the ability to pay the high fees he was ordered to pay in arbitration. Although when he was previously before the Court, he did not have specific evidence showing what he would be required to pay in arbitration, he has now accumulated that evidence, and it is clear that the costs of arbitrating the case will be many thousands of dollars. Furthermore, Mr. Reeves' financial situation has suffered during the pandemic, as many of his Coverall customers have cancelled service during the pandemic. See Reeves Aff. Under these circumstances, Mr. Reeves must be permitted to reopen his claims in court. The Court should thus now lift the stay in his case so that he and other affected franchisees like Ms. Flores can continue to pursue their claims.

A. This Court Should Now Allow Plaintiffs to Pursue Their Claims in Court

This Court has the authority to reinstate these cleaning workers' claims in court, as numerous other courts have taken similar steps where a litigant proved unable to avail themselves of the arbitral forum due to unconscionable and prohibitive fees. In Tillman v. Tillman, the Ninth Circuit considered the situation in which "one party runs out of funds to pay for its share of the arbitration and the arbitrator thereupon terminates the arbitration proceedings without entering an award or judgment or otherwise resolving the case." 825 F.3d 1069, 1071 (9th Cir. 2016). The Tillman court ruled that the plaintiff, who was compelled to arbitration but

10

who "was ultimately unable to provide the required deposit of $18,562.50 [that] the AAA asked for as a condition of continuing the proceedings", had to be permitted to continue pursuing her claims in court in lieu of arbitration.  Id. at 1072.  The Ninth Circuit noted that "the district court [had] expressly found that [plaintiff] lacked the resources to deposit the arbitration fee", and under such circumstances, the court had "an obligation and a duty to decide [the case]".  Id. at 1075.  The same is equally true here where the plaintiff cannot afford the hefty costs of nearly $4,000 that the AAA is requiring as a condition of continuing the proceedings, much less the total costs of completing the arbitration, and the case has been closed without entering any award or judgment.

Similarly, in Roldan v. Callahan & Blaine, 219 Cal. App. 4th at 95–96 (2013), several indigent clients were compelled to arbitrate their claims but could not afford arbitration costs and returned to court seeking relief.  The California Court of Appeal ruled that the Defendant must choose to "either pay th[e] plaintiff's share of the arbitration cost and remain in arbitration or waive its right to arbitrate that plaintiffs claim" and have the claims reinstated in court instead.  Id. at 96.  The Roldan Court noted that "to rule otherwise might effectively deprive them of access to any forum for resolution of their claims….", which would violate the "long-standing public policy of ensuring that all litigants have access to the justice system for resolution of their grievances, without regard to their financial means."  Id. at 94, 96 (emphasis added); see also Weiler v. Marcus & Millichap Real Est. Inv. Servs., Inc., 22 Cal. App. 5th 970, 978, 232 Cal. Rptr. 3d 155, 161 (2018) (holding that "from a public policy standpoint, a defendant accused of wrongdoing should not be permitted to avoid potential liability by forcing the matter to

arbitration and subsequently making it so expensive that the plaintiff eventually has no choice but to give up.").[8]

The same is true here.  Similarly situated plaintiffs have tried and failed to make arbitration work, including by urging the AAA and arbitrators to require Coverall to pay the arbitration costs they cannot afford.  See Dkt. 38 at 27–28 (detailing Coverall's "troubling history of using prohibitively expensive fees to bar its workers from bringing claims against it").  Indeed, Coverall expressly refused the arbitrator's invitation to advance Ms. Flores' share of the deposit needed to allow the arbitrator to decide the enforceability of the cost-splitting provision in her case, even knowing that the AAA had waived her share of the filing fees.  See Ex. J at pp.

---

[8]     This Court noted in its previous order that it did not believe the effective vindication doctrine described by the Supreme Court's decision in Green Tree Financial Corporation-Alabama v. Randolph, 531 U.S. 79, 90 (2000), applies to state law claims like the ones at issue here.  See Dkt. 51 at 24-26.  But the decisions cited above underscore the very real danger of depriving litigants of any ability to pursue their rights under state law, whether in court or arbitration, because of prohibitive costs imposed by a mandatory arbitration clause.  Whether the Court considers the appropriate doctrine to apply here to be state law unconscionability doctrine or effective vindication of rights, the result is the same: Plaintiffs cannot be completely deprived of any forum in which to pursue their claims simply because they are working people of modest means.  See id. at 26 (noting that "[e]ven in the absence of the 'effective vindication' doctrine, excessive fees would, at some point, render a delegation clause substantively unconscionable.").  In Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 236 (2013), the Supreme Court noted that "filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable" could render an arbitration agreement unenforceable. Therefore, this Court should relieve Plaintiffs from the burden of paying these high arbitration costs, as "to rule otherwise might effectively deprive them of access to any forum for resolution of their claims against [the Defendant]." Weiler, 22 Cal. App. 5th at 981.
        Further, Plaintiffs respectfully urge the court to reconsider its conclusion that the "effective vindication" doctrine would not apply to state law claims; Roldan and Weiler show why an "effective vindication" doctrine must apply to state law claims, and couts applying Connecticut law have similarly looked favorably upon the use of the Green Tree standard in cases involving only state law claims. See Murphy v. Lowe's Home Centers, Inc., 2015 WL 9911477, at *3 (Conn. Super. Ct. Dec. 29, 2015) (citing Green Tree, 531 U.S. at 92) ("Although excessive costs can render an arbitration agreement unconscionable in some cases, it is the plaintiff's burden to show that arbitration would be 'prohibitively expensive.'"); Krecidlo v. Worldbridge Partners, 2016 WL 6884743, at *8 (Conn. Super. Ct. Oct. 18, 2016).

2-3.[9]  As a result, and in light of their financial situations, Mr. Reeves and Ms. Flores cannot

afford to pay the high costs of continuing their arbitrations and must therefore be permitted to

proceed in court instead.  To rule otherwise would mean that they are unable to vindicate their

statutory rights under the wage laws in <u>any</u> forum, be it court or arbitration.

B.  <u>The Cost-Splitting Provision in the Arbitration Agreement is Unconscionable and
Unenforceable as it Prevents Plaintiffs from Pursuing Their Statutory Claims Against
Coverall</u>

This Court previously found that the cost-splitting provision in the arbitration agreement

was not unconscionable based on the lack of a fully developed record, both on the issue of

Plaintiffs' finances and the concrete, non-speculative costs of arbitration.  <u>See</u> Dkt. 51 at 26–30.

Plaintiff Reeves and Class Member Flores have now accumulated evidence to demonstrate the

unconscionability of the cost-splitting provision as applied to them, as described further below.

*i.*   ***The Cost-Splitting Provision is Unconscionable and Unenforceable***

The cost-splitting provision in the arbitration agreement is unconscionable as applied to

Plaintiff Reeves and others, such as Class Member Flores, who cannot afford the unreasonably

high costs of arbitrating their wage claims.  "The question of unconscionability is a matter of law

to be decided by the court based on all facts and circumstances of the case."  <u>Cheshire Mortg.

Serv., Inc. v. Montes</u>, 223 Conn. 80, 87 (1992) (citations omitted).  Unconscionability can be

either procedural or substantive; procedural unconscionability focuses on unfair surprise while

---

[9]      As set forth <u>infra</u>, § IV(C), Coverall should not be permitted to reverse course now and
offer to pay Plaintiffs' share of the fees after spending months fighting to force Reeves and
Flores to have to pay half the costs of the arbitration, both before the AAA and the respective
arbitrators. <u>See</u> <u>Morrison v. Circuit City Stores, Inc.</u>, 317 F.3d 646, 676-77 (6th Cir.2003) ("In
considering the ability of plaintiffs to pay arbitration costs under an arbitration agreement,
reviewing courts should not consider after-the-fact offers by employers to pay the plaintiff's
share of the arbitration costs where the agreement itself provides that the plaintiff is liable, at
least potentially, for arbitration fees and costs.…Because the employer drafted the arbitration
agreement, the employer is saddled with the consequences of the provision *as drafted*.")

substantive unconscionability looks to whether the terms of a contract are oppressive and unreasonably favor one side over the other.  See Smith v. Mitsubishi Motors Credit of Am., Inc., 247 Conn. 342, 349 (1998).  Terms that are unreasonably imbalanced or favorable to one party may be invalidated as substantively unconscionable.  See Hottle v. BDO Seidman, LLP, 268 Conn. 694, 719 (2004); Emeritus Senior Living v. Lepore, 183 Conn. App. 23, 29 (2018).  In certain circumstances, a showing of substantive unconscionability alone will make a contract unenforceable.  Smith, 247 Conn. 342 at 353; Petroleum & Franchise Capital LLC v. Teiany Petroleum Naperville LLC, 2016 WL 4099026, at *4-5 (D. Conn. Aug. 2, 2016).  Here, Coverall's agreement incorporates the AAA Commercial Rules, which require cost-splitting between the parties.  However, Coverall is a multi-national corporation with revenues of millions of dollars each year whereas the plaintiffs are individual commercial cleaning workers.  Thus, the cost-splitting provision in the agreement (which was drafted exclusively by Coverall and presented on an adhesive basis)[10] operates to unconscionably favor Coverall, which is in a far better position to afford the costs of arbitration and can leverage its superior financial standing to force individual franchisees like Reeves and Flores to drop their claims.

In Van Voorhies v. Land/home Fin. Servs., 2010 WL 3961297, at *9 (Conn. Super. Ct. Sept. 3, 2010), a court found a similar cost-splitting provision, which stated that "[t]he parties

---

[10]    The provision is also procedurally unconscionable insofar as it was a lengthy adhesive agreement that does not even expressly state that the costs of the arbitration will be split; instead, the agreement incorporates by reference the AAA Commercial Rules, a separate set of lengthy rules that cover numerous topics including cost-splitting.  Thus, it is clear that cleaning workers would be unfairly surprised by this term.  Cf. Takiedine v. 7-Eleven, Inc., 2019 WL 934994, at *9 (E.D. Pa. Feb. 25, 2019) (finding mere incorporation by reference of the AAA Rules was not sufficient to clearly and unmistakably delegate arbitrability where one party was unsophisticated); Stone v. Wells Fargo Bank, N.A., 361 F. Supp. 3d 539 (D. Md 2019) (same); Allstate Ins. Co. v. Toll Bros., Inc., 171 F. Supp. 3d 417, 427-29 (E.D. Pa. 2016) (same); Ingalls v. Spotify USA, Inc., No. C 16-03533 WHA, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016) (same); Meadows v. Dickey's Barbecue Rests., Inc., 144 F. Supp. 3d 1069 (N.D. Cal. 2015) (same).

agree to equally share the cost of arbitration and agree to bear their own respective attorneys'
fees and expenses", to be unconscionable and unenforceable where the plaintiff sought to bring
statutory wage claims.  Numerous other courts have likewise found such cost-splitting provisions
to be unconscionable and unenforceable where they operate to deprive an individual bringing
employment claims of access to the arbitral forum. See, e.g., Gabriel v. Island Pac. Acad., Inc.,
140 Haw. 325, 338 (2017) ("[T]he cost-splitting provision is substantively unconscionable
because it would be prohibitively expensive for Gabriel to pursue her claims in the arbitral
forum…Therefore, we hold that the cost-splitting requirement alone is unconscionable as
impermissibly one-sided, in favor of IPA").[11]  Based on this line of authority, the cost-splitting
provision at issue here plainly operates to deprive Reeves and Flores of any ability to bring their
statutory wage claims and is substantively unconscionable.  As in Van Voorhies and the
numerous other cases cited herein, the cost-splitting provision operates to unreasonably favor
Coverall (a multi-national corporation with in-house lawyers and millions in revenues) and to
deprive the franchisees like Reeves and Flores of the ability to bring their claims.

---

[11]     See also Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 925-26 (9th Cir. 2013) (noting
that "[i]n addition to the problematic cost provision, Ralphs' arbitration policy contains a
provision that unilaterally assigns one party . . . the power to select the arbitrator whenever an
employee brings a claim"); Newton v Am. Debt Servs., Inc., 549 F. App'x 692, 694 (9th Cir.
2013) (noting that "[f]our aspects of this arbitration agreement render it substantively
unconscionable," including the forum provision, the one-sided process for selection of the
arbitrator,  the limitation on damages, and the increased potential liability for attorneys' fees
beyond what's provided for by statute); Brown v. MHN Gov't Servs., Inc., 178 Wash. 2d 258,
275-76 (Wash. 2013) (noting that "[i]t is proper to decline to sever unconscionable provisions if
the agreement is permeated with unconscionability" and finding that where "three provisions are
found unconscionable," the lower court did not abuse its discretion in striking the whole
agreement); Ruppelt v. Laurel Healthcare Providers, LLC, 293 P.3d 902, 909, cert. denied, 299
P.3d 422 (N.M. 2012) (rejecting the argument that the arbitration agreement's "savings clause
should act to sever the offending portion" where "one-sided arbitration provisions were central to
the overall arbitration scheme"); Sprague v. Household Intern., 473 F. Supp. 2d 966, 976 (W.D.
Mo. 2005) (holding the cost-splitting provision unconscionable where enforcing it "would result
in the Plaintiffs being 'saddled with prohibitive costs'") (quoting Green Tree, 531 U.S. at 81).

### ii.     *The High Costs of Arbitrating Plaintiffs' Claims Are No Longer Speculative*

There is no longer a question of the "likelihood" of costs being imposed, and the "risk" of

prohibitive costs is <u>not</u> speculative.  Plaintiff Reeves was in fact ordered to pay significant

arbitrator fees by the American Arbitration Association (AAA), totaling $3,937.50. <u>See</u> Ex. G.

After Reeves informed the AAA that he would not be able to pay these fees, the AAA closed his

case.  <u>See</u> Ex. H.  The arbitrator in his case, Martin A. Gould, charges a fee of $250 per hour.

<u>See</u> Ex. C.  To Plaintiff's knowledge, the only actions taken by the arbitrator towards resolution

of Plaintiff's claims at the time he was billed several thousand dollars was an initial conference

call between the parties, setting a schedule for proceedings, and the decision on Plaintiff's

Motion regarding the cost-splitting provision.  Had Plaintiff attempted to go forward, it is clear

that the costs of the overall proceeding would have been many thousands of dollars, as he had yet

to even brief a pending motion to compel discovery and forthcoming motion for summary

judgment in his case, to say nothing of the three-day hearing the parties had scheduled for the

spring.  <u>See</u> Liss-Riordan Aff. at ⁋ 4.  It is safe to assume that the arbitrator would spend *at least*

twice as much time resolving the remaining dispositive motions and discovery motion as he did

on the initial motion concerning the fee allocation, meaning Reeves would easily have been

billed more than $12,000 (if not far more) to complete his arbitration.

Bills from other similar arbitrations support these estimates.  In one arbitration in 2019

involving a similar misclassification claim, fees of $9,900 were incurred just to cover the

arbitrator's time spent resolving the parties' cross-motions for summary judgment.  <u>See</u> Ex. J.  In

another independent contractor misclassification case in 2018, an arbitrator charged $28,800 to

resolve summary judgment motions.  See Ex. K.[12]  In a third such case, the arbitrator charged

$27,900 just to brief the question of whether the parties would be permitted to file summary

judgment motions (and eventually ruled he would not entertain any such motions).  See Ex. M.

Thus, if anything, Reeves' estimate that he would have to pay $12,000 or more to resolve his

misclassification and wage claims is very conservative.[13]

Here, the initial bill, coupled with the $250/hour rate of the arbitrator and the schedule for

the remaining proceedings demonstrate the likely costs that will be incurred here.  Given that the

arbitrator in Ms. Flores's case charges $500/hour, see Ex. D, the fees are likely to be twice as

high in her case.  For all these reasons, Plaintiffs have now shown beyond a doubt that the costs

of arbitrating their wage claims will be many thousands of dollars, and as set forth infra,

IV(A)(iii), they cannot afford these sums.

### iii.    Plaintiffs Do Not Have the Financial Ability to Pay the High Costs of Arbitration

As Plaintiff Reeves set forth in his previous submission to the court, he is a high school

graduate who worked as a carpenter before becoming a commercial cleaner for Coverall.  See

Dkt. 38-3 at ¶ 2.  At the time of his last declaration in April 2019, he made roughly $3,500 per

month cleaning for Coverall, and along with his wife's income as a medical assistant

---

[12]    In both of these cases, the company paid the costs of the arbitration, as their arbitration
agreements did not include the unconscionable cost-splitting provision at issue here or they
agreed to waive it.  By contrast, Coverall has aggressively wielded its cost-splitting provision to
the greatest extent possible and has refused to advance a penny even to allow the franchisees
even to secure a ruling on the enforceability of the cost-splitting provision.  Indeed, the arbitrator
in Flores' case asked if Coverall would be willing to advance her share of the deposit so that he
could rule on the cost-splitting issue, and Coverall refused.

[13]    Similarly, Class Member Flores was ordered to deposit between $1,250 and $2,500 just
for the opportunity to brief the enforceability of the cost-splitting provision to the arbitrator,
which she cannot afford.  See Ex. I.  These costs are not speculative; they were imposed, and her
case is now being closed as a result.

(approximately $2,500 per month after taxes), they supported their two children.  Id. at ¶¶ 3-4, 7.
Since that time, Plaintiff's inability to pay for arbitration has been exacerbated by the ongoing
COVID-19 pandemic. See Reeves Aff. at ¶ 4.[14]  Indeed, as a result of many accounts suspending
service and eventually cancelling permanently during the pandemic, Plaintiff Reeves' income
from Coverall has been drastically reduced to just $1,700 to $1,800 per month.  Id. at ¶¶ 4-5; Ex.
A thereto.  This income in combination with Reeves' wife's annual salary of $36,000, from her
work as a medical assistant, barely covers their monthly expenses which total more than $2,000
each month (including $1,050 for rent, $125 for car insurance, several hundred dollars for
utilities, including $100 for internet alone, and $600 for groceries for their family of four).  See
Reeves Aff. at ¶¶ 8, 13-16.  Thus, their combined income at present is less than three times the
federal poverty level for a family of four (which is the benchmark that the AAA used in deciding
that Reeves could not afford to pay half the filing fees in the case)[15], in a state where the cost of
living is much higher than in much of the country.  Furthermore, Reeves has significant debt, see

---

[14]     The Arbitrator's supposition in his Order (Ex. F) that the case could not cost Mr. Reeves
more than $10,000 to arbitrate is frankly not supported by the evidence to date, which suggests it
will cost several times that amount.  (And even if that were so, even a sum of $10,000 is
prohibitively expensive for Mr. Reeves; indeed, even if the total cost of arbitration were not to
exceed the current amount owed, $3,937.50, the cost of arbitration is still beyond Plaintiff
Reeves' ability to pay.).
         Here, the initial bill, coupled with the $250/hour rate of the arbitrator and the schedule for
the remaining proceedings demonstrate the likely costs that will be incurred here.  Given that the
arbitrator in Ms. Flores's case charges $500/hour, see Ex. D. the fees are likely to be twice as
high in her case.  See, e.g., Ex. K (arbitrator charged fees of $9,900 just to cover the arbitrator's
time spent resolving the Parties' cross-motions for summary judgment in misclassification case);
Ex. L (arbitrator charged $28,800 to resolve summary judgment in misclassification case); Ex. M
(arbitrator charged $27,900 to resolve the question of whether the parties should be permitted to
file motions for summary judgment in misclassification case)).

[15]     The AAA's hardship waiver form states that "absent other supporting information
requested in this affidavit, individuals whose gross monthly income exceeds 300% of the federal
poverty guidelines will not likely receive approval to have the AAA's fees waived." See
Affidavit in Support of Administrative Fees Hardship Waiver, available at:
https://adr.org/sites/default/files/Support_of_Hardship_Waiver_of_Fees_1.pdf

id. at ¶ 17, and his and his wife's only retirement savings total roughly $8,000.  Id. at ¶ 12.  The bill for the arbitrator's time on the initial cost-splitting issue alone would wipe out half his retirement savings.  Again, Reeves was told he would need to pay nearly *four thousand dollars* -- just for a decision on the threshold issue of whether he would have to pay for the arbitration.  The cost of the entire arbitration would likely total at least $10,000 and more likely several times that amount, particularly if the parties' anticipated cross-motions for summary judgment were disallowed and it were to go to a three-day hearing.  Reeves did not, and does not, have the ability to pay this high cost.  Arbitration is simply not a viable avenue for him to pursue his wage claims.

Class Member Flores has also shown that she could not pursue her claims in arbitration due to the financial barrier.  In her case, Flores was told she would have to pay between $1,250 and $2,500 in order to present even this threshold issue to the arbitrator of whether she would have to pay for arbitration.  Flores has lost multiple accounts with Coverall during the course of the pandemic which has reduced her income from Coverall to roughly $1,124 per month.  See Flores Aff. at ¶¶ 3-4.  She and her husband support their three children, as well as her husband's parents, and must rely on their total income of roughly $6,800 per month to feed, house, and otherwise provide for a seven-member household, which is well below three times the federal poverty line (the benchmark that the AAA used in deciding Flores could not afford to pay half the filing fees in her case) for a family of this size.  Id. at ¶ 4, 5, 7.[16]  In addition to her typical

---

[16]     The federal poverty line for a family of seven is $40,120.  See Federal Poverty Level (FPL), available at: https://www.healthcare.gov/glossary/federal-poverty-level-fpl/. Three times that benchmark is $120,360, while Flores and her husband make a combined total of well below six figures annually.  Even if her in-laws (who Flores does not claim as dependents on her taxes) were not included in the size of her household, she still makes less than three times the federal poverty line for a family of five.

monthly expenses of $6,000 per month for her mortgage, utilities, car payments and insurance, and food, Flores has recently incurred further costs and financial uncertainty due to her husband's recent health issues. Id. at ¶ 9-13. Flores also has significant debt in the form of student loans. Id. at ¶ 15. It is plain from Flores' affidavit and supporting documents that she does not have thousands of dollars with which to pay the fees the AAA has charged her for access to arbitration, as she is currently barely able to meet her monthly expenses, and she is being forced to draw on what little she has in savings to help weather a medical crisis with her spouse.[17]

This Court previously held there was not a sufficient record "to demonstrate that the cost-sharing provision is substantively unconscionable." Dkt. 51 at 30. But now, Plaintiffs have assembled a robust record showing actual costs imposed in arbitration to date and a clear roadmap of what the further costs of the arbitration would be to resolve their claims on the merits. Plaintiffs have also presented a clear record of their finances, which even the AAA acknowledged warrant a waiver of their respective share of the AAA's filing fees, given that each of them makes less than three times the federal poverty level and would face a significant burden in having to pay thousands of dollars just to get their wage claims adjudicated. Bearing half the costs of arbitrator compensation is far too much for these individuals to afford. The cost-splitting provision is therefore unconscionable, and the arbitration agreement cannot be enforced.

---

[17]     Flores has less than $10,000 in the bank and is in the midst of dealing with her husband's medical crisis. Id. at ¶¶ 8-9. It is patently unreasonable to expect Flores to pay 15-25% of her family's only savings in order to pay to even get a ruling on the enforceability of the cost-splitting provision. That this money was requested by AAA as a condition of even getting a ruling on the threshold issue of enforceability of the cost-splitting provision underscores why the delegation clause itself in the agreement is unconscionable; Ms. Flores was effectively precluded from even getting her foot in the door to get a threshold ruling from the arbitrator as to whether the agreement itself is unconscionable, or relief from the cost-splitting provision.

Further, as set forth further <u>infra</u>, § IV(C), the Court should not simply sever the cost-splitting provision and send these franchisees back to arbitration, but should instead allow their claims to now proceed in court.  To do otherwise would reward Coverall's overreaching in drafting this unconscionable provision and seeking to wield it as a way to force its cleaning workers to drop their claims without ever reaching the merits.  <u>See Booker v. Robert Half Int'l Inc.</u>, 413 F.3d 77, 84-85 (D.C. Cir. 2005) ("If judges merely sever illegal provisions and compel arbitration, employers would be no worse off for trying to include illegal provisions than if they had followed the law in drafting their agreements in the first place.").  Further, as explained <u>supra</u>, n. 7, the arbitration has already been "had" and has terminated without an award on the merits, so that no further arbitration should be ordered.  <u>See</u> <u>Greco</u>, 2021 WL 134578, at *1.  The claims should proceed before this Court.

C.  <u>Coverall is Responsible for These Franchisees' Inability to Pursue Arbitration</u>

Coverall's behavior in forcing Plaintiffs into individual arbitration, then insisting that the AAA Commercial Rules must apply so that they would be required to split the arbitration costs, despite the AAA's contrary determination, and Coverall's active opposition to reapportioning the costs (despite the AAA's recognition that these individuals could not afford to pay them) all evidence a deliberate attempt by Coverall to wield the cost-splitting provision against these franchisees to force them to drop their claims.  Indeed, Coverall drafted the adhesive contract containing the unconscionable term in the first instance.  Defendants often offer to pay plaintiffs' share of the fees in such situations in recognition of the fact that the cost-splitting provision would otherwise operate as an unconscionable barrier to the vindication of their rights, depriving them of any forum in which to litigate their claims.  Here, Coverall did the opposite.  It <u>insisted</u> the provision was not unconscionable and <u>even touted in its briefing to this Court that the</u>

21

<u>Plaintiffs could simply petition for a waiver of the fees in arbitration</u>, <u>see</u> Dkt. 41 at 12; however,

<u>once in arbitration, Coverall aggressively argued against the application of the Employment Fee</u>

<u>Schedule or otherwise reapportioning the costs at every turn</u>.  <u>See, e.g.</u>, Ex. A.  Indeed, even <u>after</u>

the AAA granted both Reeves and Flores a waiver of their portion of the AAA filing fees,

Coverall continued to fight to make sure they had to bear half the costs of the arbitrator fees,

totaling thousands of dollars, and it expressly declined the arbitrator's invitation to forward

between $1,250 and $2,500 to allow the arbitrator to rule on the enforceability of the cost-

splitting provision, thereby shutting Ms. Flores out of arbitration entirely.  <u>See</u> Ex. J.

 In light of these actions, it is clear that Coverall is responsible for these franchisees'

inability to proceed successfully in arbitration to a final award on the merits of their wage claims.

Where Plaintiffs have made a showing that they cannot afford prohibitively high costs of

pursuing their claims in arbitration, courts have allowed such claims to proceed in court, as set

forth above.  <u>See</u> <u>Tillman</u>, 825 F.3d at 1071 (reinstating claims that were previously compelled to

arbitration when plaintiff could not afford to pay high costs of arbitration); <u>Roldan</u>, 219 Cal.

App. 4th at 95 (where indigent clients were compelled to arbitrate their claims but could not

afford arbitration costs and returned to court seeking relief, the Appeals Court ruled that the

Defendant must choose to "either pay that plaintiff's share of the arbitration cost and remain in

arbitration or waive its right to arbitrate that plaintiff's claim" and proceed in court because "to

rule otherwise might effectively deprive them of access to any forum for resolution of their

claims…"); <u>Weiler</u>, 22 Cal. App. 5th at 981.[18]

---

[18]  See also <u>Nesbitt v. FCNH, Inc.</u>, 811 F.3d 371, 377-381 (10th Cir. 2016) (refusing to
enforce arbitration agreement in light of cost-sharing provisions that could require worker to bear
half the costs of pursuing her wage claim in arbitration, which she estimated at "between
$2,320.50 and $12,487.50 in costs simply paying for the arbitrator's time"); <u>Shankle v. B-G
Maint. Mgmt. of Colorado, Inc.</u>, 163 F.3d 1230, 1234-35 (10th Cir. 1999) (where plaintiff

Other courts have employed a similar analysis and have ordered that the defendant must pay all costs in arbitration, save for the small cost of the filing fee that plaintiffs would have had to pay in court,[19] or have allowed an arbitration to go forward subject to a promise by the defendants that they will front all costs associated with arbitration.  However, here, Coverall advocated for reconsideration of the AAA's determination that the Employment Rules should apply in Plaintiff's case, see Ex. A, ultimately resulting in the application of a new set of rules which require Plaintiff Reeves to pay thousands of dollars in fees *without the arbitrator even having heard his underlying claims*.  See Ex. G.  Plaintiff Reeves attempted to rectify this situation by moving to apply the Employment Rules or to otherwise reallocate the fees or invalidate the cost-splitting provision, but the arbitrator denied the motion.  See Ex. F.  Meanwhile, Class Member Flores could not even manage to get her foot in the door to secure a ruling because in her case, the arbitrator required an up-front deposit before he would entertain her challenge to the cost-splitting provision (perhaps in response to the fact that Mr. Reeves ultimately proved unable to pay the bill for the arbitrator's decision in his case).

---

showed that he "would have had to pay an arbitrator between $1,875 and $5,000 to resolve his claims" and he "could not afford such a fee," the court concluded that the arbitration agreement "placed Mr. Shankle between the proverbial rock and a hard place—it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum" such that arbitration could not be compelled).

[19]     See, e.g., Andresen v. IntePros Fed., Inc., 240 F. Supp. 3d 143, 157-58, 163 (D.D.C. 2017) (where plaintiff would have to pay "a $4,000 initial arbitration filing fee and a $3,500 final fee under the applicable AAA Commercial Arbitration Rules" plus arbitrator compensation, and plaintiff demonstrated that her financial status rendered these sums prohibitively expensive, the court severed the cost-sharing requirement and ordered defendant to pay all costs "less the $400 that is analogous to the filing fee in this Court."); Giordano v. Pep Boys--Manny, Moe & Jack, Inc., 2001 WL 484360, at *6-7 (E.D. Pa. Mar. 29, 2001) (holding that where plaintiff "was a fairly low-level employee of Pep Boys earning a relatively low wage of $400.00 per week" and "the initial filing fee [in arbitration] would likely amount to $2,000" with "daily fees anywhere near the range of $600 to $900", the cost-sharing provision in the agreement was unenforceable and defendant would have to "bear the costs of arbitration and the amount of filing fees in excess of the cost of filing a complaint in federal court.").

It is well established that a defendant can waive arbitration by acting "inconsistently with a right to arbitrate." In re Citigroup, Inc., 376 F.3d 23, 26 (1st Cir. 2004); see also Marlyn Nutraceuticals, Inc. v. lmprovita Health Products, Inc., 2008 WL 5068935 (D. Ariz. Nov. 25, 2008) ("Inconsistency usually is found when one party engages in *conduct preventing arbitration* ...") (emphasis added). Thus, courts have held that where a party seeks to frustrate an arbitration after compelling arbitration in the first instance, that party has waived its right to arbitration and cannot then move to enforce the underlying arbitration agreement. See Brown v. Dillard's, Inc., 430 F.3d 1004, 1010, 1012 (9th Cir. 2005) (noting that by refusing to participate in the arbitration proceedings defendant had "waived its right to arbitrate Brown's claims").[20]

Plaintiffs expect that Coverall will argue that Reeves and Flores are in breach of the agreement because they did not pay the exorbitant arbitrator compensation deposits, totaling thousands of dollars each. However, courts have recognized that where a case is dismissed from arbitration because a party is "unable to pay for her share of arbitration" as opposed to "*choosing* not to pay for arbitration", the case must then be allowed to proceed in court. See Tillman, 825 F.3d at 1075–76; see also Weiler, 22 Cal. App. 5th at 981 (the party's financial status must not

---

[20]    This situation usually arises where a defendant refuses to pay for arbitration after compelling it, but the principle applies equally to the instant situation where a defendant presses for arbitration and then attempts to make sure the Claimants will be saddled with half the costs they clearly cannot afford, forcing them to drop their claims. See Pre-Paid Legal Servs., Inc. v. Cahill, 786 F.3d 1287, 1288–89, 1299 (10th Cir.), cert. denied, 136 S. Ct. 373 (2015) (court did not abuse its discretion in allowing claims to proceed in court where the defendant compelled arbitration in the first instance and then refused to pay AAA fees); Garcia v. Mason Contract Prod., LLC, 2010 WL 3259922, at *1 (S.D. Fla. Aug. 18, 2010) (granting Rule 60(b) motion to reopen case where defendant compelled arbitration but then failed to pay the required fees); Spano v. V & J Nat'l Enterprises, LLC, 2017 WL 3738555, at *12 (W.D.N.Y. Aug. 30, 2017); Nadeau v. Equity Residential Props. Mgmt. Corp., 2017 WL 1842686 (S.D.N.Y. May 5, 2017) (where defendant did not pay its filing fee and the AAA administratively terminated the case, plaintiff was permitted to pursue a subsequently filed class action suit in court).

be "a result of the party's intentional attempt to avoid arbitration.").[21]  Under these

circumstances, where Plaintiffs have secured hardship waivers for their portion of the filing fees

from the AAA and have shown they are working people of modest means, and where Coverall

has insisted that Plaintiffs must pay, resulting in dismissal of their arbitration cases, Reeves and

Flores must be allowed to proceed with their claims in court.

In the cases cited supra, n. 20, all four courts held that a defendant who first fought to

compel arbitration but then refused to cooperate with the arbitral process, had forfeited its right

to proceed in arbitration and would have to defend itself in court.  As the Garcia court aptly

noted:

> Why under these circumstances, when the Plaintiff claims that he has a statutory right to
> seek relief … would a federal court turn him aside *again* in favor of arbitration when the
> party who demanded that arbitration in the first place so cavalierly ignored Plaintiff's
> right to speedy resolution of statutory claims when the Court's eyes looked elsewhere? To
> ask the question is to answer it.

Garcia, 2010 WL 3259922, at *1.  The same is true here.  The Court should find that Coverall

has waived its right to enforce the arbitration agreement and should allow these claims to

proceed in court instead, notwithstanding any eleventh hour offer to pay the costs that Coverall

---

[21]    Courts have found that "whether the arbitration 'has been had in accordance with the
terms of the agreement,' depends on whether the non-payment was a failure, neglect, or outright
refusal to arbitrate, as opposed to an innocent inability to pay and proceed with the arbitration."
See CellInfo, LLC v. Am. Tower Corp., 2020 WL 7024651, at *3 (D. Mass. Nov. 30, 2020)
(citing 9 U.S.C. § 4).  Here, there is no indication that Mr. Reeves or Ms. Flores deliberately
sabotaged the arbitration and refused to pay.  They were both granted a hardship waiver for their
share of the filing fees by the AAA.  Reeves duly briefed the issue of splitting arbitrator fees in a
good faith attempt to be relieved of the cost-splitting requirement and proceed with the
arbitration, and he participated fully in discovery before his case was terminated because he
could not pay the fees.  Likewise, Class Member Flores sought to brief the enforceability of the
cost-splitting provision to the arbitrator and was told he would not entertain the briefing unless
she deposited several thousand dollars, which she is not in a position to pay, particularly given
her husband's unexpected illness, which required multiple surgeries.  See Flores Aff. at ₱ 9.
Thus, this case clearly presents an innocent inability to pay, and the arbitration has clearly "been
had in accordance with the terms of the agreement" such that lifting the stay is appropriate.

may now make, only *after* Plaintiffs have briefed this Motion and sought relief from this Court. To do so, would reward Coverall's efforts in trying to force Plaintiffs to drop their claims, only to reverse course when its callous behavior failed.

In sum, Plaintiffs did not create the problem presented in this motion—Coverall did. Plaintiffs therefore have no choice but to ask the Court to lift the stay and reopen these claims in court.  Now that arbitration has proven cost-prohibitive and ineffective, and the AAA has closed the cases, the Court should allow Reeves and Flores to proceed here, just as the Ninth Circuit ordered in <u>Tillman</u>. 825 F.3d at 1072.  Arbitration has been had and terminated as a result of these franchisees' inability to pay the fees which Coverall foisted upon them; if they are not allowed to pursue their wage claims in court, they will have no avenue available to them to vindicate their rights at all.

## V.    Conclusion

For the foregoing reasons, Reeves and Flores respectfully requests that this Court grant the instant motion to lift the stay and administratively reopen the case so that they may proceed with their misclassification and wage claims against Coverall in court.


Date: March 9, 2021                                  Respectfully submitted,

                                                     Plaintiffs,
                                                     By their attorneys,

                                                      *s/ Shannon Liss-Riordan*
                                                     Shannon Liss-Riordan, *pro hac vice*
                                                     Adelaide Pagano, *pro hac vice*
                                                     LICHTEN & LISS-RIORDAN, P.C.
                                                     729 Boylston Street, Suite 2000
                                                     Boston, MA 02116
                                                     Tel. (617) 994 – 5800
                                                     Fax (617) 994 – 5801
                                                     sliss@llrlaw.com, apagano@llrlaw.com

Richard E. Hayber (ct11629)
Michael T. Petela (ct28251)
The Hayber Law Firm, LLC.
750 Main Street, Suite 904
Hartford, CT  06103
Telephone:  (860) 522-8888
Facsimile:   (860) 218-9555
Email:  rhayber@hayberlawfirm.com;
mpetela@hayberlawfirm.com