## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARIBE BILLE and QUINCY REEVES, individually and on behalf of all other similarly situated individuals,<br>    Plaintiffs | :<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>3:19-CV-00092-JCH |
| v. | :<br>: | |
| COVERALL NORTH AMERICA, INC.<br>    Defendant | :<br>: | |

## **DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION TO LIFT THE STAY**

- 1 -

I, Shannon Liss-Riordan, do hereby declare:

1. I am a partner at the law firm of Lichten & Liss-Riordan, P.C. and counsel for the Plaintiffs in the above-captioned matter. I submit this declaration in support of Plaintiffs' Motion to Lift the Stay.

2. My firm filed individual arbitration cases for Quincy Reeves and Caribe Billie, the plaintiffs in this action, as well as a third cleaning franchisee, Veronica Flores, against Defendant Coverall North America Inc. before the American Arbitration Association (AAA).

3. The AAA initially indicated that the Employment Rules would apply to these misclassification and wage claims, but at Coverall's urging, it eventually reversed course and applied the Commercial Rules. Because these cleaning workers could not afford to pay half of the filing fees in this case, totaling thousands of dollars, each of the workers submitted a hardship waiver affidavit on the AAA's required form. All three had their waivers granted and their share of the filing fees waived by the AAA.

4. With the filing fees waived, we proceeded to have arbitrators appointed to each case. In Mr. Reeves' case, my firm participated in an initial conference call with the arbitrator where we asked that we be permitted to brief the enforceability of the cost-splitting provision as a threshold issue. The Parties set a schedule for briefing this issue and the rest of the case, including discovery, cross motions for summary judgment, and a three-day hearing in the spring. Mr. Reeves participated fully in the arbitration; we propounded discovery and responded to Coverall's discovery requests, producing several hundred pages of documents. We met and conferred about discovery issues, and Coverall filed a Motion to Compel Discovery. Before Mr. Reeves responded to this

Motion, he received the arbitrator's ruling on his request to reapportion the arbitrator fees or otherwise invalidate the cost-splitting provision. The Arbitrator refused Mr. Reeves' request, and the AAA billed him nearly $4,000 just for the time spent to date on the case (namely, the initial conference call and study and decision on the Claimant's Motion re Cost-Splitting).

5. In Ms. Flores' case, my firm participated in an initial conference call with the arbitrator where we again asked that we be permitted to brief the enforceability of the cost-splitting provision as a threshold issue. This time, the AAA raised who would be paying for the arbitrator's time in making a decision on this threshold issue. The Arbitrator agreed that he would try to limit his time in an attempt to keep costs down, but he nonetheless asked both parties to submit a deposit, which he estimated would be between $1,250 and $2,500 each. He specifically asked Coverall if it would agree to pay Ms. Flores' share of the deposit so he could entertain her request to reapportion fees or otherwise invalidate the cost-splitting provision. However, Coverall refused this request. Ms. Flores could not afford to risk the required deposit given her family's precarious financial situation. After informing the AAA, we were told the file would be closed within 30 days.

6. Attached as **Exhibit A** is a true and correct copy of an email thread between the AAA, my firm, and counsel for the Defendant regarding which set of Rules would apply to Mr. Reeves' and Mr. Billie's arbitration cases as well as the AAA's acceptance of Claimants' hardship waiver of fee requests, dated June 25, 2020 through July 13, 2020.

7. Attached as **Exhibit B** is a true and correct copy of an email thread between the Arbitrator, the AAA, my firm, and counsel for the Defendant in Ms. Flores's arbitration case, dated January 20 - 21, 2021, in which the arbitrator determines that each party

should be invoiced $2,500 for an initial ruling on the enforceability of the cost-splitting provision, and that the file will be closed in 30 days if payment is not received.

8. Attached as **Exhibit C** is a true and correct copy of the resume of Arbitrator Martin Gould, appointed to preside over Quincy Reeves' arbitration case, which includes his current rates for arbitrator compensation.

9. Attached as **Exhibit D** is a true and correct copy of the resume of Arbitrator D. Charles Stohler, appointed to preside over Veronica Flores' arbitration case, which includes his current rates for arbitrator compensation.

10. Attached as **Exhibit E** is a true and correct copy of the resume of Arbitrator Emmanuel Psarakis, appointed to preside over Caribe Billie's arbitration case, which includes his current rates for arbitrator compensation.

11. Attached as **Exhibit F** is a true and correct copy of Arbitrator Gould's December 7, 2020, Ruling on the cost-splitting issue in Quincy Reeves' arbitration case.

12. Attached as **Exhibit G** is a true and correct copy of a letter from the AAA dated December 4, 2020, ordering Mr. Reeves to pay a deposit of $3,927.50 to cover the arbitrator's compensation.

13. Attached as **Exhibit H** is a true and correct copy of a letter from the AAA dated January 6, 2021, closing Mr. Reeves' arbitration case.

14. Attached as **Exhibit I** is a true and correct copy of an invoice from the AAA dated January 22, 2021 ordering Ms. Flores to pay $2,500 in arbitrator compensation deposits in order to obtain a ruling on the enforceability of the cost-splitting provision.

15. Attached as **Exhibit J** is a true and correct copy of an invoice dated May 22, 2019, in another single-claimant arbitration involving independent contractor misclassification

and wage claims, *Marino v. VIP's a Gentleman's Club*, AAA No. 01-18-0001-9767-2-JW, for the arbitrator's time studying, hearing, and drafting a decision on the parties' cross-motions for summary judgment.

16. Attached as **Exhibit K** a true and correct copy of an invoice in four consolidated single-claimant arbitrations involving independent contractor misclassification and wage claims, *Benjelloun, et al. v. Uber Techs. Inc.*, dated February 15, 2018, for the arbitrator's time studying, hearing, and drafting a decision on a *single* set of cross-motions for summary judgment.   The Respondent company paid the entirety of the arbitrator's fees in this case.

17. Attached as **Exhibit L** is a true and correct copy of an invoice, dated August 12, 2015, from the AAA to another cleaning franchise in a similar case against one of Coverall's competitors, in *Ribeiro v. System4*, AAA No. 01-15-0003-8637-1-JW, totaling $3,750. This invoice was just to cover the Arbitrator's time in reaching an initial ruling on a threshold question of arbitrability -- the enforceability of the cost-splitting provision.

18. Attached as **Exhibit M** is a true and correct copy of an invoice dated May 3, 2019, from an arbitrator in *Archer v. GrubHub Inc.*, ADRS No. 18-5707-RAH, an individual independent contractor misclassification case, in which the arbitrator billed $27,900 in arbitration fees just on the issue of *whether the parties would be permitted to file motions for summary adjudication*.  The arbitrator ultimately concluded motions would not be permitted.  The Respondent company paid the entirety of the arbitrator's fees in this case.

- 5 -

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


March 9, 2021                                              __s/ Shannon Liss-Riordan___
                                                           Shannon Liss-Riordan