UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARIBE BILLIE and QUINCY REEVES, | ) ) ) | |
| Plaintiffs, | ) ) | No. 3:19-cv-0092-JCH |
| v. | ) ) ) | |
| COVERALL NORTH AMERICA, INC., | ) ) | |
| Defendants. | ) ) ) | Oral Argument Requested |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION TO LIFT THE STAY**

1

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

    A.    The Stay Should Be Lifted as Reeves Has Demonstrated That He Tried in Good Faith to Arbitrate and to Seek Relief From the Oppressive Cost-Splitting Provision. ........ 1

    B.    Contrary to Coverall's Contentions, This Court Has Authority to Rule on Plaintiff's Request. ................................................................................................................ 4

    C.    Plaintiff's Motion is Not A Motion for Reconsideration, and in Any Event, New Facts and Subsequent Developments Would Warrant Reconsideration of the Unconscionability of the Cost-Splitting Provision ............................................................. 9

    D.    Coverall Has Acted in Bad Faith. ..................................................................... 10

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

Brady v. Williams Cap. Grp., L.P.
  64 A.D.3d 127, 878 N.Y.S.2d 693 (2009), aff'd as modified, 14 N.Y.3d 459, 928
  N.E.2d 383 (2010) .................................................................................................................. 7

Brandao v. Jan-Pro Franchising Int'l, Inc.
  95 Mass. App. Ct. 1103, 124 N.E.3d 159 (2019) .......................................................... 5, 6, 7, 8

Camacho v. Holiday Homes, Inc.
  167 F. Supp. 2d 892 (W.D. Va. 2001) .................................................................................... 5

Celllnfo, LLC v. Am. Tower Corp.
  No. CV 18-11250-WGY, 2020 WL 7024651 (D. Mass. Nov. 30, 2020) ............................. 1, 2

Freedman v. Tozzoli
  71 Pa. D. & C.4th 353 (Com. Pl. 2005) .................................................................................. 7

Green Tree Financial Corporation-Alabama v. Randolph
  531 U.S. 79 (2000) .................................................................................................................. 6

Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.
  602 F.3d 237 (3d Cir. 2010) .................................................................................................... 9

In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.
  2006 U.S. Dist. LEXIS 20575 (S.D.N.Y. April 17, 2006) ...................................................... 4

Mendez v. Palm Harbor Homes, Inc.
  111 Wash. App. 446, 45 P.3d 594 (2002), as amended (June 6, 2002) ............................... 1, 7

Polit v. Global Foods Int'l Corp.
  2016 WL 632251 (S.D.N.Y. Feb. 17, 2016) ........................................................................... 8

Pre-Paid Legal Servs., Inc. v. Cahill
  786 F.3d 1287 (10th Cir. 2015) ............................................................................................... 3

Roldan v. Callahan & Blaine
  219 Cal. App. 4th 87, 161 Cal. Rptr. 3d 493 (2013), as modified (Sept. 18, 2013) ............ 6, 7

Tillman v. Tillman
  825 F.3d 1069 (9th Cir. 2016) ........................................................................................ 3, 8, 9

Weiler v. Marcus & Millichap Real Est. Inv. Servs., Inc.
  22 Cal. App. 5th 970, 232 Cal. Rptr. 3d 155 (2018) ..................................................... 4, 5, 6, 7

**Statutes**

9 U.S.C. § 10(a)(3) ...................................................................................................................... 8

9 U.S.C. § 3 ................................................................................................................................. 9

Conn. Gen. Stat. § 51 -199b(d) .................................................................................................... 8

# INTRODUCTION

Plaintiff must be able to pursue his remedial misclassification and wage claims in some forum, be it court or arbitration. Given the AAA's recent dismissal of his case for failure to pay thousands of dollars in arbitrator fees, it is now clear that those claims must be reinstated before this Court. To rule otherwise would mean that companies like the defendant can wield cost-splitting in arbitration "as a sword to strike down access to justice" instead of the shield against bloated litigation costs that arbitration was intended to be. Mendez v. Palm Harbor Homes, Inc., 111 Wash. App. 446, 465, 45 P.3d 594, 605 (2002), as amended (June 6, 2002).

# ARGUMENT

### A. The Stay Should Be Lifted as Reeves Has Demonstrated That He Tried in Good Faith to Arbitrate and to Seek Relief From the Oppressive Cost-Splitting Provision.

As set forth in Plaintiff's Motion to Lift the Stay, Plaintiff Quincy Reeves has diligently attempted to arbitrate his claim against Coverall on the merits, first in court, and then in arbitration, but he has been thwarted by Coverall's oppressive cost-splitting provision, which has prevented him from effectively vindicating his rights. In its Opposition, Coverall nonetheless argues that there are no grounds for lifting the stay because Reeves has failed to make the required showing that he tried to arbitrate in good faith. According to Coverall, a party "must show that it diligently arbitrated, that it sought alternative funds but failed, that it attempted to adjust payment, get a discount or delay from the AAA, that it did not drag foot without action, [and] that it made reasonable efforts to arbitrate in good faith." Celllnfo, LLC v. Am. Tower Corp., No. CV 18-11250-WGY, 2020 WL 7024651, at *4 (D. Mass. Nov. 30, 2020). But here, Reeves did all of those things. Thus, even by Coverall's proposed standard, he is entitled to relief from this Court. Reeves "diligently arbitrated": he served and answered discovery in his arbitration case, produced documents, participated in a scheduling conference, and briefed the cost-splitting issue for the arbitrator. See Dkt. 55 at ¶¶ 2-4. Reeves "attempted to adjust payment": he filled out the AAA's

1

required form to receive a waiver of his share of the filing fees and he actively sought relief from the fee-splitting provision with respect to his share of the arbitrator fees, submitting an affidavit and briefing on the issue. Id. at ¶¶ 3-4. Reeves "did not drag foot without action"; on the contrary, he acted promptly after his request was denied by the arbitrator in filing this Motion. It simply cannot be the legal standard that Reeves was required to literally exhaust his bank account by paying every last cent to his name before returning to this Court for redress.[1]

Coverall's citation to CellInfo, LLC v. Am. Tower Corp., No. CV 18-11250-WGY, 2020 WL 7024651 (D. Mass. Nov. 30, 2020), and the cases it relies on, are plainly distinguishable from the instant case. First, CellInfo involved a bona fide commercial dispute between a "business that provides services to wireless companies to improve cellular coverage" and a communications real estate developer, in which CellInfo brought claims for "misappropriation of confidential information and trade secrets and unfair competition" among other claims. Id. at *5. Here, by contrast, Plaintiff is a low-wage cleaning worker with a family to support, who is bringing wage claims against an international commercial cleaning company.

Moreover, the wireless company in CellInfo failed to seek relief from the AAA or the arbitrator to address its professed inability to pay the fees in its arbitration case. See id. at *9 (noting that "CellInfo failed to do the one simple thing common sense calls for in such a situation, that is, to reach out to the AAA to address its financial hardship."). Similarly, in Pre-Paid Legal Servs., Inc. v. Cahill, on which CellInfo relied, the defendant, Mr. Cahill, simply refused to pay his share of the arbitration fees and "did not request any form of accommodation from the

---

[1] Reeves' good faith is underscored by the fact that his co-plaintiff, Caribe Billie, who is represented by the same counsel, sought and was granted relief from the fee-splitting provision in his separate arbitration case. Billie has been diligently pursuing his case on the merits, taking extensive discovery and preparing cross-motions for summary judgment, which are due to be filed in the next few weeks. Unlike Billie, Reeves has been completely deprived of any forum in which to pursue his claims on the merits. Reeves files this Motion to Lift the Stay and proceed in court because he has been left with no other option in order to obtain a decision on the merits of his misclassification and wage claims.

arbitrators." 786 F.3d 1287, 1289 (10th Cir. 2015). By contrast, here, Mr. Reeves did everything he could to seek relief from the oppressive cost-splitting provision, including seeking relief from the AAA and the arbitrator. Indeed, he sought and was granted a waiver of his share of filing fees by the AAA, and he sought (and was denied) relief from his share of the arbitrator fees.  Reeves' diligence in this regard is not in doubt, unlike the litigants in CellInfo and Cahill.[2]

Finally, in CellInfo, the court itself convened an evidentiary hearing on the wireless company's inability to afford the costs of the arbitration, see id. at *8, and it was only *after* hearing testimony that the court reached its own judgment about whether the plaintiff "made a good faith attempt to overcome the payment hurdle and proceed with the arbitration." Id. at *7, *10.[3] Thus, here, if the Court has any doubt about Reeves' good faith, it could convene its own evidentiary hearing on the subject.

In sum, this case does not present the scenario described by the Ninth Circuit in Tillman v. Tillman, where a party "refuse[s] to arbitrate by *choosing* not to pay for arbitration." 825 F.3d 1069, 1075 (9th Cir. 2016) (emphasis in original). Coverall's characterization that Reeves simply "chose not to make the deposit the AAA requested", see Dkt. 61 at 7, is a patent misrepresentation, and crediting it would lead to the absurd result that a litigant must bankrupt himself before he could be considered to have acted in good faith in trying to comply with a cost-

---

[2]     Coverall claims that "[a]lthough [Reeves] requested that the arbitrator declare the AAA's cost-splitting provision unconscionable, he did not support that request with any actual evidence of an inability to pay. Nor did Reeves ask the AAA to reduce the amount of his deposit, seek leave to proceed without a deposit, or seek alternative funds to pay the deposit…" See Dkt. 61 at 8.  But Coverall's statement is patently false.  Reeves did provide evidence of an inability to pay -- in the form of sworn statement, attaching the AAA form which had been accepted by the AAA itself as sufficient evidence of his inability to afford half the costs of the arbitration. And Reeves did ask the AAA to reduce the amount he would be required to pay, but it held that it only had the power to waive his share of the filing fees, not the arbitration compensation deposits. See Dkt. 55-1 at p. 1 ("Please keep in mind this only pertains to AAA Fees that are your responsibility, and does not affect any obligation to pay arbitrator compensation.").

[3]     Even after concluding that the plaintiff wireless company there had not met its burden, the court declined to dismiss the plaintiff's claims (as Coverall urges the Court to do here) and instead encouraged the parties to return to arbitration, presumably so that CellInfo, which had since retained new counsel and acquired some fresh funds from its investors, could resume the arbitration. Id. at *10.

3

splitting provision. Indeed, in granting Reeves a waiver of his share of the filing fees, despite the fact that he disclosed roughly $12,000 in funds in his bank accounts, the AAA recognized that the mere fact that a litigant is theoretically able to pay a requested filing fee, does not mean that he can *afford* to do so. See Dkt. 55-1 (granting request for hardship waiver). Here, Reeves helps support a family of four, and the requested fees represented a large portion of his family's only safety net, in midst of a global pandemic, which has adversely affected his income from Coverall. See Dkt. 56 at ¶¶ 7, 4, 11. As the California Court of Appeal correctly recognized, "we are more concerned with deep-pocketed parties leveraging their wealth to deprive their opponents of the right to resolve their disputes than we are with parties choosing to bankrupt themselves as a way out of arbitration and into court." Weiler v. Marcus & Millichap Real Est. Inv. Servs., Inc., 22 Cal. App. 5th 970, 981 (2018). This case presents just such a scenario -- a deep-pocketed party forcing Reeves into arbitration and then attempting to leverage the cost-splitting provision in its agreement to prevent him from ever reaching the merits of his claims. In sum, the Court should reject Coverall's assertion that Reeves failed to arbitrate in good faith and simply refused to pay the requested fees. Neither the facts nor the case law support Coverall's argument.[4]

### B. Contrary to Coverall's Contentions, This Court Has Authority to Rule on Plaintiff's Request.

Coverall also makes a number of arguments aimed at convincing this Court that it lacks the authority to rule on Plaintiff's request to allow him to proceed in court now that his efforts to

---

[4] Coverall also argues that the Court lacks jurisdiction over Ms. Flores and should not consider the facts pertaining to her case. Dkt. 61 at 16. Flores is a putative class member in this putative class action. Plaintiffs intend to amend the complaint to add Ms. Flores as a named plaintiff. Indeed, courts routinely permit the addition or substitution of one named plaintiff for another in class action cases. See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 2006 U.S. Dist. LEXIS 20575, *24 (S.D.N.Y. April 17, 2006). But Plaintiffs cannot amend to add Ms. Flores until the stay is lifted. Thus, Plaintiffs are faced with a chicken and the egg problem insofar as Ms. Flores cannot seek to join the case until the stay is lifted, but Coverall argues that her experience in arbitration cannot be considered unless and until she joins the case. Coverall's argument should be rejected; Ms. Flores' *inability to even secure a ruling on the enforceability of the cost-splitting provision* without paying several thousand dollars is yet another example of a Coverall cleaning worker being unable to vindicate their statutory rights in arbitration. While she could file her own case in this Court, it would be far more efficient for the Court to recognize her situation as the same as Reeves and reopen this case and allow her to participate, either as a named plaintiff or class member.

arbitrate have failed. But Coverall's arguments are unavailing, as set forth further below.

First, Coverall insists that the arbitrator has already ruled against Plaintiff Reeves in finding the cost-splitting provision was not unconscionable and would be enforced and that this ruling is not subject to review by this court. See Dkt. 61 at 9-11. But Coverall's argument is wrong for several reasons. First, Plaintiff is not seeking "review" of the Arbitrator's order on cost-splitting; instead, Plaintiff is asking this court to determine whether, in light of the arbitrator's order that he pay half the fees, he may now proceed in court because he has proven that he is unable to effectively vindicate his rights in arbitration. See Brandao v. Jan-Pro Franchising Int'l, Inc., 95 Mass. App. Ct. 1103, 124 N.E.3d 159 (2019) ("Whether the arbitrator properly allocated the arbitration fees is not the issue before us, and Brandao does not seek review of that order. The issue before us is whether, in light of the arbitrator's order, Brandao may now proceed in Superior Court.").

Coverall's argument that lifting the stay would effectively reverse the arbitrator's order is fatally flawed, as it improperly conflates two issues: state law unconscionability analysis and effective vindication of rights doctrine. Here, Plaintiff Reeves is arguing that he must be able to vindicate his rights under the Connecticut wage laws in some forum, be it court or arbitration. As the California Court of Appeals recognized in Weiler, the situation presented by such a case "is not about 'unconscionability'" because at this juncture, after arbitration has been compelled and the plaintiff has found himself unable to afford it despite his best efforts to seek relief from the arbitrator and the AAA, the plaintiff is merely seeking to proceed in some forum, be it court or arbitration. Weiler, 22 Cal. App. 5th at 980 (emphasis added); see also Camacho v. Holiday Homes, Inc., 167 F. Supp. 2d 892, 896 n. 2 (W.D. Va. 2001) (distinguishing between state law

5

unconscionability doctrine and effective vindication doctrine).[5] In this sense, the Weiler court recognized that the case was about the plaintiff's ability to effectively vindicate her rights, not the unconscionability of the agreement or the cost-splitting provision under state law.[6] The same is true here; while the arbitrator here ruled that the cost-splitting provision was not unconscionable and would be enforced against him, Reeves' argument to the court now is a different one -- that he has proven unable to effectively vindicate his rights in arbitration despite his best efforts, and therefore, he must be permitted to continue in court or else have Coverall pay the required fees.[7] Thus, the Court need not decide any issue delegated to the arbitrator, such as the enforceability of cost-splitting provision. Instead, the Court need only determine whether Reeves can effectively vindicate his rights in arbitration.

Claimant recognizes that this court previously opined that the effective vindication doctrine set forth by the Supreme Court in Green Tree Financial Corporation-Alabama v. Randolph, 531 U.S. 79, 90 (2000), does not apply to state law claims. See Dkt. 51 at pp. 24-26, n. 5. But as Plaintiff explained in his Motion to Lift the Stay, the doctrine *must* apply to state law

---

[5]    By contrast, "[a] party arguing unconscionability generally contends that, despite being a term mutually agreed to by the parties, the arbitration provision should be deemed unenforceable because: (1) it is so one-sided as to shock the conscience (i.e., it is substantively unconscionable); and (2) it came about by surprise or through a process which was unreasonably oppressive due to, for example, unequal bargaining power (i.e., it is procedurally unconscionable). When proven, it is a complete defense to enforcement of an arbitration provision." Id. (internal citations omitted).

[6]    In his Motion to Lift the Stay, Plaintiff argued under cases like Tillman, Roldan, and Weiler, that he should be permitted to reopen his claims in court because he must be able to pursue his claims in some forum, be it court or arbitration. See Dkt. 54-1 at 10-13. He also argued in the alternative, that the provision is unconscionable, recognizing that the Court previously refused to recognize an effective vindication of rights doctrine as applied to state law claims. See Dkt. 54-1 at 13-15. But this case aptly illustrates why the two should not be conflated. Even an arbitration agreement that is not otherwise unconscionable must give way if it would operate to deprive the litigant in question of his or her ability to arbitrate their claims.

[7]    The issue that Reeves presents through his Motion to Lift the Stay is entirely distinct from the state law unconscionability analysis performed by the arbitrator: "whether, in light of the arbitrator's order, [Reeves] may now proceed in [] Court", rather than be left with no forum in which to pursue his claims. Brandao, 95 Mass. App. Ct. at 1103, n. 4; see also Roldan v. Callahan & Blaine, 219 Cal. App. 4th 87, 95, 161 Cal. Rptr. 3d 493, 499 (2013), as modified (Sept. 18, 2013) ("We need not, and do not, reach the issue of whether the arbitration agreements are actually unenforceable…The only issue before us is whether plaintiffs….could [] be excused from the obligation to pay fees associated with arbitration. We conclude they could.").

claims (even if it finds its origin in state law public policy grounds rather than federal law). See Dkt. 54-1 at n. 8. To rule otherwise would deprive litigants of any ability to pursue their rights under state law, whether in court or arbitration, because of prohibitive costs imposed by a mandatory arbitration clause. Numerous state courts have concluded that litigants must be able to vindicate their state law rights in some forum, be it court or arbitration, and that cost-splitting provisions cannot operate to completely deprive a litigant of any forum.[8]

These courts sometimes cite to Green Tree's articulation of the effective vindication doctrine, while grounding their analysis in state law public policy grounds regarding access to justice and the importance of enforcing statutory schemes -- particularly employment protections. Here, the Court should follow this vast line of authority in reinstating Reeves' claims in court.[9] Should the Court have any doubt as to whether Connecticut's public policy would likewise recognize an effective vindication doctrine with respect to state law wage claims like the ones Plaintiff brings here (or whether Coverall's agreement would be unconscionable under Connecticut law), it should certify the question to the Connecticut Supreme Court. See Conn. Gen.

---

[8] See, e.g., Brandao, 95 Mass. App. Ct. at 1103 ("[I]f the judge determines that Brandao does not have the ability to pay, Jan-Pro may elect to pay the arbitration fees in full. If the judge determines that Brandao does not have the ability to pay and Jan-Pro declines to pay the arbitration fees in full, Brandao may proceed in Superior Court."); Weiler, 22 Cal. App. 5th at 981; Roldan, 219 Cal. App. 4th at 96 ("If, as plaintiffs contend, they lack the means to share the cost of the arbitration, to rule otherwise might effectively deprive them of access to any forum for resolution of their claims against Callahan. We will not do that."); Brady v. Williams Cap. Grp., L.P., 64 A.D.3d 127, 135, 138, 878 N.Y.S.2d 693, 700, 702 (2009), aff'd as modified, 14 N.Y.3d 459, 928 N.E.2d 383 (2010) ("Brady adequately carried her burden of demonstrating that she was not in a position to afford the cost associated with the arbitration, and was therefore effectively precluded from vindicating her rights in the AAA forum…. public policy dictates that we not enforce [the] fee-splitting provision under the circumstances of this employment discrimination claim."); Mendez, 111 Wash. App. at 464 (recognizing defense to enforcement of arbitration clause under Washington state law: "Th[e] policy [favoring arbitration] is defeated when an arbitration agreement triggers costs effectively depriving a plaintiff of limited pecuniary means of a forum for vindicating claims."); Freedman v. Tozzoli, 71 Pa. D. & C.4th 353, 367 (Com. Pl. 2005) ("A contract provision that impedes a party's ability to seek redress for violations of this important remedial statute [barring sex discrimination in employment] is contrary to public policy and is therefore null and void.).

[9] If, despite the ample authority cited herein, the Court still concludes that the effective vindication doctrine only applies to federal claims, the Court should lift the stay to allow Reeves to amend his complaint and add federal claims under the federal Fair Labor Standards Act, in addition to his state law claims. But Plaintiff submits that it simply cannot be the case that a litigant who fails to plead parallel state and federal wage claims is out of luck and can be effectively deprived of a forum in which to litigate his claims while a litigant who brings both state and federal claims would be permitted to proceed.

Stat. § 51 -199b(d).[10]

Coverall also argues that this Court lacks authority to decide issues related to the enforceability of the cost-splitting provision because such questions are delegated to the arbitrator. But again, this argument presupposes that the Court is passing judgment on Arbitrator Gould's reasoning rather than making its own assessment using an effective vindication analysis. The cases Coverall cites at p. 10 of its motion simply stand for the generic proposition that courts should refrain from deciding issues delegated to an arbitrator, but none of these cases involve a situation like the one presented here, where a litigant attempted to arbitrate in good faith and was effectively foreclosed from proceeding by his inability to afford the fees.

Finally, Coverall argues that if the Court were to review the arbitrator's decision on unconscionability, the deferential standards of Section 10(a)(3) of the FAA would apply and would compel that the Court uphold the arbitrator's conclusion regarding costs. Dkt. 61 at 11-12. But lifting the stay in this case following the AAA's closure of the arbitration proceeding, which came about as a result of the Claimants' inability to pay the arbitration costs, would not be the equivalent of vacating a final arbitration award, and thus, the limited scope of review under Section 10 of the FAA does not apply. See Brandao, 95 Mass. App. Ct. at 1103 (noting that courts have consistently held that "an order terminating arbitration proceedings for nonpayment of arbitration fees is [not] a final award in the nondefaulting party's favor.") (collecting cases); Tillman, 825 F.3d at 1074 (arbitration proceedings terminated "without issuance of an award"); Polit v. Global Foods Int'l Corp., 2016 WL 632251 (S.D.N.Y. Feb. 17, 2016). Because there is no final award here, there is nothing for the Court to confirm or vacate under 9 U.S.C. § 10(a)(3). As

---

[10] At the hearing on Coverall's Motion to Compel arbitration and in its decision, the Court acknowledged the dearth of Connecticut state law on the topic and the possibility of certifying the question to the Connecticut Supreme Court. See Dkt. 53 (Tr. of Hearing on Mot. to Compel Arbitration) at 49-50; Dkt. 51 (Order) at 22-23 (noting the "lack of controlling authority" and that the court was aware of only one case "in which the Connecticut Supreme Court applied the doctrine of unconscionability to an arbitration agreement.").

set forth above, this motion does not call upon the Court to review the arbitrator's conclusion that Reeves must split the costs of the arbitration.

### C. Plaintiff's Motion is Not A Motion for Reconsideration, and in Any Event, New Facts and Subsequent Developments Would Warrant Reconsideration of the Unconscionability of the Cost-Splitting Provision

Coverall also insists that Plaintiff's motion does not meet the strict standard for reconsideration of the court's prior conclusions, which led it to compel arbitration in the first instance. Dkt. 61 at 13-14. But Coverall's argument is erroneous. Plaintiff is not seeking reconsideration of the Court's prior decision to compel arbitration; on the contrary, the arbitration was already compelled, it was "had in accordance with the agreement", see 9 U.S.C. § 3, and it was terminated for nonpayment when Mr. Reeves could not afford the required deposit. Tillman, 825 F.3d at 1071.

Coverall insists that "Reeves asks the Court to reconsider [its prior decision] based on evidence that [he] could have, but did not, provide to the Court in the first instance." Dkt. 61 at 14. But this argument is plainly incorrect; Reeves has presented new evidence that was not available to him when the Motion to Compel arbitration was briefed. Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 252 (3d Cir. 2010). This Court previously concluded that "[a]ny costs beyond the initial filing fee are, at this point, speculative", particularly given the possibility of obtaining a hardship waiver from the AAA in arbitration. Dkt. 54 at 27. Now, Reeves has now gone ahead and attempted to arbitrate his claim and sought a hardship waiver. Despite the fact that the AAA granted his hardship waiver, thereby waiving his share of the filing fees, the arbitrator declined to waive his share of the arbitrator fees, and he was billed nearly $4,000. These are new facts -- facts that had *not yet come to pass* when the Court found the costs of the arbitration unduly "speculative." Dkt. 54 at 27. There is no need to speculate any longer. Given these new facts (as well as Reeves' worsened financial position in the midst of the global pandemic), the Court would

9

have grounds to reconsider its earlier decision. But as set forth above, the issue presented by Plaintiff's Motion to Lift the Stay is a distinct one from the issues raised by Coverall's Motion to Compel arbitration, which asked this Court to consider the narrow question of whether Coverall's delegation clause was enforceable.

### D. Coverall Has Acted in Bad Faith.

Coverall also argues that it is not preventing anyone from arbitrating their claims, citing to an unrelated example where it offered to pay half the costs of arbitration for one of its franchisees. Dkt. 61 at 6. But it made no such offer here for Mr. Reeves; instead, Coverall *actively opposed* Reeves' request that he not be required to pay half the fees in the arbitration. Coverall did not ask Reeves for additional information to substantiate his claimed inability to pay, nor did it credit the AAA's own determination that Reeves could not afford to pay half the costs of the filing fees in the case. Coverall could have agreed to pay his share or simply agree to return to court where *neither party* would have to pay prohibitive fees and deposits. Indeed, Coverall has likely spent more in opposing Mr. Reeves' attempts to seek relief from the cost-splitting provision than it would have cost it to simply pay for the arbitration in the first place. Instead, Coverall leveraged the cost-sharing provision in its agreement with the full knowledge that Reeves would not be able to pursue his claims; he indicated as much repeatedly, but his entreaties were ignored. Coverall is patently abusing the cost-splitting provision to shield itself from litigation of its practices on the merits. Its actions should not be countenanced.

## CONCLUSION

The Court should reinstate Plaintiff's claims because he cannot vindicate his rights in arbitration. Plaintiff's arbitration has now been terminated for his inability to pay half the arbitrator fees, and unless this motion is granted, Plaintiff will find himself unable to vindicate his claims in *any* forum. Such a result is contrary to Connecticut public policy and the remedial

purpose of the Connecticut wage laws.

Date: May 21, 2021

Respectfully submitted,

Plaintiffs,
By their attorneys,

_s/ Shannon Liss-Riordan_
Shannon Liss-Riordan, *pro hac vice*
Adelaide Pagano, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel. (617) 994 – 5800
Fax (617) 994 – 5801
sliss@llrlaw.com, apagano@llrlaw.com

Richard E. Hayber (ct11629)
Michael T. Petela (ct28251)
The Hayber Law Firm, LLC.
750 Main Street, Suite 904
Hartford, CT  06103
Telephone:  (860) 522-8888
Facsimile:   (860) 218-9555
Email:  rhayber@hayberlawfirm.com;
mpetela@hayberlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2021, a copy of this document was served by electronic filing on all counsel of record.

_/s/ Shannon Liss-Riordan_
Shannon Liss-Riordan