UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                    )
CARIBE BILLIE,                      )
                                    )
    Plaintiff,                      )   No. 3:19-cv-0092-JCH
                                    )
v.                                  )
                                    )
COVERALL NORTH AMERICA, INC.,       )
                                    )
    Defendant.                      )
_____ )

**REPLY IN SUPPORT OF PLAINTIFF BILLIE'S CORRECTED
MOTION TO CONFIRM ARBITRATION AWARD (ECF NO. 73) and
OPPOSITION TO DEFENDANT'S CROSS-MOTION TO DISMISS FOR
<u>LACK OF SUBJECT MATTER JURISDICTION (ECF. 79)</u>**

    In its Opposition to Petitioner Billie's Motion to Confirm the arbitration award, Defendant Coverall North America Inc. ("Coverall") argues: (1) that there is no live controversy between the parties because Defendant has already paid out the award; (2) there is no federal subject matter jurisdiction over Billie's claims because he cannot establish the amount in controversy of $75,000; and (3) the arbitration award should remain sealed in any case because of the "established federal policy in support of arbitral confidentiality." <u>See</u> ECF No. 79 at 2. Each of these arguments must be rejected.

    **<u>First</u>**, as Coverall itself concedes, the law of the Second Circuit expressly rejects the notion that a motion to confirm an arbitration award is rendered moot by prior compliance with the award. <u>Zeiler v. Deitsch</u>, 500 F.3d 157, 169 (2d Cir. 2007) ("[W]e agree with [Plaintiff] that [Defendant] has failed to show why prior compliance should serve as a ground for refusal to confirm an arbitration award."); <u>see also</u> <u>Stafford v. Int'l</u>

Bus. Machines Corp., No. 21-CV-6164 (JPO), 2022 WL 1486494, at *1 (S.D.N.Y. May 10, 2022) (confirming arbitration award even after IBM had "fully satisfied all the terms of the Final Award"); Nat'l Cas. Co. v. Resolute Reins. Co., 2016 WL 1178779, at *3 (S.D.N.Y. Mar. 24, 2016) ("Because a party to an arbitration is entitled to confirmation of an award, until it receives that confirmation an ongoing case and controversy exists."). Thus, the fact that Coverall has now paid the award has no bearing on the Motion to Confirm. See infra, Part I.

**Second**, contrary to Coverall's contentions, there is federal subject matter jurisdiction over this dispute. Although the total amount of the arbitrator's final award comes to $57,100.06, supplemental attorneys fees may yet be awarded in litigating the instant motion to confirm and any subsequent appeal. Indeed, Coverall has already indicated its intention to appeal. See ECF No. 79 at n. 1 (noting that Coverall "wishes to preserve this argument for appeal."). As such, the $57,100.06 at issue in the award is just the floor for the amount in controversy, and the actual amount is likely to be well in excess of $75,000. See Gardiner Stone Hunter Int'l v. Iberia Lineas Aereas de Espana, S.A., 896 F.Supp. 125, 128 (S.D.N.Y. 1995) ("A potential award of attorneys' fees may be considered by the court when determining whether a case involves the jurisdictional minimum"); Wells Fargo Bank, N.A. v. CIT Bank, N.A., No. 15 Civ. 9861 (ER), 2017 WL 1184296, at *13-17 (S.D.N.Y. Mar. 29, 2017); Rescuecom Corp. v. Chumley, 522 F.Supp.2d 429, 435- (N.D.N.Y. 2007).

Likewise, Coverall's argument overlooks the value of the declaratory relief that Plaintiff Billie secured by receiving a finding that he is Coverall's employee. See Am. Std., Inc. v. Oakfabco, Inc., 498 F.Supp. 2d 711, 717 (S.D.N.Y. 2007) ("In actions

2

seeking declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation . . . '[T]he amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.'") (quoting Beacon Constr. Co. v. Matco Elec. Co., 521 F.2d 392, 399 (2d Cir.1975)); Cow Bay Sprinkler Corp. v. Houston Cas. Co., No. 19 Civ. 5854 (LDH) (VMS), 2020 U.S. Dist. LEXIS 21707, at *10-17 (E.D.N.Y. Feb. 1, 2020) ("The Court is persuaded that the 'value of the consequences which may result from th[is] litigation' … is more likely than not in excess of $75,000 considering the impact of the underlying claims"). As such, the value of the award at issue here is actually far more than $57,000. See infra, Part II.

**Finally**, as set forth further infra, Part III, unsealing the arbitration award is appropriate in this case, and Coverall's attempts to distinguish Petitioner Billie's cited authorities are unpersuasive. Indeed, this is not a close case. It is "well settled" in the Second Circuit that an arbitration award at the heart of a confirmation proceeding is a judicial document subject to the presumption of public access. Clearwater Ins. Co. v. Granite State Ins. Co., 2015 WL 500184, at *3 (S.D.N.Y. Feb. 5, 2015). Coverall's opposition does not satisfy its burden to demonstrate that "disclosure [of the award] would work a clearly defined and very serious injury" that could overcome the presumption of public access. Encyclopedia Brown Productions, Ltd. v. Home Box Office, Inc., 26 F. Supp. 2d 606, 613 (S.D.N.Y. 1998). Instead, Coverall only offers "vague and conclusory allegations" about enjoying the benefit of the confidentiality provision in its franchise agreement and about the "strong federal interest" in arbitral confidentiality. Id. Indeed, Coverall did not even provide "an affidavit or declaration from

3

a knowledgeable witness explaining the nature of the privacy interest, the harm from disclosure and any prior disclosures of the material to third parties." Robert Bosch GmbH v. Honewell Intern. Inc., 2015 WL 128154, at *1 (S.D.N.Y. Jan. 6, 2015). In sum, Coverall has not met its heavy burden to justify sealing, and the award should be unsealed.

## ARGUMENT

### I. Prior Compliance With the Award Does Not Moot Petitioner Billie's Motion to Confirm.

In its Opposition and Cross-Motion, Coverall makes much of the fact that it has now paid out the arbitration award (in a rather transparent attempt to "moot" this case, after initially indicating that it planned to file a Motion to Vacate the award, see ECF No. 75 at p. 1 ("CNA also intends to move to vacate the arbitration award in question")). Coverall suggests that because it has already paid out the award to Mr. Billie and his counsel, there is no longer any need to confirm it in court. But Coverall itself concedes – as it must – that the Second Circuit has expressly *rejected* its argument that confirmation of an arbitration award is inappropriate where the award has already been paid in full. See ECF No. 79 at n. 1 (noting that "Under First Circuit precedent, [the fact that Coverall had paid the award] alone would deprive this Court of jurisdiction, as no controversy remains for the Court to adjudicate" but acknowledging that "Second Circuit precedent is to the contrary..."); Zeiler, 500 F.3d at 169 ("[W]e agree with [Plaintiff] that [Defendant] has failed to show why prior compliance should serve as a ground for refusal to confirm an arbitration award.").

Indeed, courts in this Circuit have found that:

> Because a party to an arbitration is entitled to confirmation of an award, until it receives that confirmation an ongoing case and controversy exists. Indeed, § 9 does not provide that only disputed arbitration awards may be confirmed. It broadly allows any party to petition for confirmation and, where the requirements are met, makes such confirmation mandatory. … While this statutory language cannot override Article III's requirements, it does show that parties retain an undisputed right to § 9 confirmation whatever the nature of an award and the parties' degree of compliance with it.

See Nat'l Cas. Co. v. Resolute Reinsurance Co., No. 15CV9440 (DLC), 2016 WL 1178779, at *3 (S.D.N.Y. Mar. 24, 2016); see also Stafford, 2022 WL 1486494, at *1 (confirming arbitration award even after IBM had "fully satisfied all the terms of the Final Award"); Arbordale Hedge Investments, Inc. v. Clinton Group, Inc., 1999 WL 1000939 *1 n.3 (S.D.N.Y. Nov. 4 1999) (confirming arbitration award and rejecting respondent's argument that confirmation was inappropriate since the award had been paid in full), citing Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 157 F.3d 174, 175 (2d. Cir. 1988) (indicating that the only two exceptions to mandatory confirmation of arbitration awards under the FAA are 1) where the award is modified or vacated; or 2) where the confirmation proceeding is brought too late). In sum, Petitioner's interest in confirmation of the award is alone sufficient to give rise to a controversy which confers Article III standing, and the fact that Coverall has now paid out the award is irrelevant to the Court's analysis.

**II.   There is Federal Subject Matter Jurisdiction Over the Present Controversy.**

Next, Coverall argues that there is no federal subject matter jurisdiction over Plaintiff Billie's Motion, citing the U.S. Supreme Court's recent decision in Badgerow v. Walters, 142 S. Ct. 1310, 1314 (2022). See ECF No. 79 at pp. 2-5. There, the Supreme Court held that a "federal court must find an independent basis for jurisdiction to resolve an arbitral dispute", and it cannot "look-through" to the underlying dispute that is the

5

subject of the arbitration award to confer jurisdiction. Badgerow, 142 at 1316-18. Here, that means the Court must determine whether the requirements of diversity jurisdiction are satisfied – namely, whether the parties are diverse and the amount in controversy exceeds $75,000. See 28 U.S.C. §1332(a).

Contrary to Coverall's contentions, both requirements to establish diversity jurisdiction are satisfied here. As an initial matter, Defendant Coverall is a Delaware corporation with its principal place of business in Florida. See ECF No. 1 at ¶ 5. Billie was domiciled in Connecticut when this suit was filed. Id. at ¶ 3. Thus, the Parties are clearly diverse, and indeed, Coverall does not contest this fact in its Opposition and Cross-Motion.

Instead, Coverall contests the second requirement for diversity jurisdiction – that the amount in controversy exceeds $75,000 – because the total amount awarded in the underlying arbitration totaled just over $57,000. However, Coverall overlooks several other important factors that increase the amount at issue in the Petition to Confirm the arbitration award. First, supplemental attorneys' fees and costs associated with litigating the confirmation of the award are likely to exceed $12,000, bringing the total amount in controversy above the statutory threshold. Indeed, Petitioner Billie's counsel has already expended a collective 19 hours on research and briefing confirmation of the award, see Pagano Decl. at ¶¶ 2-6, and Coverall has already indicated its intention to appeal any decision confirming and unsealing the award. See ECF 79 at n. 1.

"It is well established in the Second Circuit … that attorney's fees may be used to satisfy the amount in controversy ... where they are recoverable as of right pursuant to statute or *contract*." Rescuecom Corp. v. Chumley, 522 F. Supp. 2d 429, 437–38

(N.D.N.Y. 2007) (emphasis in original). Here, attorneys' fees are recoverable under the terms of the arbitration agreement itself, which states that "[s]hould either Party incur attorney's fees in order to enforce the terms and conditions of this Agreement, including post-term covenants, the prevailing party shall be entitled to reimbursement by the other party of all litigation costs, including attorney's fees." ECF No. 27-1 at ¶ 21(C). Thus, because recovery of fees is mandated by the contract, it is appropriate to consider additional attorneys fees incurred in litigating the Motion to Confirm (and Coverall's anticipated appeal). See ASI Sign Sys., Inc. v. Architectural Sys., Inc., No. 98 CIV. 4823 (SAS), 1999 WL 553825, at *2 (S.D.N.Y. July 29, 1999) (including attorneys fees in jurisdictional amount where "Plaintiff is entitled to collect attorneys' fees and court costs pursuant to ¶ 7.5 of the Franchise Agreements if it prevails…"); Rescuecom Corp., 522 F. Supp. 2d at 429 (attorney fees sought by franchisor were includible in amount-in-controversy calculation for diversity jurisdiction).

      Furthermore, Coverall overlooks the value of the declaratory relief awarded by the arbitrator – namely, the declaration that he is in fact Coverall's employee, which may entitle Billie to important benefits going forward. "[T]he amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." Beacon Const. Co., 521 F.2d at 399. The value of declaratory or injunctive relief "is measured from the plaintiff's perspective" such that "the value of the requested relief is the monetary value of the benefit that would flow to the plaintiff if injunctive or declaratory relief were granted." Am. Standard, Inc., 498 F. Supp. 2d at 717. Here, the arbitrator's finding that Billie is Coverall's employee means that future deductions for insurance or for acquiring

additional cleaning work would be unlawful and would potentially entitle him to other important benefits like unemployment insurance. These savings will easily total thousands of dollars.[1]

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claims were in excess of the statutory jurisdictional amount at the time the action was commenced." Wells Fargo Bank, Nat'l Ass'n v. CIT Bank, N.A., No. 15 CIV. 9861 (ER), 2017 WL 1184296, at *5 (S.D.N.Y. Mar. 29, 2017). Here, as set forth above, Petitioner Billie has satisfied that burden because he has shown a reasonable probability that supplemental attorneys fees and the value of the declaratory relief awarded bring the amount in controversy well above the $75,000 threshold.

Furthermore, for claims brought in federal court, "to justify dismissal, '[i]t must appear to a *legal certainty* that the claim is really for less than the jurisdictional amount.'" Id. (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). In this instance, it is plainly not a legal certainty that the amount in controversy stemming from this Motion to Confirm is not at least $75,000. As such, the Court should hold that it does have federal subject matter jurisdiction over the Motion to Confirm and should proceed to confirm the arbitration award.

### III. The Arbitration Award Should Be Unsealed.

"The common law right of public access to judicial documents is firmly rooted in our nation's history" and is also guaranteed by the First Amendment. Lugosch v.

---

[1] At present, Petitioner Billie has one account with Coverall. He is currently living in North Carolina and his son is servicing the account, but that could change, and in any case, the declaratory relief here still entitles him to the benefits of employment. Indeed, the arbitrator was aware that Billie was living in North Carolina, but he nonetheless found him to be an employee of Coverall.

8

Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). "The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995). The presumption of public access "requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access." Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 141 (2d Cir. 2016). This language makes clear that it is the *public* that benefits from a right of access to judicial documents. As such, unsealing judicial documents in service of the public is not a "remedy" granted to any party. Indeed, courts in the Second Circuit routinely unseal judicial documents even where *both* parties oppose unsealing. See Clearwater Ins. Co., 2015 WL 500184, at *3; Bernstein, 814 F.3d at 132.

### A. The Arbitration Award is a Judicial Document.

In order to constitute a judicial document subject to the presumption of public access, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995). "[I]t is well settled … that the petition, memoranda, and other supporting documents filed in connection with a petition to confirm an arbitration award (including the Final Award itself) are judicial documents that directly affect the Court's adjudication of that petition." Clearwater Ins. Co., 2015 WL 500184, at *3 (collecting cases); see also Redeemer Committee of Highland Credit Strategies Funds v. Highland Capital Management, L.P., 182 F. Supp. 3d 128, 133 (S.D.N.Y. 2016) ("This weighty interest in public access applies with full force to

documents filed in connection with a motion to confirm an arbitration award, as in the instant case."); Robert Bosch GmbH, 2015 WL 128154, at *1 ("A party to an arbitration proceeding that is subject to confirmation proceedings in a federal court cannot have a legitimate expectation of privacy in all papers pertaining to the arbitration because the party should know of the presumption of public access to judicial proceedings."); Global Reinsurance Corp.–U.S. Branch, 2008 WL 1805459, at *2 ("In circumstances where an arbitration award is confirmed, the public in the usual case has a right to know what the Court has done."); Veleron Holding, B.V. v. Stanley, 2014 WL 1569610, at *1 (S.D.N.Y. April 16, 2014) (noting that if an arbitration award were confirmed, that "would, at least in this country, expose it to the public.").

Further, an arbitration award does not lose its character as a judicial document merely because the confirmation proceeding is unopposed. See, e.g., id. at *3; Global Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co., 2008 WL 1805459, at *2 (S.D.N.Y. April 24, 2008); Robert Bosch GmbH v. Honewell Intern. Inc., 2015 WL 128154, at *1 (S.D.N.Y. Jan. 6, 2015). Courts have found an arbitration award in a confirmation proceeding to be a "judicial document" subject to a strong presumption of public access *even when* the petition to confirm the award was not contested. Id.; see also Clearwater Ins. Co., 2015 WL 500184 *2 (requiring the parties to "overcome the strong presumption of public access to judicial documents" even though the plaintiff's petition to confirm the arbitration award was unopposed). Nor does it matter, as the Second Circuit has made clear, that the court does not rely heavily on the document in rendering its decision. Brown v. Maxwell, 929 F. 3d 41, 48 (2d. Cir. 2019). In sum, it is clear that the arbitration award that is the subject of a petition to confirm is a judicial

10

document. That Coverall has already paid the award does not change the award's character as a judicial document.

### B. Coverall Cannot Overcome the Presumption of Public Access That Attaches to Judicial Documents.

A "[f]inding that a document is a 'judicial document' triggers a presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access." Newsday LLC v. County of Nassau, 730 F.3d 156, 167 n.15 (2d. Cir. 2013). Here, Coverall attempts to overcome that presumption by arguing primarily that its contractual confidentiality provision and the federal policy in favor of enforcing arbitration agreements require sealing of the award. See ECF 79 at pp. 8-9. But the existence of a confidentiality agreement is **not** a sufficient justification for sealing a judicial document. See Utica Mutual Insurance Company v. INA Reinsurance Company, 2012 WL 13028279 (N.D.N.Y. June 12, 2012) ("The law grants a presumption of public access to judicial documents . . . and the confidentiality order in the arbitration does not entitle Utica to '... transfer the privileges of [its] private arbitration to a public judicial forum.'"), quoting Lugosch, 435 F.3d at 119-20 and Standard Chartered Bank International (Americas) Ltd. v. Calvo, 757 F.Supp.2d 258, 260 (S.D.N.Y. 2010); Sony Ericsson Mobile Communications AB v. Delta Electronics Public Company Ltd., 2009 WL 959639 at *2 (S.D.N.Y. 2009) ("[t]he fact that arbitral proceedings in this case may have been confidential under the arbitral rules or the arbitration clause at issue does not necessitate that they be kept confidential in these proceedings."); Veleron Holding, B.V. v. Stanley, 2014 WL 1569610 *1  (S.D.N.Y. April 16, 2014) ("a private agreement to arbitrate a dispute does not cloak documents

11

and other evidence relevant to that dispute with a 'shield of invisibility,' or immunize them either from public disclosure in connection with other, related proceedings").

Indeed, Coverall articulates no harm whatsoever that will result from the unsealing of the award apart from vague assertions that it will be denied the benefit of its contractual confidentiality provision. This assertion is per se insufficient. Coverall bears the burden to show that "disclosure would work a *clearly defined and very serious injury*" that could overcome the presumption of public access, and its "vague and conclusory" assertions about arbitral confidentiality are simply insufficient. Encyclopedia Brown Productions, Ltd. v. Home Box Office, Inc., 26 F. Supp. 2d 606, 613 (S.D.N.Y. 1998) (emphasis added).

Coverall apparently believes that arbitral confidentiality is inviolable whenever the Federal Arbitration Act ("FAA") is implicated. But the question here is about public access to federal court filings – not about whether the arbitration clause's confidentiality provision is enforceable. Moreover, confidentiality is *not* a necessary or inherent part of arbitration, and not all parties require arbitration to be confidential.[2] Thus, it is simply not correct to suggest that the public filing of arbitration materials runs afoul of the FAA. Finally, and most importantly, arbitral confidentiality is *not* absolute and will give way to the public's right of access absent good cause, as the numerous cases make clear, from both within and outside this Circuit. See, e.g., Dentons US LLP v. Zhang, 2021 WL 2187289, at *1 (S.D.N.Y. May 28, 2021) ("Petitioner contends that sealing is appropriate because the parties agreed to file under seal any papers associated with an arbitration

---

[2] See Amy J. Schmitz, Untangling the Privacy Paradox in Arbitration, 54 U. Kan. L. Rev. 1211 (2006) ("United States law does not guarantee [] secrecy of arbitration information, and institutional rules parties incorporate in their arbitration agreements generally do not provide broad confidentiality protections.").

12

proceeding. Confidentiality agreements alone are not an adequate basis for sealing, however." (citing cases)); Gen. Motors LLC Ignition Switch Litig., 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015); Century Indem. Co. v. AXA Belgium, 2012 WL 4354816, at *14 (S.D.N.Y. Sept. 24, 2012) ("While a confidentiality agreement "may be binding on the parties, ... it is not binding upon the Court."); Utica Mutual Insurance Company v. INA Reinsurance Company, 2012 WL 13028279 (N.D.N.Y. June 12, 2012) ("The law grants a presumption of public access to judicial documents . . . and the confidentiality order in the arbitration does not entitle Utica to '... transfer the privileges of [its] private arbitration to a public judicial forum.'"); Sony Ericsson Mobile Communications AB v. Delta Electronics Public Company Ltd., 2009 WL 959639 at *2 (S.D.N.Y. 2009) ("[t]he fact that arbitral proceedings in this case may have been confidential under the arbitral rules or the arbitration clause at issue does not necessitate that they be kept confidential in these proceedings.").[3] The clear weight of authority dictates that the mere presence of a contractual confidentiality provision does not overcome the presumption of public access in judicial documents.

Coverall's citation to Guyden v. Aetna, Inc., 544 F.3d 376 (2d Cir. 2008) is not to the contrary. There, the plaintiff challenged the *enforceability* of a confidentiality

---

[3] See also CAA Sports LLC. v. Dogra, No. 4:18-CV-01887-SNLJ, 2018 WL 6696622, at *1 (E.D. Mo. Dec. 20, 2018) (refusing to seal confidential arbitration award) (collecting cases); Grynberg v. BP P.L.C., 205 F. Supp. 3d 1, 2 (D.D.C. 2016) (denying motion to seal arbitration award, arbitration complaints, and transcript of arbitration, etc.); In re Amerisure Mut. Ins. Co. v. Everest Reinsurance Co., No. 14-CV-13060, 2014 WL 5481107, at *3 (E.D. Mich. Oct. 29, 2014) (substantive rulings in final arbitration award would not be filed under seal); Ovonic Battery Co., Inc. v. Sanyo Elec. Co., Ltd, No. 14-CV-01637-JD, 2014 WL 2758756, at *3 (N.D. Cal. June 17, 2014) ("Although some portions of the arbitration awards contain information that might be properly sealed, including pricing terms, royalty rates, and any guaranteed minimum payment terms, the documents in their entirety are not sealable…The fact that parties agreed to the confidentiality of certain documents, however, does not alone constitute a compelling reason to seal them."); Zimmer, Inc. v. Scott, No. 10 C 3170, 2010 WL 3004237, at *3 (N.D. Ill. July 28, 2010) (refusing to maintain arbitration award under seal).

provision in court, and the Court overruled the plaintiff's challenge.[4] But whether a confidentiality provision is enforceable is an entirely distinct question from whether an arbitration award, subject to confirmation in federal court, is a judicial document and whether it should be sealed from the public. As another federal court in this Circuit recently noted, "[i]t is black-letter law—not disputed by Defendant —that the fact that information exchanged between private parties is subject to a confidentiality agreement that binds them is **not itself sufficient** to deprive the public of the right of access to that information when it is properly filed in support of a motion asking the Court to take dispositive judicial action on a matter properly before that Court." Lohnn v. Int'l Bus. Machines Corp., No. 21-CV-6379 (LJL), 2022 WL 36420, at *13 (S.D.N.Y. Jan. 4, 2022) (emphasis added). Indeed, as a matter of common sense, it is odd for Coverall to take the position that the FAA somehow trumps rights grounded in the First Amendment of the United States Constitution.

---

[4] Although the Court in Guyden overruled the plaintiff's challenge, courts have frequently found such confidentiality provisions in arbitration agreements to be unconscionable. See id.; Larsen v. Citibank FSB, 871 F.3d 1295, 1319 (11th Cir. 2017) (holding that a confidentiality provision in an arbitration agreement was unconscionable, because it provided the defendant with an obvious informational advantage); Bragg v. Linden Research, Inc., 487 F. Supp. 2d 59 (E.D. Pa. 2007) (finding a confidentiality clause within an arbitration agreement to be unconscionable because it allows a company to "place[] itself in a far superior legal posture by ensuring that none of its potential opponents have access to precedent" and "[t]he unavailability of arbitral decisions could also prevent potential plaintiffs from obtaining the information needed to build a case of intentional misconduct against a company."); see also Zuver v. Airtouch Communications, Inc., 153 Wn.2d 293, 299 (Wash. 2004) ("keeping past findings secret undermines an employee's confidence in the fairness and honesty of the arbitration process, and thus potentially discourages that employee from pursuing a valid discrimination claim."); Kinkel v. Cingular Wireless LLC, 223 Ill. 2d 1, 42 (Ill. 2006) (finding that confidentiality provisions may be unconscionable when coupled with class action waivers, because such provisions prevent "the claimant [and] her attorney [from] shar[ing] [] information with other potential claimants."). In any case, the enforceability of the confidentiality provision in the franchise agreement is a wholly distinct issue from whether the arbitration award at issue here is subject to sealing.

This case simply does not present circumstances where courts have agreed to let judicial documents remain under seal, such as where public filing would disclose medical records, see Spring v. Allegany-Limestone Central School District, 2021 WL 4166628, at *1 (W.D.N.Y. Sept. 14, 2021), or where public filings would include non-public terms of patent licensing agreements that would jeopardize a party's competitive business interests, see Regeneron Pharmaceuticals v. Novartis Pharma AG, 2021 WL 243943, at *1-2 (S.D.N.Y.); see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 123, 143 (2d. Cir. 2016) ("This is not a case in which disclosure would reveal details of an ongoing investigation, pose a risk to witnesses, endanger national security, or reveal trade secrets."). In sum, the mere fact that the Parties' arbitration agreement contains a confidentiality provision is not a sufficient basis to seal the arbitration awards that are the subject of the Petition to Confirm, and Coverall has pointed to no specific harm that would result from unsealing.

### C. The Public Has An Interest in the Arbitration Award.

Contrary to Coverall's contentions that the public has virtually no interest in this uncontested Petition to Confirm an arbitration award, it is clear that the interest in public access to the award is paramount. Unlike some arbitration cases which involve a purely private, contractual dispute between two parties, this case implicates the public and others besides Petitioner Billie. Numerous individuals have brought misclassification claims against Coverall over the last several years, alleging that the company and many of its competitors in the cleaning franchise industry have been systemically misclassifying workers and flouting the wage laws.[5] In addition to these lawsuits, some

---

[5] See Coverall N. Am., Inc. v. Com'r of Div. of Unemployment Assistance, 857 N.E.2d 1083, 1087 (2006) (finding Massachusetts franchisee was misclassified under

15

individuals have pursued these claims in individual arbitration, pursuant to Coverall's arbitration agreement which it required franchisees to sign as part of the agreement to buy cleaning work. Coverall included a confidentiality provision in its arbitration agreement (which also contains a class action waiver) in an attempt to prevent these workers from sharing information obtained in their cases with others, severely hampering the ability of individuals pursuing these claims to "obtain[] the information needed to build a case." Ting v. AT&T, 319 F.3d 1126, 1152 (9th Cir. 2003). Petitioner's interest in ensuring transparency regarding Coverall's misconduct in the arbitration, and the interests of other affected low-wage workers favors public access. Petitioner has an interest in seeing Coverall rectify its practices (which is why he filed this case as a putative class action before being compelled to individual arbitration), and he has a continuing interest in seeing justice served for others who fell victim to the same illegal practices as he did. As such, in addition to promoting judicial accountability, unsealing the award may aid other litigants pursuing misclassification claims against Coverall and other cleaning franchise companies. The presumption of public access operates "with all the more force" when it would "aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what otherwise might

---

state unemployment law); Awuah v. Coverall N. Am., Inc., 707 F. Supp. 2d 80, 82 (D. Mass. 2010) (finding Massachusetts franchisees were misclassified under state wage law); see also Vazquez v. Jan-Pro Franchising Int'l, Inc., 986 F.3d 1106 (9th Cir. 2021) (reversing summary judgment entered against cleaning franchisees alleging misclassification under California "ABC" test); Roman v. Jan-Pro Franchising Int'l, Inc., No. C 16-05961 WHA, 2022 WL 3046758, at *1 (N.D. Cal. Aug. 2, 2022) (holding cleaning franchisees were misclassified under California state law); Da Costa v. Vanguard Cleaning Sys., Inc., 2017 WL 4817349, at *7 (Mass. Super. Sept. 29, 2017) (finding Connecticut and Massachusetts cleaning franchisees were misclassified under state wage laws); System4, LLC v. Ribeiro, 275 F. Supp. 3d 297 (D. Mass. 2017) (confirming arbitrator award holding that Massachusetts cleaning franchisee was misclassified).

16

be a lengthy process Ashcraft v. Louisiana Coca-Cola Co., 1986 WL 14781, at *1 (E.D. La. Dec. 19, 1986), quoting American Tel. & Tel. Co v. Grady, 594 F.2d 594, 596 (7th Cir. 1978). For all these reasons, any balancing of interests clearly favors unsealing the Petition and Exhibits in this case. Even if Petitioner were not opposing Coverall's effort to keep these documents under seal (which he is), it would still be *Coverall's burden* to justify wholesale sealing of these documents. Mayo Clinic Jacksonville v. Alzheimer's Inst. of Am., Inc., No. 8:05CV639T23TBM, 2008 WL 4998427, at *1 (M.D. Fla. Nov. 24, 2008) (denying agreed-upon motion to seal for failure to demonstrated good cause). It has not and cannot meet that burden.

## CONCLUSION

For all these reasons, Petitioner Billie's Motion to Confirm the Arbitration award should be granted, and Defendant's Cross-Motion to Dismiss should be denied. The award should be unsealed because it is plainly a judicial document, and Coverall has not (and cannot) meet its burden to show that it should be maintained under seal.

Dated: August 29, 2022

Respectfully submitted,

CARIBE BILLIE,

By his attorneys,

 /s/ Adelaide Pagano
Shannon Liss-Riordan, *pro hac vice*
Adelaide H. Pagano, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; apagano@llrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2022, a copy of this document was served by electronic filing on all counsel of record.

                               */s/ Adelaide Pagano*
                               Adelaide Pagano