**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CARIBE BILLIE, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:19-CV-0092 (JCH) |
| | : | |
| v. | : | |
| | : | |
| COVERALL NORTH AMERICA, INC., | : | MARCH 30, 2023 |
| Defendants. | : | |
| | : | |

**RULING ON MOTIONS TO SEAL, TO CONFIRM ARBITRATION AWARD, AND TO DISMISS FOR LACK OF JURISDICTION (DOCS. NO. 70, 73, 79)**

## I.   INTRODUCTION

Plaintiff Caribe Billie ("Billie") is moving to seal and to confirm the Arbitration Award he secured against the defendant, commercial cleaning services provider Coverall North America, Inc., ("Coverall"). At the same time, Coverall is cross-moving to dismiss Billie's effort for lack of subject matter jurisdiction.

For the reasons stated below, Coverall's Cross Motion to Dismiss for Lack of Jurisdiction (Doc. No. 79) and Billie's Motions to Seal (Doc. No. 70) are denied, and Billie's Motion to Confirm Arbitration Award (Doc. No. 73) is granted.

1

## II.     BACKGROUND

On January 17, 2019, Billie and another plaintiff filed suit against Coverall alleging that the defendant misclassified the plaintiffs as independent contractors and withheld portions of their wages in violation of Connecticut law.  See Complaint (Doc. No. 1).  In March 2020, however, this court granted Coverall's Motion to Compel Arbitration.  See Billie v. Coverall N. Am., Inc., 444 F. Supp. 3d 332, 355 (D. Conn. 2020).  A final Arbitration Award was entered for Billie in the amount of $57,100,06 on May 27, 2022.  See Motion to Confirm Arbitration Award ("Mot. to Confirm") at 1; Cross Motion to Dismiss for Lack of Jurisdiction and Opposition to the Motions to Seal to Confirm Arbitration Award ("Cross Motion and Opposition") at 4.

On June 7, 2022, Billie moved to confirm the Arbitration Award he secured pursuant to the parties' arbitration agreement as well as the Federal Arbitration Act ("FAA"), sections 9 and 13 of title 9 of the United States Codes.  See Mot. to Confirm at 1; Exhibit 3, Arbitration Agreement ("Arbitration Agmt.") ¶ 21(A)(6) (Doc. No. 73–3) ("The decision of the arbitrator shall be conclusive and binding upon all parties, and judgment upon the award may be entered in any court of competent jurisdiction.").  In accordance with the terms of the arbitration agreement, Billie filed the Arbitration Award as well as the arbitrator's Order on the Motion for Preliminary Summary Judgment as sealed exhibits to the Motion to Confirm Arbitration Award.  See id. at 2.  Nonetheless, in his accompanying Motion to Seal, Billie requests that the court "exercise its inherent authority to unseal this award so that the public may access it." Id.; Motion to Seal ("Mot. to Seal") at 1–2 (Doc. No. 70).  Coverall, on the other hand, argues that the court lacks subject matter jurisdiction to confirm the Arbitration Award and that Billie's request

to unseal the arbitration decisions should therefore be returned pursuant to Local Rules of Civil Procedure 5(e)(7) and 83.6(a).  See Cross Motion and Opposition at 1–2; Sur-Reply Addressing Amount in Controversy Calculations ("Def.'s Sur-Reply") at 1 (Doc. No. 84).

### III.     LEGAL STANDARD

#### A.     Subject Matter Jurisdiction

Although the FAA authorizes a party to an arbitration agreement to apply to a court to confirm an arbitration award, a federal court still "must have what we have called an 'independent jurisdictional basis' to resolve the matter."  Badgerow v. Walters, 142 S. Ct. 1310, 1314 (2022) (quoting Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 582 (2008)).  A federal court generally has subject matter jurisdiction over a civil case if it has either federal question jurisdiction or diversity jurisdiction.  See 28 U.S.C. §§ 1331, 1332(a).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In assessing whether federal jurisdiction exists for the purposes of confirming an arbitration award, "a court may look only to the application actually submitted to it" and may not "look through" to the underlying controversy.  Badgerow, 142 S. Ct. 1314.

When the record as a whole—including as supplemented by affidavits to the Court—"establishes the existence of the requisite diversity of citizenship between the parties," the court may "deem the pleadings amended so as to properly allege diversity jurisdiction."  Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 64 (2d Cir. 2009) (quotation and citation omitted).

B.      Confirming an Arbitration Award

Section 9 of the FAA provides that, within one year of the issuance of an arbitration award, "any party to the arbitration" may apply for confirmation of that award and the court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." 9 U.S.C. § 9. Confirmation of an arbitration award is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir.2006) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir.1984)). It is well settled that the court's function in confirming an arbitrator's award is "severely limited." Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir.1997) (quoting Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sals Corp., 274 F.2d 805, 808 (2d Cir. 1960). Indeed, the arbitrator need not explain his or her rationale for an award, and the district court will confirm the award "if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair, 462 F.3d at 110 (quoting Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir.1991)). In fact, "only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." Id. (quoting Landy Michaels Realty Corp. v. Local 32B–32J, Service Employees Int'l Union, 954 F.2d 794, 797 (2d Cir.1992)).

In the Second Circuit, unopposed motions to confirm an arbitration award are "evaluated under the legal standards applicable to a motion for summary judgment." Dirs. Guild of Am., Inc. v. NBC, 2022 WL 2129052, at *2 (S.D.N.Y. June 14, 2022) (citing D.H. Blair, 462 F.3d at 109–10). Therefore, prevailing on an unopposed motion requires that the movant show "that there is no genuine dispute as to any material fact

4

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  All facts must be viewed "in the light most favorable" to the non-moving party.  Tolan v. Cotton, 572 U.S. 650, 657 (2014) (citations omitted).  As with a motion for summary judgment, "[e]ven unopposed motions . . . must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." D.H. Blair, 462 F.3d at 110 (quotation and citation omitted).

  C. Sealing the Arbitration Award

  A presumption of public access attaches to anything deemed a "judicial document," which is a "filed item that is 'relevant to the performance of the judicial function and useful in the judicial process.'" Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 139 (2d Cir. 2016) (quoting Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006)).  The presumption is "at its strongest" when "the information at issue forms the basis of the court's adjudication. . . ." Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co., 2005 WL 1216292, at *6 (S.D.N.Y. May 23, 2005) (citing United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir.1995).  Even when "the Court did not rely on" the documents, the presumption remains strong if they were "brought to the Court's attention in connection with a contested matter." Accent Delight Int'l Ltd. v. Sotheby's, 394 F. Supp. 3d 399, 417 (S.D.N.Y. 2019) (citing Lugosch, 435 F.3d at 121).  Where documents "play only a negligible role in the performance of the court's Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." Lugosch, 435 at 121.

  "[A]fter determining the weight of the presumption of access, the court must balance competing considerations against it by considering countervailing factors

includ[ing] but . . . not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." Union Square Ltd. v. Bar-B-Q Prods. LLC, 2022 WL 252080, at *3 (S.D.N.Y. Jan. 27, 2022) (quotation and citation omitted). "The party seeking to maintain the seal carries the burden of demonstrating the need to seal." Park Ave. Life Ins. Co. v. Allianz Life Ins. Co. of N. Am., 2019 WL 4688705, at *2 (S.D.N.Y. Sept. 25, 2019) (citing DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir. 1997)).

Even in instances where the public right of access attaches, "documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch, 435 at 120 (quotation and citation omitted). "Courts in the Second Circuit routinely hold that such 'higher values' include protecting from disclosure proprietary, sensitive, and confidential business information." Markowitz v. KBI Servs., 2021 WL 4555833, at *2 (S.D.N.Y. Oct. 5, 2021) (collecting cases). However, the Second Circuit is clear that "the mere existence of a confidentiality order" does not overcome "the presumption of access" absent other "specific, on-the-record findings." Lugosch, 435 F.3d at 126; see also Park Ave. Life Ins. Co., 2019 WL 4688705, at *3 ("[T]he mere existence of a confidentiality agreement . . . is insufficient to overcome the First Amendment presumption of access." (quotation and citation omitted)).

## IV.      Discussion

### A.      Subject Matter Jurisdiction

In moving to dismiss, Coverall argues that this court lacks jurisdiction to confirm the Arbitration Award. See Cross Motion and Opposition at 1–5; Def.'s Sur-Reply at 1. In particular, Coverall avers that the amount in controversy is insufficient for diversity

jurisdiction and that there is no live controversy because the defendant has already paid the Arbitration Award.  See Cross Motion and Opposition at 1.  Billie counters that the court has diversity jurisdiction, and that the amount in controversy is established when factoring in the Arbitration Award, attorney's fees for the instant litigation, and the value of the declaratory relief in the Arbitration Award.  See Pl.'s Reply at 1–2.  Additionally, Billie maintains that Coverall's compliance with the Arbitration Award does not render Billie's Motion moot.  See id.

Diversity jurisdiction under section 1332 first requires that no plaintiff is a citizen of the same state as any defendant.  See St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.").  Here, Billie avers that he was domiciled in Connecticut at the time of the suit.  See Pl.'s Reply at 6; Van Buskirk v. United Grp. of Cos., Inc., 935 F.3d 49, 53 (2d Cir. 2019) ("An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile").  Moreover, Billie asserts that Coverall is a Delaware corporation with its principal place of business in Florida.  See Pl.'s Reply at 6; see also 28 U.S.C. § 1332(c)(1) (stating that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").  Indeed, Coverall does not dispute that the parties are diverse.  See Cross Motion and Opposition at 4.

Diversity jurisdiction also requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs."  28 U.S.C. § 1332(a).  The party invoking jurisdiction must prove that the amount in controversy appears to a

7

"reasonable probability" to exceed the statutory jurisdictional amount.  See Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003).  In the Second Circuit, there is a "rebuttable presumption" that the amount alleged by the party invoking jurisdiction is a "good faith representation of the actual amount in controversy."  Id. (quoting Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)).  To overcome this rebuttable presumption, the party disputing jurisdiction must show "'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." Id. (citation omitted).  This is a "high bar" because "[t]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim."  Id. (quoting Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust Co. of Chi., 93 F.3d 1064, 1070–71 (2d Cir. 1996)).  On the other hand, the Second Circuit has also indicated that a merely conclusory allegation that the amount exceeds $75,000 is not sufficient.  See Wood v. Maguire Auto., LLC, 508 F. App'x 65, 65–66 (2d Cir. 2013) ("Wood's allegation in her complaint of $75,000 in controversy is conclusory and not entitled to a presumption of truth.").

In this case, Coverall claims that the amount in controversy is not satisfied because the arbitration award, "including attorneys' fees and the maximum accrued interest under Connecticut law, is $57,100.06."  Cross Motion and Opposition at 4.  Billie responds by arguing that this figure does not represent the full calculation of the amount in controversy.  See Pl.'s Reply at 6.

First, Billie argues that amount does not account for attorneys' fees for the instant action.  Id.  The Second Circuit is clear that "[a]ttorney's fees may be used to satisfy the amount in controversy only if they are recoverable as a matter of right pursuant to

8

statute or contract." Kimm v. KCC Trading, Inc., 449 F. App'x 85, 85–86 (2d Cir. 2012) (citing Givens v. W.T. Grant Co., 457 F.2d 612, 614 (2d Cir. 1972), vacated on other grounds, 409 U.S. 56 (1972). Here, Coverall argues that Billie is not entitled to attorneys' fees for a "confirmation application", see Def.'s Sur-Reply at 4–5, but this argument is undercut by terms of the arbitration agreement, which specify that "[s]hould either Party incur attorney's fees in order to enforce the terms and conditions of this Agreement, including post-term covenants, the prevailing party shall be entitled to reimbursement by the other party of all litigation costs, including attorney's fees." Arbitration Agmt. ¶ 21(C). As such, it is proper to include the cost of attorney's fees in the calculation of the amount in controversy, as one of the terms and conditions of the arbitration agreement is that "[t]he decision of the arbitrator shall be conclusive and binding upon all the parties, and judgment upon the award may be entered in any court of competent jurisdiction." See id. ¶ 21(A)(6). Billie's counsel offered a sworn affidavit declaring that the firm has already accrued $9,250 in fees in support of the Motion to Confirm, with that number likely to exceed $12,000 in light of appeals.[1] See Affidavit of Adelaide Pagano ("Pagano Aff.") ¶ 6 (Doc. No. 80–1).

Second, Billie argues that the amount in controversy calculation must account for the declaratory relief included in the Arbitration Award. See Pl.'s Reply at 7. Where declaratory relief is at issue, "the amount in controversy is measured by the value of the object of the litigation." Washington Nat'l Ins. Co. v. OBEX Grp. LLC, 958 F.3d 126, 135 (2d Cir. 2020) (quotation and citation omitted). Thus, "the amount in controversy is not

---

[1] In opposing confirmation of the Arbitration Award, Coverall alludes to their future appeal should the court rule in Billie's favor. See Cross Motion and Opposition at 1 n.1 ("Second Circuit precedent is to the contrary, but [Coverall] wishes to preserve this argument for appeal.").

9

necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 68 (2d Cir. 2012) (quoting Beacon Const. Co., Inc., v. Matco Elec. Co., Inc., 521 F.2d 392, 399 (2d Cir. 1975).

In the instant case, Billie argues that the value of the consequences of the litigation include the arbitrator's finding that Billie is a Coverall employee. See Pl.'s Reply at 6. The arbitrator's conclusion means that "deductions taken from Billie's monthly pay for insurance and for franchise fees and finder's fees (paid in order to secure additional cleaning work) were unlawful . . . such that these fees would be recoverable by Mr. Billie going forward." Pagano Aff. ¶ 7. In addition, Billie will also be eligible for important benefits, like unemployment insurance. Id. In her sworn affidavit, Billie's counsel estimated the value of these savings and benefits as likely exceeding $12,000. Id.

Coverall disputes this by maintaining that the arbitrator did not award any declaratory relief. See Def.'s Sur-Reply at 2–3. In support of this position, Coverall points to the conclusion of the Arbitration Award, which notes that "any claims not expressly granted are hereby, denied." Id. at 3; Arbitration Award at 2 (Doc. No. 71). As the Award explicitly notes, however, the arbitrator previously granted Billie's Motion for Partial Summary Judgment, ruling that Billie is a Coverall employee and that the independent contractor agreements and releases contravene Connecticut law. Arbitration Award at 1. As Billie rightly posits, this not only entitled Billie to damages for the unlawful deductions taken in the past—as delineated in the Award—but also to the benefits attendant to being an employee going forward. See Pagano Aff. ¶ 7.

Coverall also contests that the value of this relief can be factored into the amount in controversy because Billie "provides no formula and no calculations for the value of the declaratory relief he . . . claims he obtained." Def.'s Sur-Reply at 3.  While it is true that there is "a 'reasonable probability' that the jurisdictional amount is met if it 'can be ascertained pursuant to some realistic formula[,]'" Turban v. Bar Giacosa Corp., 2019 WL 3495947, at *2 (S.D.N.Y. Aug. 1, 2019), this "is not an exacting standard." Id. "Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 785 (2d Cir. 1994).  Moreover, "the sum claimed by the [plaintiff] controls if the claim is apparently made in good faith." Washington Nat'l Ins. Co, 958 F.3d at 135 (quoting A.F.A Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991)).  As the court already noted, it is up to the party opposing jurisdiction to show "'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." Scherer, 347 F.3d at 397 (quotation and citation omitted).  Indeed, "the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." Id. (quotation and citation omitted).

Here, the value of the relief is uncertain, but Billie offered a signed affidavit explaining the foundation of the calculation.  See Pagano Aff. ¶ 7.  Flowing to Billie will now be the amount Coverall previously deducted from his monthly pay for insurance as well as finder's and franchise fees, in addition to benefits like unemployment insurance. Id.  As such, Billie's claim that the value of the declaratory relief likely exceeds $12,000 is not merely a bare, conclusory statement that is not entitled to a presumption of truth,

11

but a good faith estimate rooted in specific context.  Additionally, there is no legal impossibility of recovery such that Billie's good faith is negated.

Accordingly, the amount in controversy includes the $57,100.06 Award as well as the $12,000 flowing from the arbitrator's finding that Billie is a Coverall employee.  With attorneys' fees—which have already amounted to $9,250 and are estimated to exceed $12,000—the amount in controversy appears to a "reasonable probability" to exceed the statutory jurisdictional amount.  See Scherer, 347 F.3d at 397.  Moreover, Coverall has not shown to a "legal certainty" that the claim is for less than the statutory jurisdictional amount.  Id.  Therefore, dismissal for lack of subject matter jurisdiction is not warranted on this basis.

Coverall also contends that the Court should dismiss Billie's Motion to Confirm as there is no live controversy in the wake of the defendant's payment of the Arbitration Award.  See Cross Motion and Opposition at 1 n.1.  In support of this position, Coverall cites First Circuit caselaw noting that confirmation of an arbitration award that is not in dispute "will merely give the parties something more to argue about.  Under the circumstances, Article III's prudential values and concerns of judicial economy strongly counsel against the entry of a confirmatory order."  Id.; Derwin v. Gen. Dynamics Corp., 719 F.2d 484, 492 (1st Cir. 1983).  As Coverall readily concedes, however, Second Circuit precedent is to the contrary.  See Cross Motion and Opposition at 1 n.1 (noting Coverall's desire "to preserve this argument for appeal."[2]); Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007) (rejecting the contention that "prior compliance [with the award]

---

[2] This position was recently asserted in briefings for the Second Circuit, see IBM's Opening Brief at 15–29, Stafford v. IBM, 22-1240, but oral argument has not yet occurred in that case.

should serve as a ground for refusal to confirm an arbitration award."). Moreover, the future ramifications of the declaratory relief in the arbitrator's decision suggest that the dispute is not moot and weigh in favor of "giv[ing] the award the force of a court order." Zeiler, 500 F.3d at 169. Consequently, Coverall's payment does not deprive this court of jurisdiction to confirm the Arbitration Award.

Therefore, the court concludes that it has subject matter jurisdiction over the Motions to Seal and to Confirm Arbitration Award, and Coverall's Cross Motion to Dismiss for Lack of Jurisdiction is denied.

B.      Arbitration Award Confirmed

Coverall does not dispute the enforceability of the Arbitration Award or contend that it should be vacated, modified, or corrected. See, e.g., Cross Motion and Opposition at 7 ("While it had ample grounds to do so, [Coverall] is not contesting the Award's enforceability – indeed, it has already paid it."). And, after reviewing the Arbitration Award and conducting the very limited review appropriate in such circumstances, the court determines that confirmation is appropriate. There are no genuine issues of material fact in dispute. Moreover, the arbitrator acted within the scope of the authority granted him by the governing arbitration agreement, and grounds for the arbitrator's decision can clearly be inferred from the facts. D.H. Blair, 462 F.3d at 110. From the text of the Arbitrator's Award as well as the Order on the Motion for Partial Summary Judgment, the court concludes that there is, at the very least, a "barely colorable justification for the outcome reached." Id.

Accordingly, the court grants Billie's Motion to Confirm Arbitration Award.

C. <u>Sealing the Arbitration Award</u>

Although Billie filed the Arbitration Award as well as the arbitrator's Order on the Motion for Partial Summary Judgment under seal pursuant to the arbitration agreement, <u>see</u> Arbitration Agmt. ¶ 21(a)(11), his Motion to Seal actually requests that the court exercise its inherent power to unseal these documents, <u>see</u> Mot. to Confirm at 3–5; Mot. to Seal at 1–2. In doing so, Billie asserts that the Arbitration Award and the Order are "judicial documents" to which there is a presumption of public access, and that the confidentiality provision of the arbitration agreement is not enough to overcome the public interest in the document. <u>See</u> Pl.'s Reply at 9–17. Coverall counters that, even if the arbitration decisions are judicial documents, the "public's strong interest in arbitral confidentiality, in combination with [the defendant's] privacy interests, outweighs the limited public interest in access to an arbitration award that has already been paid." Cross Motion and Opposition at 7.

Courts in this Circuit have recognized that "the petition, memoranda, and other supporting documents filed in connection with a petition to confirm an arbitration award (including the Final Award itself) are judicial documents that directly affect the Court's adjudication of that petition." <u>Union Square Ltd.</u>, 2022 WL 252080, at *4 (collecting cases) (quotation and citation omitted); <u>see also, e.g.</u>, <u>Dentons US LLP v. Zhang</u>, 2021 WL 2187289, at *1 (S.D.N.Y. May 28, 2021) ("Petitions to confirm arbitration awards, and their attendant memoranda of law and supporting documents, are judicial documents. . . ." (quotation and citation omitted)). It plainly follows that, where the court is asked to confirm an award, the award itself is "relevant to the performance of the judicial function and useful in the judicial process." <u>Bernstein</u>, 814 F.3d at 139 (quoting <u>Lugosch</u>, 435 F.3d at 119); <u>see also</u> <u>Bristol-Myers Squibb Co. v. Novartis Pharma AG</u>,

14

2022 WL 2133826, at *3 (S.D.N.Y. June 14, 2022) ("When a party seeks confirmation of an arbitration award by a court, the award becomes a judicial document subject to the presumption of public access because the district court is required to consider . . . the arbitration award in determining whether it should be confirmed." (quotation and citation omitted)).  As such, the court determines that the Arbitration Award is a judicial document.  Relatedly, the arbitrator's Order on the Motion for Partial Summary Judgment is cited in and used as a basis for the Award.  Accordingly, the court concludes that it too is a judicial document given its relevance to and utility in the decision-making process.

Next, there is the issue of the weight of the presumption of public access that attaches.  The weight is "governed by the role of the material at issue . . . and the resultant value of such information to those monitoring the federal courts."  Lugosch, 435 F.3d at 119 (quotation and citation omitted).  Usually, "the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance."  Id. (quotation and citation omitted).  Here, there is a strong presumption of public access to the Arbitrator's Award and the Order on the Motion for Partial Summary Judgment by virtue of the court's reliance upon those documents in adjudicating the Motion to Confirm Arbitration Award.  Liberty Re (Bermuda) Ltd., 2005 WL 1216292, at *6; see also Bristol-Myers Squibb Co., 2022 WL 2133826, at *4 (determining that there was a "strong" presumption of public access to the Award where "the entire purpose of the litigation is to confirm the award").  Indeed, because the documents were used by the court to reach its decision, "the public in the usual case has a right to know what the Court has

done." Glob. Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co., 2008 WL 1805459, at *2 (S.D.N.Y. Apr. 24, 2008). Still, the court must consider "'countervailing factors' that might overcome the First Amendment and common law right of access." Union Square Ltd., 2022 WL 252080, at *4.

In support of keeping the arbitration decisions sealed, Coverall raises the confidentiality provision of the arbitration agreement between the parties as well as a policy argument concerning the need to safeguard arbitral confidentiality more generally. See Cross Motion and Opposition at 8–10. However, confidentiality agreements—absent more—are not a sufficient reason for sealing. Dentons US LLP, 2021 WL 2187289, at *1; see also, e.g., Union Square Ltd., 2022 WL 252080, at *4 (collecting cases). This is informed, in part, by the fact that an entity like Coverall is aware when agreeing to arbitration that an award against it could be enforced in federal court. See Robert Bosch GmbH v. Honewell Int'l Inc., 2015 WL 128154, at *1 (S.D.N.Y. Jan. 6, 2015) ("A party to an arbitration proceeding that is subject to confirmation proceedings in a federal court cannot have a legitimate expectation of privacy in all papers pertaining to the arbitration because the party should know of the presumption of public access to judicial proceedings."). Moreover, "the interest in arbitral confidentiality has never been understood to alone be sufficient to overcome the public's right to access judicial documents when otherwise confidential arbitral documents are submitted to a federal court in connection with a request for the Court to enter judgment or issue a dispositive order." Lohnn v. IBM, 2022 WL 36420, at *13 (S.D.N.Y. Jan. 4, 2022) (collecting cases). In fact, Coverall's policy argument was recently and "emphatically" rejected:

> If the prevailing party in arbitration feels compelled to reduce its award to a judgment, its opponent should understand that the proceedings will no longer be secret, no matter what the parties have agreed. Contrary to [the defendant's] argument, this does not undercut the federal policy favoring arbitration, because the federal policy favoring arbitration favors only resort to alternative dispute resolution – not confidentiality agreements attendant thereto. There is no "FAA exception" to the public's right of access to judicial documents, whether that right arises under First Amendment or is "firmly rooted" in the common law. See 9 U.S.C. § 1, et seq. and 9 U.S.C. § 201 et seq. Any argument to the contrary is utterly unpersuasive. . . .

Bristol-Myers Squibb Co., 2022 WL 2133826, at *4.

Here, Coverall also fails to meet its burden to offer any evidence from which the court might make specific findings showing that sealing is essential to preserving "higher values and is narrowly tailored to serve that interest." Lugosch, 435 F.3d at 120. There is no indication that disclosure of the arbitration decisions would "reveal details of an ongoing investigation, pose a risk to witnesses, endanger national security, or reveal trade secrets." Bernstein, 814 F.3d at 143. Nor is there any risk that disclosure would expose "proprietary, sensitive, and confidential business information." Markowitz, 2021 WL 4555833, at *2. Moreover, Coverall proposed no potential redactions to the arbitration documents, see Cross Motion and Opposition at 10, which suggests that the only harms sealing is designed to redress are the confidentiality interests already recognized as insufficient to overcome the presumption of public access.

Additionally, beyond the strong presumption of public access and lack of evidence that sealing is essential to preserving higher values, there is additional public interest in the arbitrator's decisions. As Billie points out, this case implicates the rights of many other workers who have brought misclassification claims against Coverall and its competitors in recent years. Pl.'s Reply at 15 n.5. As such, Billie argues that keeping the arbitration decisions under seal impairs the ability of other similarly situated

17

individuals to gain the information necessary to build their own case. Id. at 16 (citing Ting v. AT&T, 319 F.3d 1126, 1152 (9th Cir. 2003)). For this reason, courts outside this Circuit have recognized that the existence of multiple parallel proceedings weighs in favor of unsealing germane arbitral materials. See, e.g., Laudig v. IBM, 2022 WL 18232706, at *8 (N.D. Ga. Dec. 16, 2022) ("In instances of collateral litigation on similar issues, disclosure of materials in one case can serve abstract virtues of sunlight as a disinfectant and also address practical considerations of reducing duplicative discovery [to] speed[ ] up what otherwise might be a lengthy process." (quotation and citation omitted)). Accordingly, the court is persuaded that the public interest in the content of the arbitration decisions also weighs in favor of unsealing.

Thus, the court determines that the Arbitration Award and the Order on the Motion for Preliminary Summary Judgment should be unsealed.

## V. CONCLUSION

For the foregoing reasons, the court grants the Billie's Motion to Confirm Arbitration Award (Doc. No. 73). In addition, the court denies Billie's Motion to Seal (Doc No. 70) as well as Coverall's Motion to Dismiss for Lack of Jurisdiction (Doc. No. 79). The clerk is hereby ordered to unseal the Arbitration Award (Doc. No. 71) and the Order on the Motion for Preliminary Summary Judgment (Doc. No. 74).

**SO ORDERED.**

Dated at New Haven, Connecticut this 30th day of March 2023.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge