Case 3:19-cv-00092-JCH Document 136 05/18/2023 File 508/08/23 Page 1 of 8
Case 22-718, Document 90, 05/18/2023, 3508723, Page1 of 8

MANDATE

22-718-cv
*Billie, et al. v. Coverall North America, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

AMENDED SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of March, two thousand twenty-three.

Present:
> DEBRA ANN LIVINGSTON,
> > *Chief Judge*,
> SUSAN L. CARNEY,
> JOSEPH F. BIANCO,
> > *Circuit Judges.*

---

CARIBE BILLIE AND QUINCY REEVES, *each individually and on behalf of all other similarly situated individuals*,

> *Plaintiffs-Appellees*,

v.                                                                                      22-718-cv

COVERALL NORTH AMERICA INC.,

> *Defendant-Appellant.*

---

For Plaintiffs-Appellees:      SHANNON LISS-RIORDAN (Adelaide H. Pagano, *on the brief*), Lichten & Liss-Riordan, P.C., Boston, MA

For Defendant-Appellant:      NORMAN M. LEON (Matthew J. Iverson, *on the briefs*), DLA Piper LLP (US), Chicago, IL and Boston, MA

Appeal from an order of the United States District Court for the District of Connecticut

(Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **VACATED** and the matter is **REMANDED**.

Defendant-Appellant Coverall North America, Inc. ("Coverall") appeals from a March 16, 2022 opinion and order of the district court (Hall, *J.*) granting the motion of Plaintiffs-Appellees Quincy Reeves and Caribe Billie to lift the stay of litigation pending arbitration previously imposed pursuant to Section 3 of the Federal Arbitration Act ("FAA"). We review a decision to lift a stay of an action pending arbitration *de novo*. *See Moss v. First Premier Bank*, 835 F.3d 260, 264 (2d Cir. 2016). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal. For the reasons stated herein, we vacate the district court's order lifting the stay and remand for further proceedings consistent with this order.

\* \* \*

Reeves and Billie filed a complaint on behalf of a putative class in district court alleging that Coverall, which operates a commercial janitorial services business through regional franchises, misclassified the named plaintiffs and other similarly situated individuals as independent contractors in violation of Connecticut law. In March 2020, the district court granted Coverall's motion to stay the litigation and compel arbitration. Reeves and Billie then separately filed arbitration demands against Coverall before the American Arbitration Association ("AAA"), the arbitral body identified by their respective arbitration agreements. After some initial motion practice before both the AAA and the appointed arbitrator regarding the fee schedule that would apply to Reeves's case, the AAA sent a letter to both Reeves and Coverall notifying them that it had not yet received deposits to cover the arbitrator's compensation and noting that

Reeves and Coverall owed $3,937.50 and $2,562.50, respectively. The letter stated that if the balance was not paid by December 11, 2020, the arbitrator would have the option of (1) "proceed[ing] with the hearing without full deposits," (2) "resign[ing], in which case the AAA [would] fill the vacancy with an arbitrator who [would] agree to serve without full deposits," or (3) "suspend[ing] or terminat[ing] the case."[1] App'x 441.

On December 10, 2020, Coverall remitted its share of the deposit. Reeves, however, did not. Instead, that same day, Reeves's counsel sent the AAA an email stating that "Mr. Reeves cannot afford the arbitrator fees for this arbitration so he will not be continuing the arbitration." App'x 503. On January 6, 2021, the AAA's case administrator sent the parties a letter notifying them that Reeves's arbitration "is being closed as withdrawn as of the date of this letter." App'x 444.[2] On March 9, 2021, Reeves and Billie moved the district court to lift the previously imposed stay of litigation in light of the AAA's termination of Reeves's arbitration proceeding.

The district court granted the March 9 motion in part, lifting the stay as to Reeves and administratively reopening the case pursuant to Section 3 of the FAA. This provision requires that the district court stay the proceedings before it in favor of litigation until "arbitration has been had in accordance with the terms of the agreement" unless the party seeking the stay is "in default in proceeding with such arbitration." 9 U.S.C. § 3. The district court lifted the stay, relying on two independent grounds: (1) that arbitration "ha[d] been had" when arbitration was initiated but then terminated by the arbitral body; and (2) that Coverall was "in default" because it failed to

---

[1] The letter also stated that if the arbitrator chose either of the first two options, the AAA would "continue [its] efforts to collect any outstanding balance[.]" App'x 441.

[2] Meanwhile, in the arbitration brought by Reeves's co-plaintiff, Billie, the arbitrator held that Coverall must bear the full cost of the arbitration and the case went forward. The arbitration resolved with the issuance of a final award, which Billie moved the district court to confirm in June 2022.

3

advance Reeves's unpaid portion of the arbitrator's fees. We address, and reject, each of these grounds in turn.

### 1. Whether "Arbitration Has Been Had"

Section 3's stay requirement "enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award." *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015). Thus, although the FAA does recognize certain "specifi[c] circumstances in which judicial participation in the arbitral process is permitted," such as "to resolve disputes regarding the appointment of an arbitrator or to fill an arbitrator vacancy," *id.* at 346 n.7 (citing 9 U.S.C. § 5), the stay typically functions to prevent further litigation in court until a final arbitral award has been rendered, at which point, the FAA allows the stay to be lifted so as to enable "subsequent proceeding[s] to confirm, modify, or set aside the [resulting] arbitration award," *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 202 (2000) (citing 9 U.S.C. §§ 9–11).

Nevertheless, a few of our sister circuits have held that an arbitration "has been had" within the meaning of Section 3—thus allowing the court to lift the stay—when arbitral proceedings were initiated in accordance with the terms of the parties' agreement but were then terminated without a final award because of a party's failure to pay the fees associated with the arbitration. *See Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015); *Tillman v. Tillman*, 825 F.3d 1069, 1074 (9th Cir. 2016); *Noble Cap. Fund Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.*, 31 F.4th 333, 336 (5th Cir. 2022); *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 935 (11th Cir. 2019). The Ninth Circuit's decision in *Tillman* is illustrative. There, the parties had entered an arbitration agreement that expressly incorporated the AAA's Commercial Rules, including Rule 57, which provides, in relevant part, "that in the event of nonpayment, the arbitrator

4

. . . 'may order the suspension of the arbitration'" and, "[i]f such suspension has occurred and the parties still fail to make full deposits within a designated time period, the arbitrator 'may terminate the proceedings.'" *Tillman*, 825 F.3d at 1074 (quoting Am. Arbitration Ass'n, *Commercial Arbitration Rules and Mediation Procedures* 30–31 (2013)). After the claimant notified the AAA that she could not pay the required deposit, the arbitrator first suspended and then terminated the proceedings. *Id.* Finding that "[a]ll the[] steps were followed," "including terminating the proceedings without issuance of an award," the Ninth Circuit held that "the arbitration had 'been had'" and thus affirmed the district court's order lifting the stay. *Id.* (quoting 9 U.S.C. § 3).

Here, because both parties have so conceded, we may assume *arguendo* that *Tillman*'s reasoning is consistent with the FAA. Even so, the district court erred in concluding that this reasoning justifies lifting the stay in this case. Citing *Tillman*, the district court held that because arbitration "between Reeves and Coverall commenced and concluded in accordance with the terms of their [a]greement," arbitration "ha[d] been had" within the meaning of Section 3. App'x 529–30. Specifically, the district court concluded that, after "Reeves notified Coverall's Counsel and the AAA of his inability to pay the deposit," "the [a]rbitrator terminated the case as permitted by Rule 57." App'x 529. This was error. The arbitrator never terminated the proceedings pursuant to Rule 57. Instead, the arbitration came to a close when, on January 6, 2021, the AAA's case administrator notified the parties by letter that the arbitration was "being closed as withdrawn." App'x 444. In other words, the proceedings ended not because the arbitrator invoked the AAA's procedures for closing a case when the parties have failed to pay, but rather because Reeves voluntarily withdrew.

On appeal, Reeves argues that this is but a "distinction without a difference." Appellees' Br. at 23. We disagree. Rule 57 establishes a multi-step termination process overseen by the

5

arbitrator.  Under Rule 57(e), a party may request that the arbitrator suspend the arbitration if full deposits have not been paid.  Under Rule 57(f), an arbitrator who suspends the arbitration may give the parties time after the suspension to "make the full deposits" and then, if those deposits are not made, he may terminate the proceedings.  Reeves did not pursue the path provided by Rule 57; he did not request a suspension.  Rather than allow the arbitrator, during a suspension period, to explore solutions that might have prevented termination, Reeves himself brought the arbitration proceedings to an abrupt and premature end.  In this context, we cannot say that "arbitration has been had."  9 U.S.C. § 3.  Accordingly, we conclude that the district court erred in lifting the stay of litigation on this basis.

**2.  Whether Coverall Was "In Default"**

For similar reasons, the district court also erred in concluding that Coverall was "in default" for the purpose of Section 3 of the FAA.  As we have said before, "in default" within the meaning of this provision "refer[s] to a party 'who, when requested, has refused to go to arbitration or who has refused to proceed with the hearing before the arbitrators once it has commenced.'"  *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 454 (2d Cir. 1995) (quoting *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 989 (2d Cir. 1942)).  We have "equated a waiver of the right to arbitrate with 'a default in proceeding with such arbitration' under [Section] 3," *id.* at 455 (quoting *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 412 (2d Cir. 1959)), noting that "the right to arbitration, like any other contract right, can be waived," *id.* (quoting *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966)).

As a threshold matter, Coverall argues that the district court erred in determining that the question of whether it was "in default" under Section 3 could be made by the court.  Instead, Coverall argues that the "in default" determination is reserved for the arbitrator, who made no such

6

finding here. Although we have never decided that particular issue, the Tenth Circuit has concluded otherwise. *See Pre-Paid Legal Servs., Inc.*, 786 F.3d at 1298 ("We hold in the circumstances of this case that the absence of a formal finding of default by the arbitrators does not preclude the district court from making that determination under [Section] 3."). However, we need not decide it in this case because, even assuming *arguendo* that it is within a federal court's authority under Section 3 to determine whether a party is "in default" in an arbitration, we agree with Coverall that the record conclusively demonstrates that no such default took place in the arbitration.

Here, the district court found that Coverall had defaulted in the arbitration because its refusal to advance Reeves's portion of the arbitrator's compensation was inconsistent with the right to arbitrate. However, that finding is not supported by the record.[3] First, the arbitration agreement did not require Coverall to pay the arbitrator's fees; to the contrary it stated that "[t]he costs of the arbitration shall be shared equally between the Parties", but that "[e]ither Party, in their sole and exclusive direction, may choose to assume responsibility for the Party's arbitration costs." App'x 60. Second, Coverall received a favorable ruling from the arbitrator who determined that

---

[3] In addressing waiver below, the district court applied this Court's precedent setting out a two-part inquiry, which asked (1) whether the party acted "inconsistently" with the arbitration right, and (2) whether that conduct prejudiced the other party. *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968). While the present appeal was pending, the Supreme Court held, in *Morgan v. Sundance, Inc.*, that courts may not "condition a waiver of the right to arbitrate on a showing of prejudice," thus invalidating the second prong of the Eighth Circuit's waiver of arbitration test, which mirrored our own. 142 S. Ct. 1708, 1713 (2022). In its directions on remand, the Supreme Court stated that the Eighth Circuit could "strip" its test "of its prejudice requirement" and ask, "[d]id [the respondent], as the rest of the Eighth Circuit's test asks, knowingly relinquish the right to arbitrate by acting inconsistently with that right?" *Id.* at 1714. Similarly, here we ask whether Coverall's conduct evinced a knowing relinquishment of its arbitration rights. For the reasons stated herein, we conclude that it did not.

7

the Commercial Rules, which require the parties to share the costs of arbitration, would apply, and that Reeves had failed to submit "supporting evidence" demonstrating his inability to pay. *Id.* at 439. In that decision, the arbitrator also noted that the ultimate allocation of the arbitrator's fees could later be shifted after hearing all of the evidence. Shortly thereafter, Reeves unilaterally withdrew from the arbitration, even though there is nothing in the arbitration agreement's text nor the AAA rules that it incorporates that would allow Reeves to walk away from the arbitration in that manner. In contrast, there was no instance during the arbitration proceeding where Coverall failed to act in accordance with the procedures set forth in the arbitration agreement, the AAA rules, or the arbitrator's rulings.[4] Accordingly, on this record, the district court erred in concluding that Coverall was "in default," within the meaning of Section 3, in the arbitration.

\* \* \*

For the foregoing reasons, we **VACATE** the district court's March 16, 2022 order and **REMAND** for proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[4] This conclusion is not altered by the district court's reliance, in part, on Coverall's representation during oral arguments on its motion to compel arbitration that "if the [AAA] determines based upon an adequate showing from the plaintiffs that they cannot afford the cost of arbitration, [Coverall] will front them." App'x 538. The district court concluded that "Coverall failed to follow through on that representation," noting that Coverall did not offer to cover Reeves's portion of the arbitrator's fees even though the AAA had granted Reeves's hardship waiver. *Id.* However, the AAA never made a finding that Reeves could not afford the arbitrator's fees, but addressed only the AAA's "administrative fees." App'x 501. Thus, Coverall's conduct in the arbitration was not inconsistent with its representation to the district court.

8